**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X
                                :

JOSEPH WELCH, On Behalf of Himself and All    :
Others Similarly Situated,

                      :    **07 CIV 6904 (RJS)**

           Plaintiff,      :

                      :    **ECF CASE**
        -against-        :    **ELECTRONICALLY FILED**

                      :

TD AMERITRADE HOLDING CORPORATION,    :
TD AMERITRADE, INC., TD BANK USA, N.A. and    :
THE TORONTO-DOMINION BANK,

                      :

           Defendants.     :

--------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

MORGAN, LEWIS & BOCKIUS LLP
   Christopher P. Hall
   Brian A. Herman
   Matthew Stratton
101 Park Avenue
New York, NY 10178
Telephone: 212-309-6000
Facsimile: 212-309-6001

Attorneys for Defendants TD Ameritrade Holding
Corporation, TD Ameritrade, Inc., TD Bank USA,
N.A. and The Toronto-Dominion Bank

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 3

 A. TD Ameritrade Sweep Options........................................................ 3

 B. The Sweep Program Is Fully and Accurately Disclosed ...................... 5

  1. Customer Agreements.......................................................... 5

  2. Summary Documents.......................................................... 6

  3. Sweep Election Forms......................................................... 6

 C. Plaintiff Joseph Welch ................................................................. 7

ARGUMENT ...................................................................................................... 7

I. PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT ALLEGED AN ACTIONABLE MATERIAL MISREPRESENTATION OR OMISSION....................................................... 7

 A. The "Puffery" Claims Fail ............................................................. 8

 B. Claims Based on the Name of the Sweep Vehicle Fail ...................... 8

 C. The Use of "Tiers" Is Not Deceptive ............................................ 10

 D. Defendants Disclosed the Benefits of the Sweep Program................ 11

II. PLAINTIFF'S FIDUCIARY DUTY CLAIMS FAIL AS A MATTER OF LAW ........ 12

III. PLAINTIFF'S CLAIM FOR VIOLATIONS UNDER THE INVESTMENT ADVISERS ACT OF 1940 MUST BE DISMISSED....................................... 14

IV. PLAINTIFF'S STATE LAW CLAIMS ARE PRECLUDED BY SLUSA, PREEMPTED BY FEDERAL LAW AND THE MARTIN ACT AND FAIL TO STATE A CLAIM FOR MYRIAD REASONS ............................................. 15

 A. All State Law Claims Are Precluded by SLUSA ............................... 15

 B. All of the State Law Claims Are Preempted by Federal Law Governing Securities and New York's Martin Act............................................. 16

 C. Plaintiff Has Failed to Plead the Elements of Fraud............................ 17

 D. Plaintiff Has Failed to State a Claim for Aiding and Abetting Breach of Fiduciary Duty .......................................................................... 18

 E. Plaintiff's Negligence Claim Must Be Dismissed .............................. 19

 F. Plaintiff's Negligent Misrepresentation Claim Must Be Dismissed.................... 20

 G. Plaintiff's Unjust Enrichment Claim Must Be Dismissed .................... 20

 H. Plaintiff's Claim Under N.Y. Gen. Bus. Law § 349 Must Be Dismissed........... 20

**TABLE OF CONTENTS**
(continued)

**Page**

CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bell Atl. Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) ..................................................................................7

*Bissell v. Merrill Lynch & Co.*,
  937 F. Supp. 237 (S.D.N.Y. 1996) ...............................................................12

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994) .....................................................................................19

*Chee v. Marine Midland Bank, N.A.*,
  1991 WL 15301 (E.D.N.Y. Jan. 29, 1991) ...................................................13

*Frazier v. VitalWorks, Inc.*,
  341 F. Supp. 2d 142 (D. Conn. 2004) ...........................................................8

*Gurfein v. Ameritrade, Inc.*,
  2007 WL 2049771 (S.D.N.Y. July 17, 2007) ..............................................20

*Kramer v. Unitas*,
  831 F.2d 994 (11th Cir. 1987) .......................................................................8

*Lasker v. N.Y. State Elec. & Gas Corp.*,
  85 F.3d 55 (2d Cir. 1996)...............................................................................8

*Levitin v. PaineWebber, Inc.*,
  159 F.3d 698 (2d Cir. 1998)......................................................................2, 11

*Muller-Paisner v. TIAA*,
  446 F. Supp. 2d 221 (S.D.N.Y. 2006)...........................................................12

*Newman v. L.F. Rothschild, Unterberg, Towbin*,
  651 F.Supp. 160 (S.D.N.Y. 1986) .............................................................8, 20

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
  2007 WL 4326514 (S.D.N.Y. Dec. 3, 2007) ..................................................2

*SSH Co., v. Shearson Lehman Bros. Inc.*,
  678 F. Supp. 1055 (S.D.N.Y. 1987)..............................................................20

*Sec. Indus. Ass'n v. Bd. of Governors of Fed. Reserve Sys.*,
  468 U.S. 207 (1984)......................................................................................13

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
    444 U.S. 11 (1979)..................................................................................15

## STATE CASES

*DeSciose v. Chiles, Heider & Co., Inc.*,
    476 N.W.2d 200 (Neb. 1991)................................................................12

## FEDERAL STATUTES AND RULES

12 C.F.R. pt. 204 ......................................................................................9

12 C.F.R. § 204.2 .....................................................................................9

12 C.F.R. §§ 230.4, 230.5 ......................................................................17

12 C.F.R. § 561.28...................................................................................9

17 C.F.R. § 240.15c3-2 ..........................................................................16

12 U.S.C. §§ 21-216d .............................................................................17

12 U.S.C. §§ 4302-04 .............................................................................17

15 U.S.C. § 78bb .....................................................................................15

15 U.S.C. §§ 80b-1 to 80b-21 ................................................................14

Fed. R. Civ. P. 9(b) ...........................................................................1, 18

Fed. R. Civ. P. 12(b)(6)............................................................................1

Pub.L. No. 105-353, 112 Stat. 3227 ........................................................1

