# EXHIBIT G
## Part III of III

If you file a joint tax return with your spouse and your combined Modified AGI is $150,000 or less, you may contribute up to the Applicable Annual Dollar Limitation, plus the additional catch-up amount, if applicable, to your Roth IRA. If your combined Modified AGI is $160,000 or more, no contribution is permitted. If your Modified AGI is over $150,000 but less than $160,000, then a calculation similar to the one described above must be made. For 2005, the calculation reduces each spouse's otherwise allowable Roth IRA contribution limit by .30 (or .35 if you are age 50 older) for every $1 of Modified AGI between $150,000 and $160,000.

Married Persons Filing Separate Returns (who lived together at any time during the year).
If you have a separate Modified AGI of more than $10,000, no contribution is permitted to your Roth IRA. For 2005, if your or your Spouse's separate Modified AGI is more than $0 but less than $10,000, then the Roth IRA contribution limit is reduced by .30 (or .35 if you are age 50 older) for every $1 of Modified AGI between $0 and $10,000.

Spousal Roth IRAs.
If you and your spouse file a joint tax return and have unequal compensation (including no compensation for one spouse) you may establish separate Roth IRAs for each spouse. The total annual contribution limit for both Roth IRAs may not exceed 100% of the combined compensation for both spouses, but neither Roth IRA may accept more than the Applicable Annual Dollar Limitation per spouse, plus the additional catch-up amount, if applicable. The maximum Roth IRA contribution for the spouse is then reduced by:
1. regular Traditional IRA contributions made on behalf of such spouse; and
2. Roth IRA contributions made on behalf of such spouse.
This annual limit may be further reduced if the modified AGI exceeds the levels discussed above.

$200 Minimum Roth IRA Contribution.
If you fall into any of the categories listed above, your minimum allowable Roth IRA contribution will be $200 until phased out under the appropriate marital status. In other words, if your Roth IRA contribution amount calculated under the appropriate dollar amounts discussed above results in a contribution between $0 and $200, your permitted contribution is $200 instead of the calculated amount. If the result is not a multiple of $10, round up to the nearest $10.

Modified AGI.
Modified AGI does not include any distributions from a Traditional IRA that are converted to a Roth IRA and included in income. Modified AGI is determined before deductible Traditional IRA contributions. Effective for distributions after December 31, 2004, modified AGI does not include any amounts that are required minimum distributions pursuant to section 408(a)(6) only for purposes of determining eligibility for conversion contributions.

Other Contributions.
Your Roth IRA may not accept rollovers from an employer-sponsored plan, employer contributions made under a SEP or SIMPLE plan, and Traditional IRA contributions. However, certain rollovers and transfers as described below may be made.

Miscellaneous Contribution Rules.
Contributions are permitted after you attain age 70 1/2, so long as you have compensation and meet the AGI limits described above. Contributions are permitted regardless of whether you are an active participant in an employer-sponsored plan.

Excess Contributions to a Roth IRA — Generally, an excess Roth IRA contribution is any contribution which exceeds the contribution limits. Such excess amount is subject to a 6% excise tax on the principal remaining amount of the excess each year, until the excess is corrected.

Method of Withdrawing Excess in a Timely Manner.
This 6% excise tax may be avoided if the excess amount, plus the earnings attributable to the excess, are distributed to you by your tax-filing deadline, including extensions for the year during which the excess contribution was made. If you decide to correct your excess in this manner, the principal amount of the excess returned to you is not taxable; however, the earnings attributable to the excess are taxable to you in the year in which the contribution was made. In addition, if you are under age 59 1/2, the earnings attributable to the excess amount are subject to a 10% additional income tax. This is the only method of correcting an excess contribution that will avoid the 6% excise tax!

Under-contribution Method.

If an excess contribution is not corrected by the tax-filing deadline, including extensions, for the year during which the excess contribution was made, such excess contribution may be applied, on a year-by-year basis, against the annual limit for regular Roth IRA contributions. However, in order to "carry over" the excess contribution and treat it as a contribution made for a subsequent year, the participant must meet the eligibility requirements for the subsequent year. In addition, the taxpayer is subject to the 6% excise tax for the initial year, and each subsequent year, until the excess is used up.

Contribution Recharacterizations — You may be able to recharacterize certain contributions under the following two different circumstances:
1. By recharacterizing a current year regular contribution plus earnings explained in this section; or
2. By recharacterizing a conversion made to a Roth IRA by transferring the amount plus earnings back to a Traditional IRA, discussed in the next section under the heading "Conversion from a Traditional IRA to a Roth IRA." If you decide by your tax-filing deadline (including extensions) of the year for which the contribution was made to transfer a current year contribution plus earnings from your Traditional IRA to a Roth IRA, no amount will be included in your gross income as long as you did not take a deduction for the amount of the contribution. You may also recharacterize a current year contribution plus earnings from your Roth IRA to a Traditional IRA by your tax-filing deadline, including extensions of the year for which the contribution was made. In order to recharacterize a regular contribution from one type of IRA to another type of IRA, you must be eligible to make a regular contribution to the IRA to which the contribution plus earnings is recharacterized. All recharacterizations must be accomplished as a direct transfer, rather than a distribution and subsequent rollover. You are also required to report recharacterizations to the IRS in accordance with the instructions to IRS Form 8606. Prior year excess contributions made to an IRA that are carried over to a subsequent year cannot be recharacterized as a current year contribution to another IRA. Only actual contributions made for a taxable year may be recharacterized. Any recharacterized contribution (whether a regular contribution or a conversion) cannot be revoked after the transfer. You are required to notify both trustees (or custodians) and to provide them with certain information in order to properly effectuate such a recharacterization. A Traditional "conduit" IRA that is converted to a Roth IRA, but subsequently recharacterized back to a Traditional IRA, retains its status as a "conduit" IRA. Amounts in a SEP IRA (or SIMPLE IRA) that are converted to a Roth IRA can be recharacterized back to a SEP IRA (or SIMPLE IRA), including the original SEP IRA (or SIMPLE IRA). An election to recharacterize may be made on behalf of a deceased IRA owner by the executor, administrator, or other person charged with the duty of filing the decedent's final Federal income tax return. A recharacterization is not a designated distribution; and therefore, is not subject to Federal income tax withholding.

Rollover Roth IRA — Rollover Contribution from Another Roth IRA.
A rollover contribution from another Roth IRA is any amount you receive from one Roth IRA and within 60 days, roll some or all of it over into another Roth IRA. You are not required to roll over the entire amount received from the first Roth IRA. However, any taxable amount (generally earnings) you do not roll over will be taxed at ordinary income tax rates for Federal income tax purposes and may be subject to the 10% additional income tax. The following special rules also apply to rollovers between Roth IRAs:
• The rollover must be completed no later than the 60th day after the day the distribution was received by you from the first Roth IRA. However, if the reason for distribution was for qualified first-time home buyer expenses and there has been a delay or cancellation in the acquisition of such first home, the 60-day rollover period is increased to 120 days. This 60-day rollover period is also extended in cases of disaster or casualty beyond the reasonable control of the taxpayer.
• You may have only one Roth IRA to Roth IRA rollover during a 12-consecutive month period measured from the date you received a distribution from a Roth IRA, which was rolled over to another Roth IRA. (See IRS Publication 590 for more information.)
• The same property you receive in a distribution from the first Roth IRA must be the same property you roll over into the second Roth IRA. For example, if you receive a distribution from a Roth IRA of property, such as stocks, that same stock must be the property rolled over into the second Roth IRA.
• You are required to make an irrevocable election indicating that this transaction will be treated as a rollover contribution.
• You are not required to receive a complete distribution from your Roth IRA in order to make a rollover contribution into another Roth IRA, nor are you required to roll over the entire amount you received from the first Roth IRA into the second Roth IRA.
• If you inherit a Roth IRA due to the death of the participant, you may not roll this Roth IRA into your own Roth IRA, unless you are the spouse of the deceased Roth IRA participant.