## STATE STATUTES

N.Y. Gen. Bus. Law §§ 349....................................................................20

N.Y. Gen. Bus. Law §§ 352 to 359-h .....................................................17

## MISCELLANEOUS

NYSE Information Memo 05-11 .........................................................16, 19

TD AMERITRADE Holding Corporation ("TD Ameritrade Holding"); TD AMERITRADE, Inc. ("TD Ameritrade"), TD Bank USA, N.A. ("TD Bank") and The Toronto-Dominion Bank ("TD") (collectively the "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 9(b) and the Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 ("SLUSA"). Defendants incorporate the "Defendants' Joint Memorandum of Law in Support of Their Motion to Dismiss the Second Amended Class Action Complaint" (the "Joint Brief" or "Joint Br.") filed in DeBlasio v. Merrill Lynch & Co., Inc., 07-CV-318 (RJS) ("DeBlasio").[1]

## PRELIMINARY STATEMENT

This putative class action challenges TD Ameritrade's "sweeping" (i.e., automatic transferring) the uninvested cash in customers' brokerage accounts into interest-bearing accounts. Plaintiff complains that, when a customer decides not to invest or withdraw uninvested cash: (i) TD Ameritrade sweeps the cash into an FDIC-insured deposit account, known as a "money market deposit account" or "MMDA," at an affiliate; (ii) the affiliate pays interest on the cash in the MMDA deposit at interest rates that are lower than the returns that might be obtained if the cash were invested in money market mutual funds; and (iii) Defendants make money on this sweep program. Plaintiff alleges that by offering this program, Defendants violated the Investment Advisers Act of 1940 and Section 349 of the New York General Business law, committed common law fraud, negligence and negligent misrepresentation, breached fiduciary duties, aided and abetted the breach of fiduciary duties, and were unjustly enriched.

---

[1] Defendants incorporate all sections of the Joint Brief other than those concerning breach of contract or violation of the Sherman Act, as those claims are not raised against these Defendants.

Plaintiff is wrong as a matter of law. A financial institution is entitled to make money on deposited funds. See Levitin v. PaineWebber, Inc., 159 F.3d 698, 703 (2d Cir. 1998). And TD Ameritrade has no obligation whatsoever (other than the contractual obligations TD Ameritrade undertakes to its customers) to pay its customers any interest at all on uninvested cash – much less an obligation to pay interest at a higher rate that Plaintiff desires. (Joint Br. at 12-14.) Indeed, with respect to uninvested cash in a customer account, the relation between a brokerage firm and its customer is that of creditor and debtor. (Id.)

Plaintiff also alleges that TD Ameritrade deceptively calls one of its sweep options a "money market deposit account." Plaintiff suggests that this is deceptive because "money market deposit account" sounds similar to "money market mutual fund." But TD Ameritrade did not make up the term "money market deposit account"; it is defined under federal regulations, and Plaintiff cannot validly claim that TD Ameritrade's correct use of this federally defined term constitutes fraud. Further, TD Ameritrade's customer agreement distinguishes between money market deposit accounts and money market mutual funds.

Moreover, Plaintiff's own account documents demonstrate that Plaintiff was not "duped" by TD Ameritrade's MMDA sweep program.[2] Plaintiff had three accounts with TD Ameritrade at the beginning of the alleged class period, and opened two additional accounts during the alleged class period. During the class period, uninvested cash in four of these five accounts was swept into money market mutual funds, not MMDAs. In the other account, uninvested cash was swept into an MMDA for a part of the class period, until Plaintiff changed his sweep option to a

---

[2] The well-pleaded facts alleged in the Complaint are accepted as true solely for purposes of this Motion to Dismiss. In addition, the Court may consider documents referenced in the Complaint in assessing the sufficiency of the Complaint. See Joint Br. at 21-22; In re Salomon Smith Barney Mut. Fund Fees Litig., 2007 WL 4326514, at *1 (S.D.N.Y. Dec. 3, 2007) ("[T]he Court may consider 'any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.'") (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)).

money market mutual fund.  In all accounts, the interest or dividend rate of the sweep option was disclosed in Plaintiff's account statements.

Plaintiff's claims also fail for the additional reasons set forth in the Joint Brief including:

- Plaintiff's state law claims are precluded by SLUSA, because they are based on alleged material misrepresentations and seek damages for failure to purchase covered securities; preempted by federal law, because they impermissibly conflict with federal laws and regulations; and prohibited by New York's Martin Act, which does not allow fiduciary duty and related claims concerning securities;

- Plaintiff's claims based on alleged misstatements and omissions fail because TD Ameritrade discloses all material facts and because Plaintiff fails to allege other essential elements of such claims;

- Plaintiff's unjust enrichment claim fails because Plaintiff's relationship with TD Ameritrade is governed by contract; and

- Plaintiff cannot recover under the Investment Advisers Act of 1940 because Plaintiff does not allege (and did not have) an advisory agreement with the Defendants; and the Investment Advisers Act does not provide for the relief Plaintiff seeks.

## STATEMENT OF FACTS

### A.     TD Ameritrade Sweep Options

TD Ameritrade is a brokerage firm created through the combination of the U.S. brokerage businesses of TD Waterhouse Investor Services, Inc. ("TD Waterhouse") and AMERITRADE, Inc. ("Ameritrade").  (Compl. ¶11.)  The transaction that created TD Ameritrade (the "Combination") closed on January 24, 2006.  (Compl. ¶15.)  Effective with the Combination, TD Ameritrade Holding and TD Bank entered into an agreement whereby TD Bank made available to clients of TD Ameritrade money market deposit accounts as designated sweep vehicles.  (Compl. ¶16.)  Plaintiff's alleged class period commences on January 24, 2006, the date the Combination closed, and runs through the present.  (Compl. ¶18.)