Rollovers From Employer-Sponsored Plans Not Permitted.
You may not rollover from an employer-sponsored plan to a Roth IRA. However, you may rollover from an employer sponsored plan to a Traditional IRA and then "convert" the Traditional IRA to a Roth IRA in a

Conversion explained below. For more information concerning rollovers from an employer-sponsored retirement plan to a Traditional IRA, please refer to the traditional IRA's disclosure statement.

Conversion from a Traditional IRA to a Roth IRA.
You are permitted to make a qualified rollover contribution from a traditional IRA to a Roth IRA if your Modified AGI (not including the taxable amount converted) for the year during which the distribution is made does not exceed $100,000, and you are not a married person filing a separate tax return. This is called a "conversion" and may be done at any time without waiting the usual 12 months. You are also permitted to recharacterize a conversion made to a Roth IRA if the amount plus earnings is transferred back to a Traditional IRA before your tax-filing deadline, including extensions for the year the amount was distributed from the Traditional IRA that was converted to the Roth IRA.

Taxation in Completing a Conversion from a Traditional IRA to a Roth IRA.
If you complete a conversion from a Traditional IRA to a Roth IRA, the conversion amount (to the extent taxable) is generally included in your gross income for the year during which the distribution is made from your Traditional IRA that is converted to a Roth IRA. However, the 10% additional income tax for premature distributions does not apply. Any taxable conversions from a Traditional IRA to a Roth IRA will be fully includable in income the year in which you receive the distribution from your Traditional IRA that is converted to a Roth IRA.

Types of IRAs Permitted to be Converted.
Traditional IRAs, rollover "conduit" IRAs, and SEP IRAs, may be converted to a Roth IRA, so long as the taxpayer meets the eligibility requirements. A SIMPLE IRA may also be converted to a Roth IRA, but only after such SIMPLE IRA is no longer subject to the two-year holding period applicable to SIMPLE IRAs.

Required Minimum Distributions.
If the IRA owner is age 701/2 or older, the required minimum amount must first be distributed to the owner before any of the remaining amount can be converted to the Roth IRA, if eligible.
Distribution From a Roth IRA Taxation of Distributions.
"Qualified distributions" are neither subject to Federal income tax nor the 10% additional income tax for premature distributions. Nonqualified distributions are taxable to the extent such distribution is attributable to the income earned in the account. When you start withdrawing from your Roth IRA, you may take the distributions in regular payments, random withdrawals, or in a single sum payment.

Qualified Distributions. A Qualified Distribution is one that is both made:
1. on or after you attain age 591/2;
2. to a beneficiary after your death;
3. on account of you becoming disabled (defined under Section 72(m)(7) IRC); or
4. for qualified first-time homebuyer expenses; AND made after the end of the 5-year period beginning with the taxable year for which you first make any contribution to a Roth IRA. If your first contribution is a conversion from a Traditional IRA to a Roth IRA, the five-year period begins with the year in which the conversion was made from the Traditional IRA. If your first contribution is a regular contribution, the five-year period begins with the year for which the contribution was made. You may maintain only one Roth IRA plan that accepts regular contributions and conversions. Additional contributions or conversions in subsequent years will not start the running of another five-year period for purposes of determining whether or not you have received a "Qualified Distribution." If the entire Roth IRA balance is distributed before any other Roth IRA contributions are made, the five-year aging period does not start over when future contributions are made. However, if any of the following situations occur, the five-year aging period has not yet started: (a) the initial Roth IRA contribution is revoked within its first 7-day period; (b) the initial Roth IRA contribution is recharacterized to a Traditional IRA; or (c) an excess contribution, plus earnings, is distributed timely in accordance with section 408(d)(4) by the tax-filing deadline, including extensions, unless other eligible contributions were made.

Nonqualified Distributions.
Distributions from a Roth IRA that are made as a nonqualified distribution are treated as if made from contributions to the Roth IRA to the extent that such distribution, when added to all previous distributions from the Roth IRA (whether or not they were qualified distributions), and reduced by the taxable amount of such previous distributions, does not exceed the aggregate amount of contributions to the Roth IRA. In other words, nonqualified distributions are treated as taken from the nontaxable portion first (the contributions) until the aggregate distributions exceed the aggregate contributions. When the aggregate distributions exceed the aggregate contributions, then the earnings will be treated as part of the distribution for taxation purposes. The portion of the nonqualified distribution that represents earnings will be taxable

and subject to the 10% additional income tax for premature distributions, unless an exception applies. You are responsible for keeping records on the contributions you make to your Roth IRA and for figuring any taxable, nonqualified distributions from your Roth IRA.

Distributions Made Before the End of the Five-Year Period.
Distributions taken before the end of the five-year period are taxable (to the extent you receive the earnings attributable) and are subject to the 10% additional income tax if the participant is not age 59 1/2. However, the 10% additional income tax is avoided if the distribution meets any one of the exceptions under Section 72(t).

Recapture of the 10% Additional Tax.
The 10% additional tax on early distributions will apply to conversions if the taxpayer is deemed to withdraw any portion of the taxable conversion amount before the end of the five-year period commencing the year of conversion contribution, unless an exception under Section 72(t) applies. This is true even if none of the distribution is otherwise taxable.

Basis Recovery Rules for Distributions from Different IRA Plans.
The taxation of distributions from a Roth IRA shall be treated separately from the taxation of a distribution from other IRA plans. In other words, nondeductible contributions made to your Traditional IRA will continue to be recovered tax-free on a ratable basis.

Ordering Rules.
Distributions from any of your Roth IRAs are to be "deemed" withdrawn in the following order: first from regular Roth IRA contributions; second from converted amounts on a first-in, first-out basis (with the taxable conversion amount first and then the
nontaxable conversion amount); and last from the earnings. In determining these ordering rules, any amount distributed from an individual's Roth IRA is determined as of the end of a taxable year and exhausting each category before moving to the next category. The taxpayer will be required to keep track of these ordering provisions by using IRS Form 8606.

Multiple Beneficiaries.
At the Roth IRA owner's death and where multiple beneficiaries are named, each type of contribution must be allocated to each beneficiary on a pro rata basis. Thus, for example, if a Roth IRA owner dies when the Roth IRA contains a regular contribution of $2,000, a conversion contribution of $6,000 and earnings of $1,000, and the owner leaves his Roth IRA equally to four children, each child will receive one quarter of each type of contribution. Pursuant to the ordering rules, an immediate distribution of $2,000 to one of the children will be deemed to consist of $500 of regular contributions, and $1,500 of conversion contributions. For purposes of the ordering rules upon distribution, a beneficiary's inherited Roth IRAs may not be aggregated with any other Roth IRAs maintained by such beneficiary, except for other Roth IRAs that the beneficiary inherited from the same decedent. However, if the surviving spouse is the sole beneficiary of a Roth IRA and such surviving spouse elects to treat the Roth IRA as his or her own Roth IRA, the spouse can aggregate contributions with his or her other Roth IRAs for purposes of determining the ordering rules when distributions are taken. The term "spouse as sole beneficiary" means either the only primary beneficiary of the entire plan, or the only primary beneficiary of a segregated portion of the plan determined as of the December 31 of the calendar year following the year of death. Premature Distributions.
If you are under age 59 1/2 and receive a "nonqualified" distribution from your Roth IRA, a 10% additional income tax will apply to the taxable portion (generally the earnings portion) of the distribution, unless the distribution is received due to death; disability; a qualifying rollover distribution; the timely withdrawal of the principal amount of an excess; substantially equal periodic payments; certain medical expenses; health insurance premiums paid by certain unemployed individuals; qualified higher education expenses; qualified first-time homebuyer expenses; or since tax year 2000, due to an IRS levy.