Prior to the Combination, both TD Waterhouse and Ameritrade offered sweep programs to their respective customers.  (Compl. ¶27.)  Each offered its respective customers the option to

hold uninvested cash in the customers' brokerage accounts or to sweep uninvested cash into money market mutual funds. TD Waterhouse also offered customers the option to sweep into an MMDA while, in the period immediately prior to the Combination, Ameritrade did not offer its customers an MMDA option. (See Compl. ¶¶30-31.)[3] After the closing of the Combination, TD Ameritrade continued to offer the "legacy" TD Waterhouse sweep options to "legacy" TD Waterhouse customers (i.e., customers with accounts at TD Waterhouse prior to the Combination) and the "legacy" Ameritrade sweep options to "legacy" Ameritrade customers (i.e., customers with accounts at Ameritrade prior to the Combination).

In September 2006, TD Ameritrade began offering legacy Ameritrade customers the option to sweep uninvested cash into an MMDA. (Compl. ¶33.) Thus, TD Ameritrade provides (and TD Waterhouse previously provided) to customers the following options:

- A customer may elect to have uninvested cash remain in his brokerage account, protected by the Securities Investor Protection Corporation (SIPC). If a customer elects this option, called "TD Ameritrade Cash," TD Ameritrade pays the customer interest on the cash balance at a disclosed rate; or

- A customer may elect to have uninvested cash swept into an FDIC-insured money market deposit account, held at TD Bank. TD Bank pays interest on the deposit at a disclosed rate; or

- A customer who meets certain minimum requirements may elect to have uninvested cash swept into a money market mutual fund. The money market mutual funds are securities investments subject to market risk, and are not protected by FDIC insurance.

Whatever option is selected, the rate of return is set forth in the customer's periodic account statements. Of course, all customers may elect to invest idle cash in any securities, including stocks, bonds, certificates of deposit, and mutual funds including money market mutual funds offered by other financial institutions (e.g., Vanguard or T. Rowe Price). Customers may also

---

[3] The disclosures setting forth the details of the sweep program are incorporated by reference in the Complaint (see, e.g., Compl. ¶20 (account agreements); ¶52 (Summary of Cash Balance Programs); ¶¶61, 76 (account statements);

withdraw uninvested cash or transfer it to an account at another financial institution.

**B.    The Sweep Program Is Fully and Accurately Disclosed**

1. <u>Customer Agreements</u>:  A customer's relationship with his broker is based in contract.

TD Ameritrade retail clients are bound by the terms of the TD Ameritrade Client Agreement (the

"Retail Client Agreement"), which contains a full page of disclosures concerning sweep options.

The Retail Client Agreement sweep disclosure distinguishes the Money Market Deposit

Account, which is an FDIC-insured <u>deposit</u> at a bank from TD Ameritrade Cash and from money

market mutual funds, which are <u>investments</u> in securities: [4]

> **1. MMDA.**  If the MMDA is my [the customer's] Designated Sweep Vehicle, the available cash in my Account will be automatically **deposited** in the MMDA at TD Bank, USA, N.A. ("the Bank"), your affiliate.  The MMDA will be **eligible for insurance by the FDIC** . . . .
>
> - **The Bank will determine interest rates on the MMDA in its discretion** based upon a variety of factors, including prevailing economic and business conditions, and the nature and scope of the client's relationship with you.  For example, rates may vary based on special offers, the particular offering the client uses or the level of assets held by you.  **The interest rates paid with respect to the MMDA may be higher or lower than the interest rates available to depositors making deposits directly with the Bank or other depository institutions in comparable accounts.** . . .
>
> **2. TD AMERITRADE Cash.**  If I selected TD AMERITRADE Cash as my Designated Sweep Vehicle, you will pay interest on available cash in my Account, which may be changed without prior notice. . . . TD AMERITRADE Cash represents balances pending investment and is not maintained solely for receiving credit interest. . . .

---

¶71 (bank sweep agreements); ¶¶20, 76 (disclosure)) and described in detail in the following section. All citations to "Ex. __" are to exhibits to the Declaration of Matthew D. Stratton, dated January 7, 2008.

[4]  Since May 2007, TD Ameritrade's relationship with all retail customers (including legacy TD Waterhouse and legacy Ameritrade customers) is governed by one retail client agreement, amended from time to time.  The version effective August 23, 2007, summarized above, is attached as Ex. B.  Prior to May 2007, TD Ameritrade's agreements with legacy TD Waterhouse retail customers (<u>see</u>, <u>e.g.</u>, Ex. C at ¶8) and legacy Ameritrade retail customers (<u>see</u>, <u>e.g.</u>, Ex. D at ¶96) contained similar disclosures concerning then applicable sweep options.  The sweep terms set forth in the client agreements were also repeated in stand-alone documents.  (<u>See</u> Ex. E (applicable to legacy Ameritrade customers when TD Ameritrade began offering the option to sweep into an MMDA); Ex. F (applicable to legacy TD Waterhouse customers).)

**3. Money Market Funds. Investments in money market funds** are subject to restrictions, charges and expenses described in the prospectus. **Money market funds are securities that may increase or decrease in value. They are not insured or guaranteed by the FDIC, any other governmental agency** . . . .

(Ex. B at § 8.k (emphasis added).)  The Retail Client Agreement also specifically provides that TD Ameritrade may change the available sweep options without prior consent, unless the customer objects.  (Id.)[5]

2.  <u>Summary Documents</u>:  As noted in the Complaint (¶¶52, 54, 57, 59), TD Ameritrade also provides customers with a short plain-English "Summary of Cash Balance Programs" (the "Summary"), which sets forth "key features" of the program and describes the benefits of the MMDA option to TD Ameritrade and TD Bank:

> **Benefits to TD AMERITRADE and TD Bank USA, N.A.**  TD Bank USA, N.A. uses MMDA balances to fund current and new investment and lending activity. The Bank seeks to make a profit by achieving a positive spread between its cost of funds (e.g. deposits) and the returns on its assets, net of expenses. TD AMERITRADE receives a fee from the Bank for marketing and related services in connection with the MMDA.  TD AMERITRADE has the right to waive all or part of this fee.  The fee is derived using a formula which results in the fee varying from month to month depending on the interest rate environment and the profitability of the Bank with respect to such deposits.  As required by Federal Regulations, the fee the Bank pays TD AMERITRADE does not exceed the amount that the Bank would offer in good faith to non-affiliated entities. The rate of the fee that TD AMERITRADE receives may exceed the interest rate or effective yield that you receive in your MMDA.  Other than the applicable fees we charge on brokerage accounts, there will be no charges, fees or commissions imposed on your account for this cash sweep feature.