Required Distributions.
Unlike a Traditional IRA, you are not required to begin distributions when you attain age 70 1/2. Also, the incidental death benefit requirements (referred to as MDIB) do not apply to the Roth IRA.

Death Distributions.
If you die and you have a designated beneficiary, the balance in your Roth IRA will be distributed to your beneficiary over the beneficiary's single life expectancy. These distributions must commence no later than December 31 of the calendar year following the calendar year of your death. However, if your spouse is your sole beneficiary, these distributions are not required to commence until the December 31 of the calendar year you would have attained the age of 70 1/2, if that date is later than the required commencement date in

the previous sentence. If you die and you do not have a designated beneficiary, the balance in your Roth IRA must be distributed no later than the December 31 of the calendar year that contains the fifth anniversary of your death.

Prohibited Transactions With a Roth IRA — If you or your beneficiary engage in a prohibited transaction (as defined under Section 4975 of the Internal Revenue Code) with your Roth IRA, it will lose its tax exemption, and you must include the taxable portion of your account in your gross income for that taxable year, and may also be subject to the 10% additional tax. If you pledge any portion of your Roth IRA as collateral for a loan, the amount so pledged will be treated as a distribution, and the taxable portion will be included in your gross income for that year, and may also be subject to the 10% additional tax.

Additional Taxes and Penalties — If you are under age 59 1/2 and receive a nonqualified premature distribution from your Roth IRA, an additional 10% income tax will apply on the taxable amount of the distribution (generally the earnings portion only), unless an exception under Section 72(t) applies. A 10% additional tax will be assessed if you are under age 59 1/2 if you are deemed to withdraw any portion of a conversion that you made from your Traditional IRA to your Roth IRA before five years have lapsed from the conversion year, even if such distribution is otherwise nontaxable. If you make an excess contribution to your Roth IRA and it is not corrected on a timely basis, an excise tax of 6% is imposed on the excess amount. This tax will apply each year to any part or all of the excess that remains in your account. If you should die, and the appropriate required death distributions are not made from your Roth IRA, an excise tax of 50% is assessed to your beneficiary based upon the difference between the amount that should have been distributed and the amount that was actually distributed. You may be required to file IRS Form 5329 with the Internal Revenue Service for any year an additional tax is due.

Income Tax Withholding — All withdrawals from your Roth IRA (except the earnings attributable to a return of excess contributions) are not subject to Federal income tax withholding.

Transfers — A direct transfer of all or a portion of your funds is permitted from this Roth IRA to another Roth IRA, or vice versa. Transfers do not constitute a distribution since you are the restriction nor the 60-day rollover period usually associated with rollovers.

If you should transfer all or a portion of your Roth IRA to your former spouse's Roth IRA under a divorce decree (or under a written instrument incident to divorce) or separation instrument, you will not be deemed to have made a taxable distribution, but merely a transfer. The portion so transferred will be treated at the time of the transfer as the Roth IRA of your spouse or former spouse.

If your spouse is the beneficiary of your Roth IRA, in the event of your death, your spouse may "assume" your Roth IRA. The assumed Roth IRA is then treated as your surviving spouse's Roth IRA.

Federal Estate and Gift Taxes — Generally there is no specific exclusion for Roth IRAs under the Federal estate-tax rules. Therefore, in the event of your death, the value of your Roth IRA will be includable in your gross estate for Federal estate-tax purposes. however, if your surviving spouse is the beneficiary of your Roth IRA, the value of your Roth IRA may qualify for the marital deduction available under Section 2056 of the Internal Revenue Code. A transfer of property for Federal gift tax purposes does not include an amount which a beneficiary receives from a Roth IRA plan.

IRS Approval as to Form — This Roth IRA Custodial Agreement has been approved by the Internal Revenue Service as to Form. This is not an endorsement of the plan in operation or of the investments offered.

Additional Information — You may obtain further information on Roth and Traditional IRAs from your District Office of the Internal Revenue Service. In particular, you may wish to obtain IRS Publication 590 (Individual Retirement Arrangements).

**TD AMERITRADE Coverdell Education (TD Bank USA, N.A. as Custodian)**
**Savings Custodial Account Agreement**
(Under Section 530 of the Internal Revenue Code) Please save this agreement for future reference.
Article I
1.01 The custodian may accept additional cash contributions provided the designated beneficiary has not attained the age of 18 as of the date such contributions are made. Contributions by an individual contributor may be made for the tax year of the designated beneficiary by the due date of the beneficiary's tax return for that year (excluding extensions). Total contributions that are not rollover contributions described in section

530(d)(5) are limited to $2,000 for the tax year. In the case of an individual contributor, the $2,000 limitation for any year is phased out between modified adjusted gross income (AGI) of $95,000 and $110,000. For married individuals filing jointly, the phase-out occurs between modified AGI of $190,000 and $220,000. Modified AGI is defined in section 530(c)(2).

Article II

2.01 No part of the custodial account funds may be invested in life insurance contracts, nor may the assets of the custodial account be commingled with other property, except in a common trust fund or a common investment fund (within the meaning of section 530(b)(1)(D)).

Article III

3.01 Any balance to the credit of the Designated Beneficiary on the date on which he or she attains age 30 shall be distributed to him or her within 30 days of such date.

3.02 Any balance to the credit of the Designated Beneficiary shall be distributed within 30 days of his or her death, unless the Designated Death Beneficiary is a family member of the Designated Beneficiary, and is under the age of 30 on the date of death. In such case, that family member shall become the Designated Beneficiary as of the date of death.

Article IV

4.01 The Depositor shall have the power to direct the Custodian regarding the investment of the above-listed amount assigned to the custodial account (including earnings thereon) in the investment choices offered by the Custodian. The Responsible Individual, however, shall have the power to redirect the Custodian regarding the investment of such amounts, as well as the power to direct the Custodian regarding the investment of all additional contributions (including earnings thereon) to the custodial account. In the event that the Responsible Individual does not direct the Custodian regarding the investment of additional contributions (including earnings thereon), the initial investment direction of the Depositor also will govern all additional contributions made to the custodial account, until such time as the responsible individual otherwise directs the Custodian. Unless otherwise provided in this agreement, the Responsible Individual also shall have the power to direct the Custodian regarding the administration, management, and distribution of the account.

Article V

5.01 The "Responsible Individual" named by the Depositor shall be a parent or guardian of the Designated Beneficiary. The Custodial Account shall have only one Responsible Individual at any time. If the Responsible Individual becomes incapacitated or dies while the Designated Beneficiary is a minor under state law, the Successor Responsible Individual shall be the person named to succeed in that capacity by the preceding Responsible Individual in a witnessed writing or, if no Successor is so named, the Successor Responsible Individual shall be the Designated Beneficiary's other parent or Successor Guardian. Unless otherwise directed by checking the option in the Application, at the time that the Designated Beneficiary attains the age of majority under state law, the Designated Beneficiary becomes the Responsible Individual. If a family member under the age of majority under state law becomes the Designated Beneficiary by reason of being a named death beneficiary, the Responsible Individual shall be such Designated Beneficiary's parent or guardian.

5.02 If elected in the Application, the Responsible Individual shall continue to serve as the Responsible Individual for the custodial account after the Designated Beneficiary attains the age of majority under state law, and until such time as all assets have been distributed from the custodial account and the custodial account terminates. If the Responsible Individual becomes incapacitated or dies after the Designated Beneficiary reaches the age of majority under state law, the responsible Individual shall be the Designated Beneficiary.