(Ex. I.)

3.  <u>Sweep Election Forms</u>:  Certain TD Ameritrade new account forms also provide a place for a customer to select a sweep option.  During the class period, Plaintiff completed two such forms.  (Exs. J-K.)

---

[5]  TD Ameritrade's agreements with institutional clients (including retirement accounts where the client uses a third-party investment adviser) are similar.  (See Ex. G (example of agreement with legacy Waterhouse customers); Ex. H (example of agreement with legacy Ameritrade customers).)

C.    **Plaintiff Joseph Welch**

At the time of the Combination, Plaintiff Joseph Welch had three "legacy" TD

Waterhouse accounts.  In two of the accounts, uninvested cash was swept into money market

mutual funds during the class period.  (Exs. L-M.)  In the third account, uninvested cash was

swept into a money market deposit account until February 2007, when Plaintiff changed his

sweep option to money market mutual funds.  (Ex. N.)[6]  During the class period, Plaintiff opened

two new institutional retirement accounts, where Plaintiff elected to have a third-party – not

Defendants – provide investment advisory services.  Plaintiff chose to have both new accounts

sweep into money market mutual funds, not the MMDA.  (See Exs. J-K.)  Thus, contrary to

Plaintiff's claims that TD Ameritrade "dupes" customers into the MMDA and does not make a

money market mutual fund available, during the class period, four of Plaintiff's five accounts

swept into money market mutual funds rather than MMDAs.  The remaining account swept into

an MMDA until Plaintiff changed the sweep option to money market mutual funds.[7]

## ARGUMENT[8]

I.    **PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED BECAUSE
PLAINTIFF HAS NOT ALLEGED AN ACTIONABLE  MATERIAL
MISREPRESENTATION OR OMISSION**

Plaintiff's claims of fraud, negligent misrepresentation, negligence, breach of fiduciary

duty, aiding and abetting breach of fiduciary duty, and violation of N.Y. Gen. Bus. Law § 349

are all based on four broad categories of statements, set forth in the Complaint under the heading

---

[6]  At the time of the Combination, Plaintiff also had one account with a broker-dealer known as Liberty Capital Investment Corp. Liberty Capital used Advanced Clearing, a subsidiary of what was then Ameritrade Holding, for clearing services. However, TD Ameritrade was not the introducing broker of this account.

[7]  As the materials referenced in this section are incorporated by reference in the Complaint, they may be considered with the motion to dismiss. See supra note 2. However, in the event the Court declines to consider these materials, Plaintiff's claims still fail as a matter of law for all of the independent reasons set forth below.

[8]  For applicable pleading standards, see Joint Br. at 19-21. See also Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (motion to dismiss must be granted unless complaint contains sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level").

Material Misrepresentations and Omissions (pp. 24-30).  Each fails as a matter of law.

> ### A.    The "Puffery" Claims Fail

Plaintiff alleges that TD Ameritrade made numerous statements about the character of its business, including website statements of "outstanding personal service;" "24 hours a day" service; "independent and objective research;" and "impartial guidance and service."  In addition, Plaintiff complains that TD Ameritrade uses as a spokesman Sam Waterston, an actor who portrays an "ethical" prosecutor on television's "Law & Order."  Finally, Plaintiff complains that TD Ameritrade describes the TD Ameritrade Cash and MMDA sweep options as "great" options.  Plaintiff alleges that these statements are materially false and misleading because the sweep options available to customers are not, in Plaintiff's opinion, "great."

The marketing statements that Plaintiff takes issue with are at most "puffery" and, as a matter of law, are not actionable.  (Joint Br. at 24-25 & n.22.)  See Lasker v. N.Y. State Elec. & Gas Corp., 85 F.3d 55, 59 (2d Cir. 1996) ("[B]road, general statements" amount to "precisely the type of 'puffery' that this and other circuits have consistently held to be inactionable"); Newman v. L.F. Rothschild, Unterberg, Towbin, 651 F. Supp. 160, 163 (S.D.N.Y. 1986); Frazier v. VitalWorks, Inc., 341 F. Supp. 2d 142, 153 (D. Conn. 2004) ("Saying that a product is 'significant,' 'attractive' or 'great' is merely 'puffery,' not actionable securities fraud.")[9]

> ### B.    Claims Based on the Name of the Sweep Vehicle Fail

Plaintiff next alleges that TD Ameritrade engages in deception by calling its bank deposit sweep vehicle a "Money Market Deposit Account" because the MMDA is not in fact a money market mutual fund.  Plaintiff's allegations are fatally flawed.  (Compl. ¶62.)

First, the term "money market deposit account" and its abbreviation "MMDA" are

---

[9]  The use of a television actor does not make puffing statements actionable.  See generally Kramer v. Unitas, 831 F.2d 994, 998 (11th Cir. 1987).

defined by federal regulations as a type of "savings deposit" account, and are **not** terms invented by Defendants.  Specifically, Regulation D of The Federal Reserve Board sets uniform requirements for all depository institutions to maintain reserve balances, either with their Federal Reserve Bank or cash.[10]  Section 204.2 sets forth various definitions concerning the deposit requirements, and Sections 204.2(d)(1) and (2) define the term "savings deposits."  Section 204.2(d)(2) specifically provides in part:

> (2) **The term *savings deposit* also means:** A deposit or account, such as **an account commonly known as** a passbook savings account, a statement savings account, or as **a money market deposit account (*MMDA*)**, that otherwise meets the requirements of § 204.2(d)(1) and from which, under the terms of the deposit contract or by practice of the depository institution, the depositor is permitted or authorized to make [a certain number of withdrawals and transfers]. . . .