Article VI

6.01 If elected in the Application, the Responsible Individual may change the beneficiary designated under this agreement to another member of the Designated Beneficiary's family, described in section 529(e)(2) in accordance with the Custodian's procedures.

Article VII

7.01 The Depositor agrees to provide the Custodian with all information necessary to prepare any reports required by section 530(h).

7.02 The Custodian agrees to submit to the Internal Revenue Service (IRS) and the Responsible Individual the reports prescribed by the IRS.

Article VIII

8.01 Notwithstanding any other articles which may be added or incorporated, the provisions of Articles I through III will be controlling. Any additional articles inconsistent with section 530 and the related regulations will be invalid.

Article IX

9.01 This agreement will be amended as necessary to comply with the provisions of the Code and the related regulations. Other amendments may be made with the consent of the Depositor and Custodian whose signatures appear on the Application.

Article X

10.01 Applicable Law. This Custodial Agreement shall be governed by the laws of the State of New York, unless otherwise specifically provided in the Application.

10.02 Annual Accounting. The Custodian shall, at least annually, provide the Designated Beneficiary (or the Responsible Individual, if applicable) with an accounting of such Designated Beneficiary's account. Such accounting shall be deemed to be accepted by the Designated Beneficiary, if the Designated Beneficiary (or Responsible Individual) does not object in writing within 60 days after the mailing of such accounting.

10.03 Amendment. The Depositor, Designated Beneficiary, and Responsible Individual irrevocably delegates to the Custodian the right and power to amend this Custodial Agreement. Except as hereafter provided, the Custodian will give the Designated Beneficiary (or Responsible Individual) 30 days prior written notice of any amendment. In case of a retroactive amendment required by law, the Custodian will provide written notice to the Designated Beneficiary (or Responsible Individual) of the amendment within 30 days after the amendment is made, or if later, by the time that notice of the amendment is required to be given under regulations or other guidance provided by the IRS. The Depositor, Designated Beneficiary, and Responsible Individual shall be deemed to have consented to any such amendment unless the Designated Beneficiary (or Responsible Individual) notifies the Custodian to the contrary within 30 days after notice to the Designated Beneficiary (or Responsible Individual) and requests a distribution or transfer of the balance in the account.

10.04 Resignation and Removal of Custodian.

(a) The Custodian may resign at any time by giving at least 30-days notice to the Designated Beneficiary (or Responsible Individual). The Custodian may resign and appoint a Successor Trustee or Custodian to serve under this agreement, or under another governing instrument selected by the Successor Trustee or Custodian, by giving the Designated Beneficiary (or Responsible Individual) written notice at least 30 days prior to the effective date of such resignation and appointment, which notice shall also include a copy of such other governing instrument, if applicable, and the related disclosure statement. The Designated Beneficiary (or Responsible individual) shall then have 30 days from the date of such notice to either request a complete distribution of the account balance, or designate a different Successor Trustee or Custodian. If the Designated Beneficiary (or Responsible Individual) does not request distribution of the account or designate a different Successor within such 30 days, the Designated Beneficiary (or Responsible individual) shall be deemed to have consented to the appointment of the Successor Trustee or Custodian and the terms of any new governing instrument, and neither the Depositor, Designated Beneficiary, Responsible Individual, nor the Successor shall be required to execute any written document to complete the transfer of the account to the Successor Trustee or Custodian. The Successor Trustee or Custodian may rely on any information, including Death Beneficiary Designations, previously provided by the Depositor, Designated Beneficiary, or Responsible Individual. (b) The Designated Beneficiary (or Responsible Individual) may at any time remove the Custodian and replace the Custodian with a successor trustee or custodian of the Designated Beneficiary's (or Responsible Individual's) choice by giving 30 days written notice to the Custodian. In such event, the Custodian shall then deliver the assets of the account as directed by the Designated Beneficiary or Responsible Individual. However, the Custodian may retain a portion of the assets of the Coverdell ESA as a reserve for payment of any anticipated remaining fees and expenses, and shall pay over any remainder of this reserve to the successor trustee or custodian upon satisfaction of such fees and expenses.

10.05 Custodian's Fees and Expenses.

(a) The Depositor, Designated Beneficiary, and Responsible Individual agree that the Custodian shall be entitled to receive any and all fees specified in the Custodian's current published fee schedule for establishing and maintaining this Coverdell ESA, including, but not limited to, any fees for distributions from transfers and terminations of this Coverdell ESA. The Custodian may change its fee schedule at any time by giving the Designated Beneficiary (or Responsible Individual) 30 days prior written notice. (b) The Depositor, Designated Beneficiary, and Responsible Individual agree that the Custodian shall be entitled to reimbursement for any expenses incurred by the Custodian in the performance of its duties in connection with the account. Such expenses include, but are not limited to, administrative expenses, such as legal and accounting fees, and any taxes of any kind whatsoever that may be levied or assessed with respect to such account. (c) All such fees, taxes, and other administrative expenses charged to the account shall be collected either from the assets in the account, or from any contributions to, or distributions from, such account if not paid by the Depositor, Designated Beneficiary, or Responsible Individual, but the Depositor, Designated Beneficiary, and Responsible Individual shall be responsible for any deficiency. (d) In the event that for any reason the Custodian is not certain as to who is entitled to receive all or part of the Custodial Funds, the Custodian reserves the right to withhold any payment from the Custodial Account, to request a court ruling to determine the disposition of the Custodial assets, and to charge the Custodial Account for any expenses incurred in obtaining such legal determination.

10.06 Withdrawal Requests. All requests for withdrawal, distribution, or payment from the account shall be in writing on a form provided and accepted by the Custodian. Such written request must also specify the

reason for the withdrawal, distribution, or payment, and the desired method or form of withdrawal, payment, or distribution.

10.07 Responsibilities. The Depositor, Designated Beneficiary, and Responsible Individual represent that all information and instructions given to the Custodian by the Depositor, Designated Beneficiary, and Responsible Individual is complete and accurate, and that the Custodian shall have no responsibility for any incomplete or inaccurate information provided by the Depositor, designated Beneficiary, or Responsible Individual. The Depositor, Designated Beneficiary, and Responsible Individual agree to be responsible for all tax consequences arising from contributions to and distributions from this Custodial Account and acknowledge that no tax advice has been provided by the Custodian.

10.08 Change of Designated Beneficiary.
(a) If elected in the Application, while the Designated Beneficiary is a minor or otherwise lacks legal capacity, the Responsible Individual may at any time change the Designated Beneficiary for this Coverdell ESA to any member of the family under the age of 30 of the original Designated Beneficiary, or direct the Custodian to roll over or transfer the funds in this Coverdell ESA to a Coverdell ESA for any member of the family under the age of 30 of the original Designated Beneficiary. If elected in the Application, when the Designated Beneficiary has legal capacity, the Designated Beneficiary may at any time change the Designated Beneficiary for this Coverdell ESA to any member of the family under the age of 30 of the original Designated Beneficiary or direct the Custodian to roll over or transfer the funds in this Coverdell ESA to a Coverdell ESA for any member of the family under the age of 30 of the original Designated Beneficiary.
(b) Any change of Designated Beneficiary under this Coverdell ESA agreement shall not be treated as a distribution, if the new Designated Beneficiary is a Member of the Family (as defined under section 10.10) and such new Designated Beneficiary has not attained the age of 30, as of the date of such change. (c) Notwithstanding Section 3.01, a new Designated Beneficiary may be named within 30 days after the Designated Beneficiary attains the age of 30.