12 C.F.R. § 204.2(d)(2) (emphasis added).[11]

The Securities and Exchange Commission's website similarly distinguishes between a "money market fund" and a "money market deposit account:"

> A money market fund is a type of mutual fund that is required by law to invest in low-risk securities.  These funds have relatively low risks compared to other mutual funds and pay dividends that generally reflect short-term interest rates.  Unlike a "money market deposit account" at a bank, money market funds are not federally insured.

> Money market funds typically invest in government securities, certificates of deposits, commercial paper of companies, and other highly liquid and low-risk securities. They attempt to keep their net asset value (NAV) at a constant $1.00 per share—only the yield goes up and down. But a money market's per share NAV may fall below $1.00 if the investments perform poorly. While investor losses in money market funds have been rare, they are possible.[12]

Although Plaintiff has not put forth any basis for holding a financial institution liable

---

[10]  http://www.federalreserve.gov/Regulations.

[11]  Similarly, the Office of Thrift Supervision of the Department of Treasury, in its definitions for regulations affecting savings associations, defines the term "Money Market Deposit Accounts" as "savings accounts on which interest may be paid" if issued subject to certain delineated limitations.  12 C.F.R. § 561.28.

[12]  See http://www.sec.gov/answers/mfmmkt.htm.  The SEC's website indicates that this information is provided as a service to investors and is not a legal interpretation or a statement of SEC policy.

under any theory for describing a deposit account in the exact way in which it is defined in federal regulations, Plaintiff suggests that TD Ameritrade should affirmatively disclose that its money market deposit account is "not a *bona fide* money market fund." (Compl. ¶53.) But, as set forth in the Joint Brief at 14-16, disclosure requirements for this program are set by federal law, and there simply is no requirement to make this type of disclosure.

Moreover, the term "Money Market Deposit Account" accurately describes the sweep vehicle at issue. It is a "deposit account," not a mutual fund investment. The MMDAs pay interest on deposits, and the deposited funds are protected by FDIC insurance. Indeed, Plaintiff acknowledges that such FDIC insurance is only available for bank deposits, not securities investments such as money market mutual funds. (See Compl. ¶25 ("cash held in a bank *savings account* is FDIC insured . . . *money market* funds are not").) Further, TD Ameritrade's customer agreements specifically differentiate MMDAs and money market mutual funds, noting that the latter are securities not protected by FDIC insurance. In short, the MMDA title is accurate and cannot form the basis of any claims.[13]

### C.    The Use of "Tiers" Is Not Deceptive

Plaintiff claims that TD Ameritrade's tiered chart setting forth current interest rates paid based on the amount of assets on deposit is deceptive because TD Ameritrade does not disclose that the lowest rates are paid on the "smallest" accounts. (Compl. ¶55.) Plaintiff is simply wrong. The chart of tiered interest rates, referenced in the Complaint and set forth in Ex. I, expressly shows that lower rates are paid on smaller accounts.

Plaintiff also claims that a financial institution has an affirmative obligation to tell

---

[13]  Plaintiff refers to an account statement (without identifying the account number or date) that states that assets were swept into a "Money Market Account FDIC Insured Not Covered by SIPC." (Compl. ¶61.) The terms "account" and "FDIC insured" are attributes of savings account deposits, not securities investments.

customers that a securities investment, such as a money market mutual fund, could result in a better return than a bank deposit. (Compl. ¶55.) Plaintiff, however, does not cite any support for that proposition, and in view of the comprehensive and preemptive regulatory system governing bank advertisements, state law fraud claims should not be used to impose additional disclosure requirements. (Joint Br. at 15-16.)

Plaintiff's fraud claim concerning interest rates in the MMDA is further undermined by the fact that (i) cash in four of his five accounts was swept into money market mutual funds throughout the class period; and (ii) his periodic account statements disclose the interest and/or dividend rates on swept cash. (Exs. J-N.)

### D.     Defendants Disclosed the Benefits of the Sweep Program

As Plaintiff concedes (Compl. ¶59), TD Ameritrade discloses to its customers the benefits of the MMDA sweep option to it and TD Bank:

> TD Bank USA, N.A. uses MMDA balances to fund current and new investment and lending activity. The Bank seeks to make a profit by achieving a positive spread between its cost of funds (e.g. deposits) and the returns on its assets, net of expenses. TD AMERITRADE receives a fee from the Bank for marketing and related services in connection with the MMDA. TD AMERITRADE has the right to waive all or part of this fee. The fee is derived using a formula which results in the fee varying from month to month depending on the interest rate environment and the profitability of the Bank with respect to such deposits. . . . The rate of the fee that TD AMERITRADE receives may exceed the interest rate or effective yield that you receive in your MMDA. . . .

Plaintiff claims, however, that these statements were false and misleading because investors could not ascertain the "windfall profits" made by TD Ameritrade. (Compl. ¶60.) This claim cannot be maintained. Defendants have no obligation to tell their customers that the brokerage firm and the bank make money on the cash deposited with them. See Levitin, 159 F.3d at 703. Moreover, as shown above, TD Ameritrade did inform customers that (i) TD Bank uses the deposits to fund its investment and lending activity and seeks to make a profit from the

spread between its cost of funds and the return on its assets; (ii) TD Ameritrade receives a fee

from TD Bank; and (iii) the fee may exceed the interest rate or yield received by the customer.

Moreover, Plaintiff does not allege how the amount of revenue or income TD Bank and

TD Ameritrade generate is material to any decision he made.  And in view of the fact that

Plaintiff's periodic account statements stated the rate of return on the MMDA deposit and money

market mutual fund investments, Plaintiff cannot maintain that Defendants failed to disclose

material facts.

## II.    PLAINTIFF'S FIDUCIARY DUTY CLAIMS FAIL AS A MATTER OF LAW

To state a cause of action for breach of fiduciary duty, Plaintiff must allege facts

demonstrating the existence of a duty and breach of the duty.  (Joint Br. at 36-37.)  See Muller-

Paisner v. TIAA, 446 F. Supp. 2d 221, 229 (S.D.N.Y. 2006).  To allege a fiduciary relationship,

Plaintiff must plead facts demonstrating that TD Ameritrade occupied a position of trust or

special confidence beyond the express agreements in Plaintiff's contract with TD Ameritrade.