10.09 Designated Beneficiary's Minority or Incapacity. The following provisions apply while the Designated Beneficiary is a minor or lacks legal capacity: (a) The Responsible Individual shall have, to the exclusion of the Designated Beneficiary, all of the rights, powers, and responsibilities granted to the Designated Beneficiary under this Custodial Agreement, including, without limitation, the right to receive accountings and notices of amendment and resignation, the power to remove and replace the Custodian, the power to direct investments, the power to request withdrawals, distributions, and payments, and the power to direct a rollover or transfer to the trustee or custodian of a Coverdell ESA for the Designated Beneficiary or another member of the family of the Designated beneficiary. (b) In the event the Responsible Individual dies, becomes disabled, or otherwise fails or refuses to act, and no successor Responsible Individual has been appointed, or no duly appointed Responsible Individual is willing or able to serve, then a parent of the Designated Beneficiary or the legal guardian or conservator of the estate of the Designated Beneficiary may appoint a Responsible Individual in writing on a form acceptable to and filed with the Custodian.

10.10 Member of the Family. The term "member of the family of the Designated Beneficiary" includes the Designated Beneficiary's: spouse, children, grandchildren, sibling, parent, niece or nephew, son-in-law, daughter-in-law, father-in-law, mother-in law, brother-in-law, or sister-in-law; and spouses of the foregoing. A first cousin, but not his or her spouse, is also considered a family member.

10.11 Designated Death Beneficiary. In accordance with Article 3.02 of this Agreement, and if permitted by the Custodian, the Depositor, Designated Beneficiary, or Responsible Individual shall have the right to name a Designated Death Beneficiary(ies) on a form provided by and acceptable to the Custodian. In the event of the Designated Beneficiary's death, such Designated Death Beneficiary(ies) shall be entitled to the remaining interest in the account. If any such Designated Death Beneficiary is not a member of the family (as defined in Article 10.10 of this Agreement), the remaining balance in the account shall be distributed to the Designated Death Beneficiary within 30 days of the death of the Designated Beneficiary. If any such Designated Death Beneficiary is a member of the family (as defined in Article 10.10 of this Agreement), the remaining balance in the account shall become the Coverdell ESA of the Designated Death Beneficiary. If no death beneficiary designation is in effect, or if none of the Death Beneficiaries survive the Designated Beneficiary, the remaining balance will be paid to the estate of the Designated Beneficiary.

Article XI Self-Directed Coverdell ESA Provisions

11.01 Investment of Contributions. At the direction of the Designated Beneficiary (or the direction of the Depositor or the Responsible Individual, whichever applies) the Custodian shall invest all contributions to the account and earnings thereon in investments acceptable to the Custodian, which may include marketable securities traded on a recognized exchange or "over the counter" (excluding any securities issued by the Custodian), covered call options, Certificates of Deposit, and other investments to which the Custodian consents, in such amounts as are specifically selected and specified in orders to the Custodian in such form as may be acceptable to the Custodian, without any duty to diversify, and without regard to whether such property is authorized by the laws of any jurisdiction as a custodial account investment. The Custodian shall be responsible for the execution of such orders and for maintaining adequate records thereof. However, if any such orders are not received as required, or, if received, are unclear in the opinion of the Custodian, all

or a portion of the contribution may be held uninvested without liability for loss of income or appreciation, and without liability for interest pending receipt of such orders or clarification, or the contribution may be returned. The Custodian may, but need not, establish programs under which cash deposits within parameters set by it will be periodically and automatically invested in a TD AMERITRADE FDIC-insured money market account. Cash deposits outside of these parameters may not be invested or may permit the Depositor to select among alternative investments funds made available by the Custodian for this purpose. The Custodian shall have no duty other than to follow the written investment directions of the Designated Beneficiary (or the Depositor or Responsible Individual), and shall be under no duty to question said instructions and shall not be liable for any investment losses sustained by the Designated Beneficiary. All transactions shall be subject to any and all applicable Federal, State, and self-regulatory organization laws and regulations, the rules, regulations, customs and usages of any Exchange, Market, or clearinghouse where the transaction is executed, and to the Custodian's prevailing policies and practices.

11.02 Registration. All assets of the account shall be registered in the name of the Custodian or of a suitable nominee. The same nominee may be used with respect to assets of other investors whether or not held under agreements similar to this one, or in any capacity whatsoever. However, each Designated Beneficiary's account shall be separate and distinct; a separate account therefore shall be maintained by the Custodian, and the assets thereof shall be held by the Custodian in individual or bulk segregation, either in the Custodian's vaults or in depositories approved by the Securities and Exchange Commission under the Securities Exchange Act of 1934.

11.03 Investment Advisor. The Designated Beneficiary (or Depositor or Responsible Individual) may appoint an Investment Advisor, qualified under Section 3 (38) of the Employee Retirement Income Security Act of 1974, to direct the investment of this Coverdell ESA. The Designated Beneficiary shall notify the Custodian in writing of any such appointment by providing the Custodian a copy of the instruments appointing the Investment Advisor and evidencing the Investment Advisor's acceptance of such appointment, an acknowledgement by the Investment Advisor that it is a fiduciary of the account, and a certificate evidencing the Investment Advisor's current registration under the Investment Advisor's Act of 1940. The Custodian shall comply with any investment directions furnished to it by the Investment Advisor, unless and until it receives written notification from the Designated Beneficiary, Depositor, or Responsible Individual that the Investment Advisor's appointment has been terminated. The Custodian shall have no duty other than to follow the written investment directions of such Investment Advisor and shall be under no duty to question said instructions, and the Custodian shall not be liable for any investment losses sustained by the Designated Beneficiary.

11.04 No Investment Advice. The Custodian does not assume any responsibility for rendering advice with respect to the investment and reinvestment of this Coverdell ESA and shall not be liable for any loss which results from the Designated Beneficiary's exercise of control over his account. The Custodian and Designated Beneficiary (or Depositor or Responsible Individual) may specifically agree in writing that the Custodian shall render such advice, but the Designated Beneficiary, Depositor, or Responsible Individual shall still have and exercise exclusive responsibility for control over the investment of the assets of the account, and the Custodian shall not have any duty to question investment directives.

11.05 Prohibited Transactions. Notwithstanding anything contained herein to the contrary, the Custodian shall not lend any part of the corpus or income of the account to; pay any compensation for personal services rendered to the account to; make any part of its services available on a preferential basis to; acquire for the account any property, other than cash, from; or sell any property to, any Designated Beneficiary, any member of a Designated Beneficiary's family, or a corporation controlled by any Designated Beneficiary through the ownership, directly or indirectly, of 50 percent or more of the total combined voting power of all classes of stock entitled to vote, or of 50 percent or more of the total value of shares of all classes of stock of such corporation.

11.06 Unrelated Business Income Tax. If the Designated Beneficiary, Depositor, or Responsible Individual directs investment of the account in any investment which results in unrelated business taxable income, it shall be the responsibility of the Designated
Beneficiary, Depositor, or Responsible Individual to so advise the Custodian and to provide the Custodian with all information necessary to prepare and file any required returns or reports for the account. As the Custodian may deem necessary, and at the Designated Beneficiary's (or Depositor's or Responsible Individual's) expense, the Custodian may request a taxpayer identification number for the account, file any returns, reports, and applications for extension, and pay any taxes or estimated taxes owed with respect to the account. The Custodian may retain suitable accountants, attorneys, or other agents to assist it in performing such responsibilities.

11.07 Disclosures and Voting. The Custodian shall deliver, or cause to be executed and delivered, to the Designated Beneficiary, Depositor or Responsible Individual all notices, prospectuses, financial statements, proxies and proxy soliciting materials relating to assets credited to the account. The Custodian shall not vote any shares of stock or take any other action, pursuant to such documents, with respect to such assets

except upon receipt by the Custodian of adequate written instructions from Designated Beneficiary, Depositor, or Responsible Individual.