(Joint Br. at 37.)[14]

It is well settled that, absent discretionary trading authority delegated by a customer to a

broker, a broker does not owe a general fiduciary duty to its customer.  (Joint Br. at 37-39.)  See

Bissell v. Merrill Lynch & Co., 937 F. Supp. 237, 246 (S.D.N.Y. 1996) ("In the absence of

discretionary trading authority delegated by the customer to the broker – and none is alleged in

the case at bar – a broker does not owe a general fiduciary duty to his client.").[15]  Courts

recognize that a discount broker, such as TD Ameritrade, can charge lower commissions than

full-service brokers because "it does not provide investment advice or analysis, but merely

---

[14]  Plaintiff's claims fail for the additional reasons set forth in the Joint Brief at 36-39.

[15]  Nebraska law, the choice of law identified in the TD Ameritrade customer agreements, is in accord.  See
DeSciose v. Chiles, Heider & Co., Inc., 476 N.W.2d 200, 206 (Neb. 1991) ("The mere existence of a broker-client
relationship, without more, does not imply a confidential relationship.").

executes the purchase and sell orders placed by its customers." <u>Sec. Indus. Ass'n v. Bd. of Governors of Fed. Reserve Sys.</u>, 468 U.S. 207, 209 n.2 (1984).  Thus, "[t]here is even greater reason to reject monitoring liability in the case of discount brokers whose admitted function is *not* to give advice so investors can save money on commissions." <u>Chee v. Marine Midland Bank, N.A.</u>, 1991 WL 15301, at *4 (E.D.N.Y. Jan. 29, 1991).  Moreover, as the SEC has recognized, with respect to uninvested cash in a brokerage account, the broker-customer relationship is that of creditor-debtor.  (Joint Br. at 12-14.)

Plaintiff does not allege that he delegated to any of the Defendants discretionary trading authority, and the applicable customer agreements demonstrate that he did not.  (<u>See</u>, <u>e.g.</u>, Exs. B at § 3.a; C at ¶20; D at p.1.)  Rather, in an attempt to plead the existence of a fiduciary relationship, Plaintiff alleges that through TD Ameritrade's sweep program, Defendants have discretionary authority over available investment vehicles for the uninvested cash of TD Ameritrade's customers.  (Compl. ¶90.)

This conclusory allegation is devoid of facts sufficient to support the existence of a fiduciary relationship and is contradicted by the terms and conditions of the agreements between Plaintiff and TD Ameritrade.  Under the governing agreements, Plaintiff can designate the sweep vehicle of his choice.  He can leave cash in his brokerage account (TD Ameritrade Cash); have the cash swept into a money market deposit account (MMDA); or subject to certain requirements, have the cash swept into a money market mutual fund.  (<u>See</u> Exs. B-D, G-H.)  Moreover, he is free to invest the cash in other securities, including other money market mutual funds, and he is free to withdraw the cash or transfer it elsewhere.  As noted above, Plaintiff, with one exception, had his cash swept into money market mutual funds throughout the alleged class period.  (<u>See</u> Exs. J-N.)  Indeed, twice during the alleged class period, Plaintiff filled out

forms for new accounts choosing money market mutual funds. These facts negate a claim that TD Ameritrade had discretion.

Finally, Plaintiff alleges that Defendants violated some fiduciary duty by using "negative consent" to modify sweep options (see Compl. ¶93). This claim cannot stand because the customer agreements provide that TD Ameritrade may change sweep options without additional consent. See supra Section B to "Statement of Facts."

## III.    PLAINTIFF'S CLAIM FOR VIOLATIONS UNDER THE INVESTMENT ADVISERS ACT OF 1940 MUST BE DISMISSED

The only private right of action recognized under the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1 to 80b-21 (the "IAA"), is for an alleged violation of 15 U.S.C. § 80b-15, which permits an investment advisory agreement made in violation of the statute to be rescinded. Plaintiff's claims under the IAA fail for two independent reasons.[16]

First, while Plaintiff alleges that TD Ameritrade is an investment adviser, he does not and cannot allege that TD Ameritrade served as his investment adviser.[17] (Compl. ¶67.) Plaintiff does not allege that (i) he had an investment advisory relationship with TD Ameritrade (or any contract or contact with TD Ameritrade Holding, TD or TD Bank); (ii) he paid any advisory fees to any of the Defendants; (iii) he was provided any advice concerning sweep options, or (iv) any of the Defendants provided him investment advice that was not incidental to the brokerage relationship in exchange for "special compensation" as required to be his investment adviser under the IAA. Indeed, with respect to two of his accounts, Plaintiff contracted to receive

---

[16] For additional reasons why Plaintiff cannot maintain a claim under the IAA, see the Joint Brief at 46-56.

[17] "Investment adviser" is defined as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities; but does not include . . . (C) any broker or dealer whose performance of such services is solely incidental to the conduct of his business as a broker or dealer and who receives no special compensation therefor." 15 U.S.C. § 80b-2(a)(11).

investment advisory services from a third party, not Defendants. (See Exs. J-K.) Absent an advisory relationship, Plaintiff cannot sue under the IAA.

Second, Plaintiff seeks relief in the form of unspecified restitution and disgorgement of "profits." The Supreme Court has held, however, that damages under the IAA are limited to restitution of consideration paid for the <u>advisory services</u>, less any value conferred by the adviser. <u>Transamerica Mortgage Advisors, Inc. v. Lewis</u>, 444 U.S. 11, 24 n.14 (1979). Because lost profits cannot be recovered under the IAA, Plaintiff's claim fails for this separate and independent reason.