11.08 Miscellaneous Expenses. In addition to those expenses set out in Section 10.05 of this plan, the Designated Beneficiary, Depositor, or Responsible Individual agrees to pay any and all expenses incurred by the Custodian in connection with the investment of the account, including expenses of preparation and filing any returns and reports with regard to unrelated business income, including taxes, and estimated taxes, as well as any transfer taxes incurred in connection with the investment or reinvestment of the assets of the account.

11.09 Nonbank Custodian Provision. If the Custodian is a Nonbank Custodian, the Designated Beneficiary, Depositor, or Responsible Individual shall substitute another trustee or custodian in place of the Custodian upon receipt of notice from the Commissioner of the Internal Revenue Service or his delegate that such substitution is required because the Custodian has failed to comply with the requirements of Income Tax Regulations Section 1.408-2(e), or is not keeping such records, making such returns, or rendering such statements as are required by applicable law, regulations, or other rulings. The Successor Trustee or Custodian shall be a bank, insured credit union, or other person satisfactory to the Secretary of the Treasury pursuant to Section 408(a)(2) of the Code. Upon receipt by the Custodian of written acceptance by its Successor of such Successor's appointment, Custodian shall transfer and pay over to such successor the assets of the account (less amounts retained pursuant to Section 10.04 of the Custodial Agreement) and all records (or copies thereof) of the Custodian pertaining thereto, provided that the Successor Trustee or Custodian agrees not to dispose of any such records without the Custodian's consent.

General Instructions — (Section references are to the Internal Revenue Code unless otherwise noted.)
Purpose of Form — Form 5305-EA is a model Custodial Account Agreement that meets the requirements of section 530(b)(1) and has been preapproved by the IRS. A Coverdell Education Savings Account (ESA) is established after the form is fully executed by both the Depositor and the Custodian. This account must be created in the United States for the exclusive purpose of paying the qualified elementary, secondary, and higher education expenses of the Designated Beneficiary. If the model account is a trust account, see Form 5305-E, Coverdell Education Savings Trust Account. Do not file Form 5305-EA with the IRS. Instead, the Depositor must keep the completed form in its records.

Definitions:
Custodian. The Custodian must be a bank or savings and loan association, as defined in section 408(n), or any person who has the approval of the IRS to act as Custodian. Any person who may serve as a Custodian of a Traditional IRA may serve as the Custodian of a Coverdell ESA.
Depositor. The Depositor is the person who establishes the custodial account.
Designated Beneficiary. The Designated Beneficiary is the individual on whose behalf the Custodial Account has been established.

Family Member. Family members of the Designated Beneficiary include his or her spouse, child, grandchild, sibling, parent, niece or nephew, son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, or sister-in-law, and the spouse of any such individual. A first cousin, but not his or her spouse, is also considered to be a "family member."

Responsible Individual. The Responsible Individual, generally, is a parent or guardian of the Designated

Beneficiary. However, under certain circumstances, the Responsible Individual may be the Designated Beneficiary.

Identification Numbers — The Depositor and Designated Beneficiary's Social Security numbers will serve as their identification numbers. If the Depositor is a nonresident alien and does not have an identification number, write "Foreign" in the block where the number is requested. The Designated Beneficiary's Social Security number is the identification number of his or her Coverdell ESA. If the Designated Beneficiary is a nonresident alien, the Designated Beneficiary's individual taxpayer identification number is the identification number of his or her Coverdell ESA. An employer identification number (EIN) is required only for a Coverdell ESA for which a return is filed to report unrelated business income. An EIN is required for a common fund created for Coverdell ESAs.

Specific Instructions — Note: The age limitation restricting contributions, distributions, rollover contributions, and change of beneficiary are waived for a designated beneficiary with special needs.
Article X. Article X and any that follow may incorporate additional provisions that are agreed to by the Depositor and Custodian to complete the agreement. They may include, for example, provisions relating to:

definitions, investment powers, voting rights, exculpatory provisions, amendment and termination, removal of the Custodian, Custodian's fees, state law requirements, treatment of excess contributions, and prohibited transactions with the Depositor, Designated Beneficiary, or Responsible Individual, etc. Attach additional pages as necessary.

Optional provisions in Article V and Article VI. Form 5305-EAmay be reproduced in a manner that provides only those optional provisions offered by the Custodian.

Coverdell Education Savings Account Disclosure Statement

General Information — Coverdell Education Savings Accounts (Coverdell ESAs) were established under the Taxpayer Relief Act effective in 1998. This type of account was originally called an Education Individual Retirement Account. Effective for contributions made for tax year 2005, the annual contribution limit is $2,000 per Designated Beneficiary. The Economic Growth and Tax Relief Reconciliation Act increased the annual contribution limit, as well as made other important changes that are described in the following questions and answers. Amounts deposited in the account grow tax-free until distributed, and the Designated Beneficiary will not owe tax on any withdrawal from the account if the Designated Beneficiary's qualified education expenses at an eligible educational institution for the year equal or exceed the amount of the withdrawal. If the Designated Beneficiary does not need the money for educational purposes, the account balance can be rolled over to a Coverdell ESA of certain family members who can use it for their education. Amounts withdrawn from a Coverdell ESA that exceed the Designated Beneficiary's qualified education expenses in a taxable year are generally subject to income tax and to an additional tax of 10 percent. There are potentially three (or more) parties involved in the establishment of, making contributions to, and directing distributions from the account. These parties are referred to in the following questions and answers, and include the:

Depositor. The Depositor is the initial contributor who establishes the Coverdell ESA by executing the Application and who contributes the initial contribution. Subsequent contributions to the account may be made by the original Depositor or by other eligible contributors. The Depositor may also be the Designated Beneficiary and/or the Responsible Individual.

Designated Beneficiary. The Designated Beneficiary is the individual for whose benefit the Coverdell ESA is established. Except for "special needs-designated beneficiaries," no contribution can be made after the Designated Beneficiary's 18th birthday. The Designated Beneficiary may also be the Depositor and/or the Responsible Individual.

Responsible Individual. The Responsible Individual is the individual who generally controls all decisions regarding the account, including authorizing payments from the account. There can be only one Responsible Individual at any time and generally must be a parent or legal guardian of the Designated Beneficiary. However, in certain cases, the Designated Beneficiary may automatically become his or her own Responsible Individual. The Responsible Individual may also be the Depositor.

Q1: What is a Coverdell Education Savings Account (Coverdell ESA)?
A1: A Coverdell ESA is a trust or custodial account that is created or organized in the United States exclusively for the purpose of paying the qualified education expenses of the Designated Beneficiary of the account. The account must be designated as a Coverdell ESA when it is created in order to be treated as a Coverdell ESA for tax purposes.
Q2: For whom may a Coverdell ESA be established?
A2: A Coverdell ESA may be established for the benefit of any child under the age of 18. Contributions to a Coverdell ESA are not permitted after the Designated Beneficiary reaches his/her 18th birthday.
Q3: Where may an individual open a Coverdell ESA?
A3: An individual may open a Coverdell ESA with any bank, or other financial institution that has been approved, to serve as a nonbank trustee or custodian of an individual retirement account (IRA), and the bank or entity is offering Coverdell ESAs.
Q4: When may a taxpayer start contributing to a Coverdell ESA?
A4: A taxpayer may start making contributions on January 1, 1998, or at any time thereafter.
Q5: How much may be contributed to a Coverdell ESA on behalf of a Designated Beneficiary?
A5: For tax year 2005 and thereafter, the maximum contribution limit per year is $2,000 in aggregate contributions made for the benefit of any Designated Beneficiary. Contributions may be made into a single Coverdell ESA or into multiple Coverdell ESAs for the benefit of any one Designated Beneficiary.
Q6: What happens if more than the maximum annual contribution limit is contributed to a Coverdell ESA on behalf of a Designated Beneficiary or a particular calendar year?
A6: Aggregate contributions for the benefit of any one Designated Beneficiary in excess of annual limit for a particular calendar year are treated as excess contributions. If the excess contributions (and any earnings

attributable to them) are not withdrawn from the ESA that received the excess contribution by May 31st of the calendar year following the calendar year in which the excess was made, the excess contribution is subject to a 6 percent excise tax for each year the excess amount remains in the account. If the excess contributions (and any earnings) are timely withdrawn, no 6 percent excise tax applies. However, any earnings distributed in such a corrective distribution will be taxable to the Designated Beneficiary, but no 10% additional tax applies to the earnings.