## IV. PLAINTIFF'S STATE LAW CLAIMS ARE PRECLUDED BY SLUSA, PREEMPTED BY FEDERAL LAW AND THE MARTIN ACT AND FAIL TO STATE A CLAIM FOR MYRIAD REASONS

### A. All State Law Claims Are Precluded by SLUSA

The Securities Litigation Uniform Standards Act of 1998 requires the immediate dismissal of any action that is: (i) a "covered class action;" (ii) based on state law; (iii) alleging a misrepresentation or omission of a material fact or use of any manipulative or deceptive device or contrivance; (iv) "in connection with" the purchase or sale of a "covered security." 15 U.S.C. § 78bb(f)(1). For the reasons set forth in the Joint Brief, the requirements for SLUSA preclusion are indisputably met.[18]

With respect to SLUSA's final element – that the alleged misrepresentations or omissions are "in connection with a purchase or sale" of a security – is also met. The gravamen of the Complaint is that Defendants failed to sweep Plaintiff's uninvested cash into a money market mutual fund. Specifically, Plaintiff alleges that TD Ameritrade "dup[ed] TD Ameritrade clients" by sweeping their funds into "sham 'money market' accounts" (i.e., MMDA) as opposed to

---

[18] See Joint Br. at 5-7; Compl. ¶¶18 (class); 47-65 (section entitled "Material Misrepresentations and Omissions"); 74-122 (state law claims, each of which incorporates the section on "Material Misrepresentations and Omissions").)

"***bona fide*** money market [mutual funds]." (Compl. ¶¶4 (emphasis in original), 6, 51-56, 61-62.)

This alleged failure to sweep into (<u>i.e.</u>, buy) money market mutual funds, which are "covered

securities" under SLUSA, falls directly within the ambit of SLUSA. (Joint Br. at 7-8.)

Accordingly, all of Plaintiff's state law claims are precluded by SLUSA and must be dismissed.

### B.    <u>All of the State Law Claims Are Preempted by Federal Law Governing Securities and New York's Martin Act</u>

Plaintiff seeks to impose liability under New York state law based on allegations that (i)

interest rates paid on uninvested cash either through TD Ameritrade Cash or cash balances swept

into the MMDAs were lower than Plaintiff would have received if TD Ameritrade offered a

money market mutual fund sweep option (Compl. ¶¶4, 18, 51, 55, 62); (ii) TD Ameritrade paid

higher interest rates to accounts with higher balances (<u>id.</u> ¶¶54-55, 63-65); (iii) Defendants did

not adequately disclose the attributes of money market deposit accounts (<u>id.</u> ¶¶4, 52-56, 61-62);

and (iv) Defendants did not adequately disclose the amount of their profits from the sweep

program (<u>id.</u> ¶¶59-60, 63-64). In other words, Plaintiff seeks to use state causes of action to hold

financial institutions liable for sweeping uninvested cash into an FDIC-insured deposit account

instead of money market mutual funds, to mandate minimum rates of return and/or to regulate

disclosures associated with sweep programs. This is improper.

As set forth in the Joint Brief, sweep programs and related disclosures are extensively

regulated by federal law, including:

- Federal securities regulations governing customer free credit balances (Joint Br. at 11-14; see 17 C.F.R. § 240.15c3-2 (2007) (permitting broker dealers to use free credits in connection with business operations));

- Self-regulatory organization regulations, including guidance regarding sweep programs (Joint Br. at 14; <u>see</u>, <u>e.g.</u>, NYSE Information Memo 05-11);

- Federal laws and regulations concerning advertising, including the Truth in Savings Act (Joint Br. at 15-16; 12 U.S.C. §§ 4302-04; 12 C.F.R. §§ 230.4, 230.5 (2007); and

- The National Bank Act (12 U.S.C. §§ 21-216d) (the "NBA") (the authority to establish, maintain and operate sweep accounts is an incidental power under the NBA) (Joint Br. at 16-18;).[19]

The state laws upon which Plaintiff predicates its causes of action conflict with and therefore are preempted by these federal laws and regulations. (Joint Br. at 8-18.) In addition, New York's Martin Act, N.Y. Gen. Bus. Law §§ 352 to 359-h (McKinney 1996 & Supp. 2007), specifically preempts all private rights of actions in the form of claims for breach of fiduciary duty, negligence, negligent misrepresentation and unjust enrichment where the claim relates to a security (such as the money market mutual funds at issue). (Joint Br. at 18-19.) Accordingly, all of the state law claims are preempted and must be dismissed.

**C.     Plaintiff Has Failed to Plead the Elements of Fraud**

Separate and apart from Plaintiff's failure to identify a material misstatement or omission (see supra Section I), Plaintiff's common law fraud claim fails for a number of additional, independent reasons.[20] First, Plaintiff alleges that each Defendant engaged in fraud. However, Plaintiff only identifies allegedly deceptive statements attributable to TD Ameritrade. Plaintiff does not identify any statement by TD Ameritrade Holding, TD or TD Bank and therefore they cannot be liable. (Joint Br. at 20, 22-23.)

Second, to the extent Plaintiff attempts to ground a fraud claim in an alleged omission of material fact, Plaintiff has not pled the existence of the duty necessary to support such a claim, and no such duty exists. (Joint Br. at 25-26.)

Third, apart from the vague conclusion that he "relied upon the above described

---

[19] TD Bank USA, N.A. is a national bank and therefore the NBA is applicable. (Joint Br. at 17 n.17.)

[20] For additional reasons why Plaintiff cannot maintain a fraud claim, see the Joint Brief at 22-29.

misrepresentations, concealment and omissions," Plaintiff has not pled facts demonstrating actual or justifiable reliance. For example, Plaintiff has not stated that on Date X, he read Disclosure Y, which was materially misleading, and that caused him to take Action Z. Absent such allegations, the fraud claim must be dismissed. (Joint Br. at 27-28.) Moreover, in view of (i) TD Ameritrade's disclosures (see supra Section B to "Statement of Facts"); and (ii) the fact that four of Plaintiff's five accounts were never in the MMDA during the class period, any such reliance would be unreasonable as a matter of law. (Joint Br. at 28.)

Fourth, the fraud claim fails because Plaintiff fails to plead facts that give rise to a strong inference of fraudulent intent, as required under Fed. R. Civ. P. 9(b). (Joint Br. at 26-27.)