Q7: May contributions other than cash be made to a Coverdell ESA?
A7: No. Coverdell ESAs are permitted to accept contributions made in cash only.
Q8: May contributors take a deduction for contributions made to a Coverdell ESA?
A8: No. Contributions to a Coverdell ESA are not deductible. Therefore, contributions to a Coverdell ESA create "basis" in the account. This means that any distributions that are not used for qualified education expenses are taxable only with respect to any earnings on the contributions.
Q9: Are there any restrictions on who can contribute to a Coverdell ESA?
A9: Any individual may make a full contribution to a Coverdell ESA if the individual's modified adjusted gross income for the taxable year for which the contribution is made is no more than $95,000 ($190,000 for married taxpayers filing jointly). For purposes of this section, "modified AGI" means the AGI of the taxpayer for the taxable year increased by amounts excluded from gross income under sections 911 (foreign earned income); 931 (income from Guam, American Samoa, or Northern Mariana Islands); and 933 (income from Puerto Rico). The maximum annual contribution per Designated Beneficiary is gradually reduced for individuals with modified adjusted gross income between $95,000 and $110,000 (between $190,000 and $220,000 for married taxpayers filing jointly). For example, an unmarried taxpayer with modified adjusted gross income of $96,500 in 2002 could make a maximum contribution per Designated Beneficiary of $1,800 for 2002 ($110,000 – $96,500 x .1333 = $1,800). A married individual filing jointly with modified adjusted gross income of $215,000 in 2002 could make a maximum contribution per Designated Beneficiary of $350 ($220,000 – $215,000 x .07 = $350). Taxpayers with modified adjusted gross income above $110,000 ($220,000 for married taxpayers filing jointly) cannot make contributions to anyone's Coverdell ESA.
Q10: May a Designated Beneficiary contribute to his/her own Coverdell ESA?
A10: Yes.
Q11: Does a taxpayer have to be related to the Designated Beneficiary in order to contribute to the Designated Beneficiary's Coverdell ESA?
A11: No.
Q12: Can entities make contributions to the Designated Beneficiary's Coverdell ESA?
A12: Yes. Any entity can make contributions to the Designated Beneficiary's Coverdell ESA without regard to such entity's adjusted gross income. For example, Century Computer Services, Inc. decides to make Coverdell ESA contributions on behalf of any child under the age of 18 of their employees in the amount of $500. Century Computer Services, Inc. qualifies as a contributor, regardless of the company's adjusted gross income, but the company cannot take a deduction for such contributions. Also, other contributions up to $1,500 could be made into the same Coverdell ESA or another Coverdell ESA on behalf of any one of these employees' children.
13: Is the contributor to a Coverdell ESA required to have compensation or earned income in order to make contributions?
A13: No. The contributor (whether an individual or an entity) is not required to have earned income or compensation.
Q14: What is the deadline for making contributions to a Coverdell ESA for a particular tax year?
A14: The deadline to make contributions is the tax-filing deadline for such year not including extensions. Thus, in most cases, the deadline to make contributions for a tax year is the following April 15. The contributor should designate in writing to the trustee or custodian the tax year for which the contribution is being made.
Q15: Are there any special reporting requirements for a Coverdell ESA?
A15: Yes. The Trustee or Custodian will issue an annual Form 5498-ESA to the IRS and to the Designated Beneficiary reporting contributions made for the tax year, any rollover contributions received during the tax year, and the fair market value of the account as of December 31. The Trustee or Custodian will also issue Form 1099-Q to the IRS and to the Designated Beneficiary whenever distributions are paid from the account. The Designated Beneficiary is required to file Form 8606 with the IRS whenever distributions are received from the account, and to file Form 5329 with the IRS if excess contributions have been made to the account or if distributions were made that exceed the qualified education expenses for the year. If a rollover or transfer is made from the Coverdell ESA of one Designated Beneficiary to another eligible family member of the Designated Beneficiary, certain statements must be attached to the tax returns of both the original Designated Beneficiary and the eligible family member to which the account was rolled over or transferred (see Form 8606 instructions).
Q16: How many Coverdell ESAs may a Designated Beneficiary have?

A16: There is no limit on the number of Coverdell ESAs that may be established for a particular Designated Beneficiary. However, for any given taxable year, the total aggregate contributions to all the accounts for a particular Designated Beneficiary may not exceed the annual contribution limit described in Q&A 5.

Q17: May a Designated Beneficiary take a tax-free withdrawal from a Coverdell ESA to pay qualified education expenses if the Designated Beneficiary is enrolled less than full-time at an eligible educational institution?

A17: Yes. Whether the Designated Beneficiary is enrolled full-time, half-time, or less than half-time, he/she may take a tax-free withdrawal to pay qualified education expenses.

Q18: What happens when a Designated Beneficiary withdraws assets from a Coverdell ESA to pay for qualified education expenses?

A18: Generally, the withdrawal is tax-free to the Designated Beneficiary to the extent the amount of the withdrawal does not exceed the Designated Beneficiary's qualified education expenses.

Q19: What are "qualified education expenses"?

A19: "Qualified education expenses" mean qualified higher education expenses for tuition, fees, books, supplies, and equipment required for the enrollment or attendance of the Designated Beneficiary at an eligible educational institution. Qualified higher education expenses also include room and board (generally the school's posted room and board charge, or $2,500 per year for students living off-campus and not at home) if the Designated Beneficiary is at least a half-time student at an eligible educational institution. A student will be considered to be enrolled at least half-time if the student is enrolled for at least half the full-time academic workload for the course of study the student is pursuing as determined under the standards of the institution where the student is enrolled. The standards for determining whether a student is enrolled at least half-time are the same as those used for the Hope Scholarship Credit. A student is eligible for the Hope Scholarship Credit if: (1) for at least one academic period (e.g., semester, trimester, quarter) beginning during the calendar year, the student is enrolled at least half-time in a program leading to a degree, certificate, or other recognized educational credential, and is enrolled in one of the first two years of postsecondary education, and (2) the student is free of any conviction for a Federal or State felony offense consisting of the possession or distribution of a controlled substance. For purposes of the Hope Scholarship Credit, a student will be considered to be enrolled at least half-time if the student is enrolled for at least half the full-time academic workload for the course of study the student is pursuing as determined under the standards of the institution where the student is enrolled. The institution's standard for a full-time workload must equal or exceed the standards established by the Department of Education under the Higher Education Act and set forth in 34 CFR 674.2(b). Qualified education expenses also include qualified elementary and secondary education expenses for tuition, fees, academic tutoring, special needs services in the case of a special needs beneficiary, books, supplies, and other equipment which are incurred in connection with the enrollment or attendance of the Designated Beneficiary as an elementary or secondary school student at a public, private, or religious school. Such expenses also include room and board, uniforms, transportation, and supplementary items and services (including extended day programs) which are required or provided by a public, private, or religious school in connection with such enrollment or attendance, and expenses for the purchase of any computer technology or equipment, or Internet access and related services, if such technology, equipment, or services are to be used by the Designated Beneficiary and the Designated Beneficiary's family during any of the years the Designated Beneficiary is in school. Qualified education expenses also include amounts contributed to a qualified state tuition program. Also, qualified education expenses are reduced by any amount provided by scholarship, educational assistance allowance, or any other payment (other than a gift or bequest) which is excludable from gross income under any law of the United States.