Finally, Plaintiff seeks lost profits for the alleged fraud: the difference between the interest paid through the MMDA program and the return that would have been paid if uninvested cash were invested in a money market mutual fund. However, lost profits are not recoverable for fraud (or negligent misrepresentation). (Joint Br. at 28-29.)

### D. Plaintiff Has Failed to State a Claim for Aiding and Abetting Breach of Fiduciary Duty

Plaintiff's claim for aiding and abetting breach of fiduciary duty also fails for the reasons set forth in the Joint Brief at 39-42; namely that no underlying fiduciary duty exists, and Plaintiff did not plead actual knowledge and substantial assistance with particularity. The Joint Brief squarely addresses why Plaintiff's unsupported allegations that TD, TD Bank, and TD Ameritrade Holding "knew of . . . the fiduciary breaches," "orchestrat[ed] and direct[ed] the bank account sweep," "arrang[ed] for TD Bank to be used for bank sweep accounts," and "review[ed] and approv[ed] or ratif[ied] both the bank sweep program adopted by TD

Ameritrade and the disclosures made by TD Ameritrade," are conclusory and thus insufficient to survive a motion to dismiss. (See Joint Br. at 40-42; Compl. ¶101.)[21]

### E.    Plaintiff's Negligence Claim Must Be Dismissed

Plaintiff's negligence claim (only against TD Ameritrade) essentially repeats the fraud claim, and Plaintiff alleges that but for TD Ameritrade's negligence, TD Ameritrade customers "could have received higher rates through other alternatives such as the money market funds." (Compl. ¶22.) The claim must be dismissed for three independent reasons.

First, the claim is purportedly grounded in misrepresentations and omissions but, as demonstrated supra, there are no actionable misstatements or omissions. Second, as set forth in the Joint Brief, New York does not recognize negligence claims based purely on such alleged economic loss. (Joint Br. at 42-43.) Third, the negligence claim must be dismissed because the sweep program, including the use of negative consent, is governed by contract, and Plaintiff essentially is seeking contract damages. Because Plaintiff cannot turn an ordinary contract claim into a negligence claim, the claim must be dismissed. (Joint Br. at 43-44.)

Plaintiff also alleges that TD Ameritrade's sweep program did not comply with NYSE Information Memo 05-11 (which suggests practices for the implementation of, and changes to, bank sweep programs), and other self-regulatory organization rules such as those pertaining to "suitability" of investments. (Compl. ¶¶37-46.) Plaintiff then claims that TD Ameritrade was negligent for allegedly failing to comply with NYSE and NASD rules. (Compl. ¶108.) The assertion that TD Ameritrade failed to comply with any self-regulatory requirements is baseless. But the Court need not decide whether Plaintiff has failed to allege facts sufficient to show a

---

[21] Moreover, to the extent that Plaintiff's state law claims are simply dressed up federal securities fraud claims (i.e., claims that Defendants made misrepresentations when failing to invest in securities): (i) they are precluded by SLUSA; and (ii) the Supreme Court has long held that there can be no aiding and abetting liability for securities fraud. See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191 (1994).

failure to comply with self-regulatory requirements because, as a matter of law, the requirements do not create a private right of action.  (Joint Br. at 31.)  See, e.g., Gurfein v. Ameritrade, Inc., 2007 WL 2049771, at *3 (S.D.N.Y. July 17, 2007); SSH Co., v. Shearson Lehman Bros. Inc., 678 F. Supp. 1055, 1058 (S.D.N.Y. 1987); Newman, 651 F. Supp. at 162.

### F.     Plaintiff's Negligent Misrepresentation Claim Must Be Dismissed

Plaintiff's negligent misrepresentation claim must be dismissed because:  (i) Plaintiff has not alleged any material or actionable misrepresentations or omissions (see supra Section I); (ii) Plaintiff has not alleged reasonable reliance (see supra Section IV.C); (iii) Plaintiff cannot recover lost profits (see id.); and (iv) the arm's-length contract between Plaintiff and TD Ameritrade does not give rise to any "special relationship."  (Joint Br. at 46.)

### G.     Plaintiff's Unjust Enrichment Claim Must Be Dismissed

As set forth in the Joint Brief at 44-45, unjust enrichment can exist only in the absence of a contract.  Plaintiff's unjust enrichment claim must be dismissed because, as Plaintiff concedes, "Plaintiff . . . entered into contracts with TD Ameritrade to open and maintain brokerage accounts" (Compl. ¶112), and these agreements expressly cover the sweep program.  See supra Section B to "Statement of Facts."

### H.     Plaintiff's Claim Under N.Y. Gen. Bus. Law § 349 Must Be Dismissed

Plaintiff fails to plead the elements of a claim under N.Y. Gen. Bus. Law § 349 (See Joint Br. at 34.)  First, Plaintiff's claim of deception relates to his brokerage account (Compl. ¶76), and therefore is not the kind of "consumer-oriented" practice contemplated by Section 349. Second, as set forth in Section I supra, Plaintiff has not alleged actionable deceptive conduct or misstatements or omissions.  Finally, Plaintiff has not pled how he actually or justifiably relied on TD Ameritrade's allegedly deceptive conduct to his detriment, and cannot plead such reliance.  See supra Section IV.C.

## CONCLUSION

For all of the reasons set forth above and in the Joint Brief, Plaintiff's claims should be dismissed with prejudice.


Dated:          January 7, 2008
                New York, New York


                                        _____/s/_____
                                        MORGAN, LEWIS & BOCKIUS LLP
                                          Christopher P. Hall
                                          Brian A. Herman
                                          Matthew Stratton
                                        101 Park Avenue
                                        New York, NY 10178
                                        Telephone:  212-309-6000
                                        Facsimile:  212-309-6001

                                        Attorneys for Defendants TD Ameritrade Holding
                                        Corporation, TD Ameritrade, Inc., TD Bank USA,
                                        N.A. and The Toronto-Dominion Bank