Q20: What is an eligible educational institution?

A20: For purposes of qualified higher education expenses, an eligible educational institution is any college, university, vocational school, or other postsecondary educational institution that is described in section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088) and, therefore, eligible to participate in the student aid programs administered by the Department of Education. This category includes virtually all accredited public, nonprofit, and proprietary postsecondary institutions. (The same eligibility requirements for institutions apply for the Hope Scholarship Credit, the Lifetime Learning Credit, and early withdrawals from IRAs for qualified higher education expenses.) For purposes of elementary and secondary education expenses, an eligible education institution means any school which provides elementary education or secondary education (kindergarten through grade 12), as determined under state law.

Q21: What happens if a Designated Beneficiary withdraws an amount from a Coverdell ESA, but does not have any qualified education expenses to pay in the taxable year he/she makes the withdrawal?

A21: Generally, if a Designated Beneficiary withdraws an amount from a Coverdell ESA and does not have any qualified education expenses during the taxable year, a portion of the distribution is taxable. The taxable portion is the portion that represents earnings that have accumulated tax-free in the account. The taxable portion of the distribution is also subject to a 10 percent additional tax, unless an exception applies. Form 8606 and Form 5329 are required to be filed with the IRS by the Designated Beneficiary. The 10 percent

additional tax does not apply to distributions made: (1) to a death beneficiary (or to the estate of the designated Beneficiary) after the death of the Designated Beneficiary; (2) attributable to the Designated Beneficiary if he/she becomes disabled within the meaning of section 72 (m) (7) of the Internal Revenue Code; or (3) made on account of a scholarship, allowance, or payment to the extent such payment or distribution does not exceed the amount of such scholarship, allowance, or payment.

Q22: Is a distribution from a Coverdell ESA taxable if the distribution is contributed to another Coverdell ESA?

A22: Any amount distributed from a Coverdell ESA and rolled over to another Coverdell ESA for the benefit of the same Designated Beneficiary or certain members of the Designated Beneficiary's family is not taxable. An amount is rolled over if it is paid to another Coverdell ESA on a date within 60 days after the date of the distribution. Members of the Designated Beneficiary's family include the Designated Beneficiary's spouse, children, grandchildren, sibling, parent, niece or nephew, son-in-law, daughter-in-law, father-in-law, mother-in-law, or sister-in-law, and the spouse of any such individual. A first cousin, but not his or her spouse, is also considered a family member of the Designated Beneficiary. The annual contribution limit to Coverdell ESAs does not apply to these rollover contributions. For example, an older brother who has $5,000 left in his Coverdell ESA after he no longer needs the account for education purposes can roll over the full $5,000 balance to a Coverdell ESA for his younger sister who is still in high school without paying any tax on the transfer or rollover. The eligible family member to whose Coverdell ESA such amount is rolled over or transferred must be under the age of 30.

Q23: What happens to the assets remaining in a Coverdell ESA after the Designated Beneficiary finishes his/her education?

A23: There are two options. The amount remaining in the account may be withdrawn for the Designated Beneficiary. The Designated Beneficiary will be subject to both income tax and the additional 10 percent tax on the portion of the amount withdrawn that represents earnings if the Designated Beneficiary does not have any qualified education expenses in the same taxable year he/she makes the withdrawal. Alternatively, if the amount in the Designated Beneficiary's Coverdell ESA is withdrawn and rolled over (or transferred) to another Coverdell ESA for the benefit of an eligible member of the Designated Beneficiary's family, the amount rolled over or transferred will not be taxable.

Q24: Rather than rolling over money from one Coverdell ESA to another, may the Designated Beneficiary of the account be changed from one Designated Beneficiary to another without triggering a tax?

A24: Yes, provided: (1) the terms of the particular trust or custodial account permit a change in designated beneficiaries, and (2) the new Designated Beneficiary has not attained age 30 and is a member of the previous Designated Beneficiary's family.

Q25: May a student or the student's parents claim the Hope Scholarship Credit or Lifetime Learning Credit for the student's expenses in a taxable year in which the student receives money from a Coverdell ESA on a tax-free basis?

A25: If a student is receiving a tax-free distribution from a Coverdell ESA in a particular taxable year, the student's expenses may generally be claimed as the basis for a Hope Scholarship Credit or Lifetime Learning Credit for that same year, provided, however, that the distributed amount from the Coverdell ESA is not used for the same educational purposes as the tax credit.

Q26: May contributions be made to both a qualified state tuition program and a Coverdell ESA on behalf of the same Designated Beneficiary in the same taxable year?

A26: Yes. The excise tax prohibiting contributions to both a Coverdell ESA and a qualified state tuition program was repealed in 2002 and forward. Therefore, contributions may be made to a Coverdell ESA on behalf of a Designated Beneficiary during the same taxable year in which any contributions are made to a qualified state tuition program on behalf of the same Designated Beneficiary. However, if distributions from a Coverdell ESA and a qualified state tuition program exceed the Designated Beneficiary's qualified education expenses for the year, the Designated Beneficiary is required to allocate the expenses between the distributions to determine the amount includable in gross income, if any.

Q27: What happens to the assets remaining in the Coverdell ESA after the death of the Designated Beneficiary?

A27: Generally within 30 days after the death of the Designated Beneficiary, distribution is made to the Designated Beneficiary's estate; or the Responsible Individual may change the name of the Designated Beneficiary to an eligible family member under the age of 30 of the original Designated Beneficiary, if the agreement permits. Alternatively, if the agreement permits the naming of a Designated Death Beneficiary, any remaining balance in the account on the date of death of the Designated Beneficiary shall become payable to such Designated Death Beneficiary. If the Designated Death Beneficiary is not an eligible family member of the Designated Beneficiary, the entire balance must be distributed within 30 days of the death of the Designated Beneficiary. If the designated Death Beneficiary is an eligible family member of the Designated Beneficiary, the entire balance may be rolled over or
transferred tax free to a Coverdell ESA on behalf of such Designated Death Beneficiary. Any distributions paid after the date of death of the Designated Beneficiary are taxable to the extent such distribution

represents earnings, unless the account is rolled over or transferred to a Coverdell ESA on behalf of an eligible family member of the Designated Beneficiary.

Q28: What happens to the assets remaining in the Coverdell ESA after the Designated Beneficiary attains the age of 30?

A28: Any balance remaining in the Coverdell ESA when the Designated Beneficiary attains the age of 30 must be distributed to such Designated Beneficiary within 30 days. However, if permitted under the Agreement, the remaining balance may be rolled over or transferred to a Coverdell ESA on behalf of an eligible family member.

Q29: Do the age requirements described above apply to "special needs" Designated Beneficiaries?

A29: No. A Coverdell ESA established on behalf of any Designated Beneficiary with special needs (as determined by IRS regulations) may continue to receive contributions after the Designated Beneficiary's 18th birthday. In addition, any remaining balance in a Coverdell ESA on behalf of any Designated Beneficiary with special needs is not required to be distributed within 30 days after the Designated Beneficiary attains the age of 30.

Q30: Does the Internal Revenue Service provide a publication that contains more information on Coverdell ESAs?

A30: Yes. IRS Publication 970, Tax Benefits for Higher Education, contains information regarding the Coverdell ESA, as well as claiming the Hope Credit, Lifetime Learning Credit, student loans, penalty-free withdrawals from IRAs for certain education expenses, employer-provided educational assistance, and qualified state tuition programs. The Custodian recommends that the Depositor, Designated Beneficiary, and/or Responsible Individual read Publication 970 before making contributions to, or taking distributions from, a Coverdell ESA. Publication 970 can be downloaded from the IRS Web site at www.irs.gov.