# EXHIBIT H



## AMERITRADE
Institutional

PO Box 2237
Omaha, NE 68103-2237

# Terms and Conditions
## TD AMERITRADE Institutional Account Agreement (with Amerivest Addendum)

THE FOLLOWING IS A LEGALLY BINDING AGREEMENT AMONG ME, TD AMERITRADE INSTITUTIONAL, DIVISION OF TD AMERITRADE, INC.; AMERITRADE CLEARING, DIVISION OF AMERITRADE, INC.; AND AMERIVEST INVESTMENT MANAGEMENT, LLC ("AMERIVEST") AND GOVERNS MY USE OF THE TD AMERITRADE INSTITUTIONAL WEBSITE, ITS CONTENT AND SERVICES, MY ACCOUNT WITH TD AMERITRADE INSTITUTIONAL AND MY USE (IF ANY) OF THE INVESTMENT ADVISORY SERVICE OFFERED BY AMERIVEST IN CONJUNCTION WITH AMERIVEST ACTING AS SUB-ADVISOR TO MY INDEPENDENT REGISTERED INVESTMENT ADVISOR ("RIA").

BY OPENING A TD AMERITRADE INSTITUTIONAL ACCOUNT AND BY ELECTRONICALLY SIGNING THE ACCOUNT APPLICATION, CONDUCTING ACCOUNT TRANSACTIONS OR CONTINUING TO USE THE TD AMERITRADE INSTITUTIONAL WEB SITE, I AM ACCEPTING AND AGREEING TO ABIDE BY ALL OF THESE TERMS AND CONDITIONS.

IN ADDITION, I AGREE THAT THE PROVISIONS OF THIS AGREEMENT AS THEY APPLY TO THE ADVISORY SERVICE OFFERED BY AMERIVEST BECOME LEGALLY BINDING UPON ME AND AMERIVEST ONLY UPON MY RIA'S FIRST USE OF THE SERVICE IN CONJUNCTION WITH A TD AMERITRADE INSTITUTIONAL ACCOUNT FOR ME.

IF I DO NOT AGREE WITH ANY OF THESE TERMS AND CONDITIONS OR FIND ANY OF THEM TO BE UNACCEPTABLE, I ACKNOWLEDGE I SHOULD NOT SIGN THE ACCOUNT AGREEMENT AND SHOULD SIMPLY LEAVE THE WEB SITE.

In this Agreement, "I", "me", "my" and "we", "us", "our" refer to the individuals, corporations or parties who are the account owners, have an interest in the account(s), and consent to be bound by the terms of this Agreement. "TD AMERITRADE" refers to TD AMERITRADE Institutional, its employees, representatives, officers, directors, agents, successors and assigns. "Ameritrade Clearing" refers to Ameritrade Clearing, Division of Ameritrade, Inc., its employees, representatives, officers, directors, agents, successors and assigns.

### About TD AMERITRADE Institutional
TD AMERITRADE is a discount brokerage firm. TD AMERITRADE does not (1) act as a principal in securities, options, or mutual fund transactions or make a market in any security, equity or mutual fund; (2) solicit orders; (3) make discretionary investments on behalf of its clients; (4) provide its clients internally generated research or advice regarding securities; (5) determine suitability as to the type and/or frequency of transactions in client accounts; or (6) provide its clients with investment recommendations or investment, tax or legal advice. TD AMERITRADE is an order taker that accepts client orders to buy or sell securities and delivers those orders to the appropriate market, market maker, or electronic communications network ("ECN") for execution. Client trades are executed on independent exchanges or through market makers or by ECNs. TD AMERITRADE is a self-clearing broker-dealer. Acting in its capacity as clearing agent, TD AMERITRADE will deliver client orders to the exchange, market maker or ECN, prepare client trade confirmations and client statements, settle security transactions, perform designated cashiering functions, and prepare certain books and records related to reported security transactions.

### About Ameritrade Clearing
Ameritrade Clearing, Division of Ameritrade, Inc. (Ameritrade Clearing) is a clearing broker that has entered into an arrangement with TD AMERITRADE to perform certain services. Ameritrade Clearing delivers customer orders to the exchange, market maker or ECN, prepares customer trade confirmations and customer statements, settles security transactions, performs designated cashiering functions, and prepares certain books and records related to reported security transactions. Ameritrade Clearing is not responsible for (1) the propriety and lawfulness of transactions and dealings in your account(s); (2) monitoring and supervising compliance with the laws, rules and/or regulations regarding opening, approving and monitoring customer accounts; (3) suitability as to the type and frequency of transactions in an account; (4) making any recommendations or providing investment advice; or (5) any representations, promises, and/or inducements that may be made by TD AMERITRADE. Ameritrade Clearing has no legal obligations or duty to you, as a TD AMERITRADE customer for (a) TD AMERITRADE's compliance with any applicable law, or (b) any transactions which occur in your account, except as described in this Agreement. You should direct any questions you have about your account to TD AMERITRADE.

### My Relationship with TD AMERITRADE and Ameritrade Clearing
The terms and conditions of this Agreement apply to TD AMERITRADE, Ameritrade Clearing and me. Certain provisions, as indicated, will also apply to Information Providers, Service Providers, affiliates of TD AMERITRADE and Ameritrade Clearing, and me. In consideration of TD AMERITRADE opening one or more accounts on my behalf, I understand and agree to the following:

1. My account(s) with TD AMERITRADE is self-directed. I acknowledge that I and any agent acting under a power of attorney (such as an Investment Advisor) are solely responsible for investment decisions in my account, including whether to buy or sell a particular security. Unless required by law, or unless TD AMERITRADE provides advice to me that is clearly identified as an individualized recommendation for me, I understand that TD AMERITRADE has no obligation to determine whether a particular transaction, strategy or purchase or sale of a security is suitable for me. My obligation includes an affirmative duty to monitor profits and stay informed about my account and my investments and to respond to changes as appropriate. Unless TD AMERITRADE otherwise agrees with me in writing, TD AMERITRADE does not have any discretionary authority or obligation to review or make recommendations for the investment of securities or cash in my account. I further acknowledge that while I may be able to access certain third-party financial or investment information or services through TD AMERITRADE, the availability of such information does not constitute a recommendation by TD AMERITRADE or Ameritrade Clearing to invest in any security or utilize any investment strategy discussed therein.

2. TD AMERITRADE employees are not authorized to give tax or other financial advice, and I will not solicit or rely upon such advice from TD AMERITRADE.

3. I understand that **all investments involve risk**. In particular, investments in initial public offerings, follow-on offerings or options may expose investors to potentially rapid and substantial losses, and are not suitable to all investors. In addition, low priced securities, investments made during the extended trading sessions and investments made

*(continued)*




on margin carry an increased risk of loss. Losses may exceed the principal invested. The past performance of a security, industry, sector, market, or financial product does not guarantee future results or returns. Please read the IPO prospectus, Characteristics and Risks of Standardized Options, Over-the-counter bulletin board (OTCBB) Securities Trading Rules, Extended Hours Trading Rules and the Margin Disclosure Document and Margin Handbook for more information regarding specific risks.

4. I am responsible for knowing the rights, terms and obligations of all securities in my account and for monitoring the occurrence of any events (including, but not limited to, trading halts, bankruptcies, stock splits and reverse stock splits, or other corporate events commonly known as reorganizations) involving my securities positions or securities for which I intend to place an order. I acknowledge that certain securities in my account(s) may grant me valuable rights that could expire unless I take action with respect to these rights. I understand that, except as required by law or applicable rules of regulatory authorities, TD AMERITRADE and Ameritrade Clearing are not obligated to notify me of any events, including but not limited to, trading halts, bankruptcy, reorganizations or of any other events affecting the rights or obligations granted by my securities, nor does TD AMERITRADE or Ameritrade Clearing have the responsibility to take any actions on my behalf with respect to such events without specific instructions from me. TD AMERITRADE and Ameritrade Clearing reserve the right to restrict trading in any security for any reason, including but not limited to, bankruptcy, reorganization or any other event. Such action does not mitigate my duty to monitor my own account nor does it create any duty or obligation on the part of TD AMERITRADE or Ameritrade Clearing to take any such action on my behalf.

5. By providing the availability to place trades electronically, TD AMERITRADE and Ameritrade Clearing do not recommend, endorse or promote what is commonly referred to as a "day trading" strategy, which I understand may involve significant financial risk to me.

6. In all securities, options, and mutual fund transactions, TD AMERITRADE is acting as my agent, except when TD AMERITRADE discloses to me in writing, at or before the completion of a particular transaction, that it is acting as broker for some other person. TD AMERITRADE or Ameritrade Clearing may act as a principal in bond transactions and will disclose to me in writing, at or before the completion of the particular bond transaction that it is acting as a principal.

7. Ameritrade Clearing and any of its affiliates or subsidiaries (cumulatively, "Ameritrade Clearing Entity") that carries any of my accounts for which Ameritrade Clearing acts as clearing broker, may accept instructions concerning any of my accounts or the property in any of my accounts, without inquiry or investigation, including, but not limited to, orders for the purchase or sale of securities or other property in any of my accounts, unless the Ameritrade Clearing Entity receives prior express written notice to the contrary from me.

8. Ameritrade Clearing, acting in its capacity as clearing broker, has no responsibility or liability to me for any transactions, actions or omissions of TD AMERITRADE.

9. If TD AMERITRADE should cease doing business and I do not provide written direction for the disposition of my account(s), Ameritrade Clearing, pursuant to Section 15 of the Securities Exchange Act of 1934, as amended, may select any other firm registered with the SEC to act as Substitute Introducing Firm for my account. After the Substitute Introducing Firm has agreed to act, Ameritrade Clearing will transfer my account(s) to the firm, or may liquidate my account(s) or so much of my account(s) as is determined appropriate. I release and agree to indemnify and hold harmless Ameritrade Clearing from any and all liability, claims for damages, and losses of any kind resulting from any action taken by Ameritrade Clearing pursuant to this paragraph.

### About the Applicant(s)

10. I have the required legal capacity and I am authorized to enter into this Agreement.

11. I represent that no one except me (us) has an interest in the account(s).

12. I warrant and represent that the citizenship and residency status that I have indicated on my Account Application is true and correct. I agree to notify TD AMERITRADE in a writing signed by me of any change in my citizenship and residency status within 30 days of such change, and such notice will include all relevant new information regarding my citizenship and residency. I release and agree to indemnify and hold harmless TD AMERITRADE and Ameritrade Clearing from any loss or expense, including attorneys' fees, if I have not provided accurate information about my citizenship and residency status or if I fail, refuse or neglect to provide the notice described within this paragraph. TD AMERITRADE and Ameritrade Clearing are reasonably justified in relying upon all information I have provided.

13. TD AMERITRADE or Ameritrade Clearing may request a credit or consumer report relating to me, and this paragraph constitutes notice of such a request. Upon request by me, TD AMERITRADE or Ameritrade Clearing will inform me of the name and address of the credit reporting agency that furnished such report. If TD AMERITRADE or Ameritrade Clearing extends updates or renews my credit, I agree that TD AMERITRADE or Ameritrade Clearing may request a new credit or consumer report without providing any further notice to me. I understand that, by law, I am required to be notified that any negative credit information reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations; and I agree that this paragraph constitutes such notice.

14. If more than one individual has signed this Agreement, our obligations under this Agreement shall be joint and several. Any joint account will be held jointly with rights of survivorship unless I notify you and provide such documentation as you require. If there is more than one account owner, each of us has the authority, acting alone, to take any action with respect to the account(s), including, without limitation, authority to (1) buy and sell securities and other property in the account(s) and receive and dispose of securities, other property, and money in the account(s); (2) receive confirmations, statements and communications relating to the account(s); and (3) generally deal with TD AMERITRADE and Ameritrade Clearing as if each of us alone was the sole owner of the account(s), all without notice to the others. TD AMERITRADE or Ameritrade Clearing may follow the instructions of any of us concerning the account(s) and may deliver securities and other property in connection with account transactions to any of us, or in accordance with the directions of any of us, except to unrelated third parties, all without notice to or inquiry of the rest of us. We agree that notice to any of us shall be deemed to be notice to all of us.

15. If the individuals who sign this Agreement are husband and wife and legal residents of a community or marital property state, any securities purchased through TD AMERITRADE and Ameritrade Clearing will be registered in our respective names, as shown on the account, followed by the words "husband and wife as community property" or "community property."

16. Any joint account owner, other than in a joint tenancy with right of survivorship account, agrees that, upon the death or disability of either party, the remaining undersigned shall immediately provide written notice of such event to TD AMERITRADE. We understand that all transactions thereafter affecting non-survivorship account(s) must be at the joint direction and upon the joint signatures of the legal representative of the affected party and the remaining undersigned. TD AMERITRADE and Ameritrade Clearing shall not be liable for transfers, payments or other transactions that occur in our account(s) prior to receipt of such written notice. TD AMERITRADE and Ameritrade Clearing shall be held harmless and free from any liability by reason of its compliance with any notice or direction mentioned in this paragraph.

17. Any fiduciary (including, but not limited to, a UGMA or UTMA custodian, a trustee, a conservator, a guardian, a personal representative, an administrator, an executor, an attorney-in-fact, or an investment adviser) to an account or for an account owner is responsible for: (1) collecting, holding, managing, investing and reinvesting account property; (2) dealing with the account under the applicable "prudent person" or other standard of care; (3) keeping account property separate and distinct from all other property; (4) keeping records of all transactions with respect to such property; and (5) otherwise performing his or her fiduciary duties. TD AMERITRADE or Ameritrade Clearing may act on instructions from, or otherwise deal with, any person purporting to act as a fiduciary to an account, and is not responsible for determining the validity of such person's fiduciary status or capacity, the propriety of or the authority for any act of or by such person, the validity or propriety under governing statutes or other law of any instrument or instructions executed or given by such person, or the propriety of the application of any property of the person on whose behalf the fiduciary purports to act. Additional documentation may be required by TD AMERITRADE or Ameritrade Clearing to permit fiduciaries on accounts. The account owner and fiduciary release and

*(continued)*

agree to indemnify and hold harmless TD AMERITRADE and Ameritrade Clearing for any loss, cost, judgment, penalty, claim, action, damage, expense or attorneys' fees which may result from any loss to the account owner as a result of any act, error or omission of the account owner or fiduciary which causes or may cause any loss, damage or harm to the account owner.

18. Regarding UTMA or UGMA accounts, any instructions received from the minor or any dealing with the custodial property in such accounts by the minor – including, but not limited to, placing or attempting to place orders to buy, sell or trade securities, using or attempting to use a custodian's password to the account, taking delivery or attempting to take delivery of assets of the account – shall be conclusively deemed to be the actions of the custodian for which neither TD AMERITRADE or Ameritrade Clearing shall be held liable. The custodian, the transferor and the minor release and agree to indemnify and hold harmless TD AMERITRADE and Ameritrade Clearing for any loss, cost, judgment, penalty, claim, action, damage, expense or attorneys' fees which may result from any loss to the minor as a result of any act, error or omission of the minor or custodian which causes or may cause any loss, damage or harm to the minor.

19. I shall promptly notify TD AMERITRADE in writing within 10 business days if there is any material change in the facts set forth in my Account Application, including any financial information. In particular, but without limitation, I shall inform TD AMERITRADE in writing if I become a director, 10% shareholder, or policy-making officer of a publicly traded company, or if I become affiliated with or employed by any securities firm, bank, trust company or insurance company.

**Account Policy**

20. TD AMERITRADE may provide access to and use of electronic trading systems which may be accessed and used by various means; i.e., Internet, wired or wireless Web site, software, telephone and licensed representatives. Commissions related to each medium are separately priced. Current commission pricing is set forth in the *TD AMERITRADE Institutional Account Handbook* or on the TD AMERITRADE Web site. I understand that TD AMERITRADE reserves the right to vary its commissions among clients in connection with special offers or combinations of services or in other circumstances at its sole discretion.

21. TD AMERITRADE does not guarantee that any or all of the media listed above will be available to me at a particular time. I recognize that transactions and other account activity may be conducted through several different media; and if a certain medium is not available, I agree to utilize another medium to place transactions or conduct other account activity. I agree that I will pay the fee for whatever medium I use to execute a transaction and agree that I will not be entitled to any refund or damages of any kind based upon the fact that a lower cost medium was not available at the time I executed a transaction.

22. TD AMERITRADE shall not be responsible for the accessibility of, transmission quality, outages to, or malfunction of any telephone circuits, computer system or software. I am responsible for providing and maintaining the communications equipment, including personal computers and modems required for accessing my account(s). TD AMERITRADE reserves the right to suspend service and deny access to the electronic trading systems, without prior notice, during scheduled or unscheduled system maintenance, repairs or upgrades.

23. TD AMERITRADE and Ameritrade Clearing will maintain adequate procedures to ensure the confidentiality of all account information within its possession. All my account numbers, personal identification numbers (PIN) and passwords are confidential, and I agree to be fully responsible for my account and identification numbers and for all activities under my account number, PIN, or password, including, but not limited to, all orders entered into the electronic trading systems.

24. TD AMERITRADE may justifiably rely that any orders or instructions received through any electronic systems and placed under my account number, PIN, or password were placed or authorized by me. I will immediately notify TD AMERITRADE if any of the following shall occur: (1) the loss or theft of my account number, PIN, or password; (2) the placement of an order for my account for which I do not receive an order number or an accurate acknowledgment (whether through hard copy, electronic means or verbal means); (3) the receipt of an acknowledgment (whether through hard copy, electronic means or verbal means) of an order execution that I did not place; or (4) should I become aware of any unauthorized use of my account number, PIN, or password.

25. Any telephone conversation with TD AMERITRADE or Ameritrade Clearing may be monitored and/or recorded at their option.

26. TD AMERITRADE and Ameritrade Clearing shall send all mail to my address (mailing address, electronic mail address or facsimile number) as it appears on my account or at any other address as I may direct. Any such communication sent by mail, e-mail, telegraph, messenger or otherwise, will be considered personally delivered, whether or not I actually receive it.

27. Ameritrade Clearing is legally required to send me a summary of the transactions and activity in my account on a quarterly or monthly basis. I can select to receive a monthly electronic statement, a monthly paper statement or a quarterly paper statement. Quarterly statements, however, are not available to all account types. Consult the Fee Schedule for any applicable fees. If I fail to provide a valid e-mail address and do not select an appropriate alternative account statement, I will receive quarterly paper statements unless my account type requires statements to be delivered monthly, then I will receive monthly paper statements. I am responsible for any applicable fees.

28. Statements of accounts shall be conclusive and binding upon me unless I submit a written objection within ten days after Ameritrade Clearing has sent the statement of account to me by mail or otherwise.

29. Legal trade confirmations for the execution and/or processing of orders are conclusive if I do not submit a written objection within two days after Ameritrade Clearing has sent them by mail or otherwise.

30. TD AMERITRADE and Ameritrade Clearing cannot be held responsible for the accuracy of the price reported by means of a courtesy fill notification or legal trade confirmation if my order was executed at another price. In conformity with all applicable rules and regulations, TD AMERITRADE and Ameritrade Clearing will report the correct trade information as soon as feasible.

31. TD AMERITRADE and Ameritrade Clearing shall not be liable for loss caused directly or indirectly by any exchange or market ruling, government restriction, or any "force majeure" (e.g., flood, extraordinary weather conditions, earthquake or other act of God, fire, war, insurrection, riot, communications or power failure, equipment or software malfunction) or any other cause beyond the reasonable control of TD AMERITRADE and Ameritrade Clearing.

32. TD AMERITRADE and Ameritrade Clearing reserve the right at any time to amend, change, revise, add, or modify the terms and conditions set forth in this Agreement without prior notice to me. TD AMERITRADE will post such amendments, changes or modifications on the Internet Web site, www.tdainstitutional.com, or, at its option, may otherwise cause the terms and conditions to be delivered to me, electronically or otherwise. My continued account activity, whether conducted via the Internet or other media, after the amendments, changes or modifications to these terms and conditions are posted on the TD AMERITRADE Internet Web site, constitutes my agreement to be bound by such amendments, changes or modifications to these terms and conditions, regardless of whether I have actually read them. TD AMERITRADE and Ameritrade Clearing may justifiably rely upon such account activity as evidence of the acceptance of any such amendments, changes or modifications. Neither TD AMERITRADE or Ameritrade Clearing shall be bound by any verbal statements that seek to amend the terms and conditions set forth in this Agreement.

33. This Agreement and its provisions shall be continuous, cover individually and collectively all accounts which I may open or reopen with TD AMERITRADE or Ameritrade Clearing, and inure to the benefit of TD AMERITRADE and Ameritrade Clearing. If any provision of this Agreement is held invalid or unenforceable under applicable law, the remaining provisions of the Agreement will continue in full force and effect. I agree that this Agreement will be binding upon my heirs, executors, administrators, representatives and permitted assigns. This Agreement will inure to the benefit of TD AMERITRADE and its successors, assigns and agents. I may not assign this

Agreement or any rights or obligation under this Agreement without first obtaining the prior written consent of TD AMERITRADE. TD AMERITRADE may sell, assign, or transfer this Agreement or my Account, or any portion thereof, at any time and without my prior consent.

34. I acknowledge that TD AMERITRADE is engaged in the brokerage business at its principal place of business in Omaha, Nebraska; and that I am transacting business in the State of Nebraska; that Ameritrade Clearing is engaged in the clearing brokerage business at its principal place of business in Omaha, Nebraska; and that I am transacting business in the State of Nebraska. I am inducing Ameritrade Clearing to buy and sell securities for me as a clearing broker only. Any court action brought against TD AMERITRADE or Ameritrade Clearing by me or on my behalf shall be exclusively venued in the State of Nebraska and shall be governed by the laws of the State of Nebraska. I hereby submit to personal jurisdiction within the State of Nebraska. This paragraph does not limit my ability to file any claim in arbitration nor does it limit or contradict any rules of the NASD or any successor organization, such as those relating to the location of an arbitration hearing.

**Electronic Signatures**

35. TD AMERITRADE has identified certain types of accounts and certain situations where I may electronically sign my Account Application or other documents, such as IRS Forms (W-9), Exchange Agreements, Privacy Policy and other such records, collectively referred to as "Account Documents." My intentional action in electronically signing the Account Application or Account Documents where indicated is valid evidence of my consent to be legally bound by these Terms and Conditions and by other documentation submitted in the Account Application process or governing my relationship with TD AMERITRADE and Ameritrade Clearing. The use of an electronic version of these Account Documents fully satisfies any requirement that they be provided to me in writing. I acknowledge my receipt of the "Disclosure on Electronic Records" and my ability to access and retain a record of the documents that I electronically sign. I am solely responsible for reviewing and understanding all of the terms and conditions of these documents and agree to conduct the Account opening process and other transactions with TD AMERITRADE and Ameritrade Clearing by electronic means. I accept as reasonable and proper notice, for the purpose of any and all laws, rules and regulations, notice by electronic means, including, but not limited to, the posting of Account Document changes to the TD AMERITRADE Internet Web site. I acknowledge and agree that I am obliged to periodically review these Account Documents on the TD AMERITRADE Internet Web site for changes or modifications that may be made by TD AMERITRADE and Ameritrade Clearing from time to time.

36. The electronically or other properly stored copy of the Terms and Conditions and any Account Application or Account Documents is considered to be the true, complete, valid, authentic and enforceable record of the applicable document, admissible in judicial or administrative proceedings to the same extent as if the documents and records were originally generated and maintained in printed form. I will not contest the admissibility or enforceability of TD AMERITRADE's and Ameritrade Clearing's copy of the documents in any proceeding arising out of these Terms and Conditions.

37. If more than one individual has electronically signed the Account Application or Account Documents, our obligations under this Agreement shall be joint and several and identical to the obligations of joint account holders that have signed a paper Account Application or Account Documents.

**Consent to Electronic and Telephonic Delivery of Information**

38. TD AMERITRADE and Ameritrade Clearing may send account information and related documents, including legal trade confirmations, account statements or prospectuses, to my electronic mail address, telephone or facsimile number as it appears on my account, or to any other address or number as I may direct.

39. By agreeing to these Terms and Conditions, or by my instruction to send mail electronically or by giving TD AMERITRADE my electronic mail address (e-mail), I consent to the electronic delivery by TD AMERITRADE or Ameritrade Clearing to me of all information relating to my account and, in particular, to public offerings and the public offering process, including, but not limited to, the delivery of notices related to specific offerings, allocations, prospectuses, amended prospectuses, confirmations, other material related the offering process, other regulatory communications, and amendments to this Agreement ("Communication" or collectively "Communications"). My consent further authorizes TD AMERITRADE to deliver all such Communications to me by e-mail or by posting the Communication on the Web site where the Communication can be read and printed. I agree that this Agreement constitutes notice of such posting. My consent further authorizes TD AMERITRADE to deliver a Communication to me by giving me an e-mail that includes a hyperlink to an address on the World Wide Web or the Web site where the information is posted, and can be read and printed. My consent further authorizes TD AMERITRADE to deliver a Communication to me by sending me a notice by e-mail, mail, telephone, or facsimile transmission which directs me to an address on the World Wide Web and/or a place within the Web site where the Communication is posted and from which it can be read and printed. I agree that such delivery shall be deemed effective delivery to me whether or not I access or review the Communication.

40. To receive electronic delivery, I must have a computer with Internet access and the ability to download PDF files using Adobe® Acrobat® and a valid e-mail address. (Adobe Acrobat may be downloaded at no cost through a link provided in the Web site.) I can download and save or download and print the Communication to retain for my records. I acknowledge that I have access to view Communications via PDF or HTML. I understand that Internet access may involve some cost to me.

41. I have a right or option to receive in paper form a preliminary and final prospectus for an offering, a confirmation of a purchase in a public offering transaction and other transactions, and other documents that you may be required to deliver in writing. I may withdraw or revoke my consent to electronic delivery of Communications at any time. To revoke or withdraw my consent to the electronic delivery of Communications, I must call TD AMERITRADE Institutional Client Services at 866-268-3247 or e-mail them at clientservices@tdainstitutional.com. If I withdraw or revoke my consent, however, it may affect my eligibility to purchase shares in public offerings (IPOs or Secondaries) at TD AMERITRADE. I may still conduct purchase and sale transactions in the secondary market through a TD AMERITRADE registered representative or otherwise. Withdrawal or revocation of my consent does not affect the legal effectiveness or validity of any electronic Communications provided while my consent was in effect. At any time, upon request, TD AMERITRADE will deliver to me, via first-class mail, without charge to me, except if request for delivery is outside the normal delivery practice, a paper copy of the prospectus for a particular offering, a confirmation of purchase in a particular offering, or any other Communication related to public offerings and the public offering process that TD AMERITRADE and Ameritrade Clearing are required by law or regulation to deliver. Although I consent to electronic delivery, TD AMERITRADE intends to deliver by first-class mail final prospectuses in public offerings until further notice to me. TD AMERITRADE and Ameritrade Clearing will continue to mail confirmations of purchase and statements via first-class mail if I have designated that as my preferred method of delivery.

42. Unless TD AMERITRADE receives immediate notice that the e-mail was not delivered, TD AMERITRADE's e-mail will constitute effective delivery or notice of a Communication and fulfills any obligation of TD AMERITRADE or Ameritrade Clearing to provide me with written documents or documentation. If TD AMERITRADE receives notice that my e-mail was not delivered, TD AMERITRADE, as a courtesy, may, if possible, attempt to contact me by telephone. It is my responsibility to provide TD AMERITRADE with a current and valid e-mail address. For instructions on updating my address (mailing address, electronic address, telephone number or facsimile number) I may call TD AMERITRADE Institutional Client Services at 866-268-3247 or e-mail them at clientservices@tdainstitutional.com or review the *TD AMERITRADE Account Handbook*.

43. Any Communication or notice delivered by TD AMERITRADE to the address of record of any one account owner of a joint account will constitute valid delivery or notice, as the case may be, to all owners of the joint account. It is my responsibility to provide TD AMERITRADE with a current and valid e-mail address.

44. TD AMERITRADE may, from time to time, deliver information verbally. I authorize TD AMERITRADE to deliver information to me telephonically or by leaving messages on my answering machine or voice-mail system. Such communications shall be deemed delivered to me whether or not I actually receive them.

**Use of the TD AMERITRADE Web Site**

45. "Web sites" refer to the wired and wireless Internet sites of TD AMERITRADE whose domain name is registered as tdainstitutional.com and through which TD AMERITRADE offers brokerage services, specifically the functionality of placing securities transactions. "Content" refers to account positions, balances, transactions or history provided by or through TD AMERITRADE or Ameritrade Clearing. "Information Providers" are those named third parties who provide financial or investment

*(continued)*

information, including analysis, commentary, market data, news or research, or tools ("Information") by or through the TD AMERITRADE or TD AMERITRADE, Inc. Web sites, as well as being those entities described in paragraph 76 below.

46. **The Web sites and all of their Content and Information are provided "as is" without warranty of any kind. TD AMERITRADE, Ameritrade Clearing and Information Providers expressly disclaim all warranties and conditions with regard to the Web site, their Content, and the Information, including, without limitation, all implied warranties and conditions of merchantability, fitness for a particular purpose, title, and non-infringement. By using the Web site, Content, and Information, I assume all of the risks associated with their use, and I release and agree to indemnify and hold harmless TD AMERITRADE, Ameritrade Clearing and Information Providers from any and all liability, claims for damages, and losses arising from or connected with such risks.**

47. I agree that neither TD AMERITRADE, Ameritrade Clearing, nor the Information Providers shall have any liability, contingent or otherwise, for the truth, accuracy, completeness, timeliness, interruptions, omissions or correct sequencing of the Information or Content on the Web sites, or for any decision made or action taken by me in reliance upon or interpretation of the Content, Information, or the Web sites. In no event shall TD AMERITRADE, Ameritrade Clearing, or the Information Providers be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of or in any way connected with (1) the use of the Web sites, the Content, the Information, or the brokerage and clearing services offered by TD AMERITRADE and Ameritrade Clearing; (2) the delay, interruption or inability to use any aspect of the Web sites, the Content, the Information, or the brokerage and clearing services offered by TD AMERITRADE and Ameritrade Clearing; (3) any Information or Content obtained through or from this Web site or from brokerage and clearing services offered by TD AMERITRADE and Ameritrade Clearing; or (4) otherwise arising out of the use of the Web site, the Content, the Information, or the brokerage or clearing services offered by TD AMERITRADE and Ameritrade Clearing, whether based on contract, tort, strict liability or otherwise, even if TD AMERITRADE, Ameritrade Clearing or Information Providers have been advised of the possibility of damages. Some states do not permit exclusions of certain implied warranties or the exclusion of incidental or consequential damages; so these disclaimers and limitations may not apply to me. Notwithstanding anything otherwise set forth in this paragraph, TD AMERITRADE and Ameritrade Clearing shall only be liable for my direct damages to the extent specifically set forth in TD AMERITRADE's Asset Protection Guarantee.

48. I release and agree to indemnify and hold harmless TD AMERITRADE, Ameritrade Clearing and Information Providers for any loss, cost, judgment, penalty, claim, action, damage, expense or attorneys' fees which may arise from my use of the Web site, Content, and/or the Information.

49. TD AMERITRADE provides secure Internet trading and brokerage services through Web sites. I agree to receive and transmit financial information through such electronic means.

50. Web sites, Content, or Information provided by TD AMERITRADE, Ameritrade Clearing and Information Providers, and the manner of the provision of the service, individually or as a whole, are all protected pursuant to U.S. patent, copyright laws, international treaties or conventions and other laws, and shall remain the exclusive property of TD AMERITRADE, Ameritrade Clearing, or Information Providers, and no title or ownership interest will transfer to me.

51. Web sites are provided to me at no cost, and I agree not to modify, print, copy, publish, transmit, license, participate in the transfer or sale of, reproduce, create derivative works from, distribute, redistribute, perform, display or in any way exploit or use the Web site, its content or any feature thereof.

52. TD AMERITRADE reserves the right at any time, in its discretion and without prior notice to me, to change, revise, modify, add, upgrade, remove or discontinue Web sites or Content or Information. TD AMERITRADE may also impose limitations or restrictions upon and may revoke my access to and my use of Web sites, Content or Information, in whole or in part, without prior notice.

53. The TD AMERITRADE Privacy Statement describes TD AMERITRADE's policies and practices with respect to information provided by me to TD AMERITRADE and is incorporated into these Terms and Conditions by this reference.

54. Web site use requires that I accept all cookies in order to activate special Web features and security mechanisms, and to enhance Web site performance. While my browser may allow me to "reject" cookies, the Web sites may require that I accept all cookies in order for its features and security mechanisms to function fully. TD AMERITRADE uses "cookies" on Web sites to service the account and keep trading activities secure. A "cookie" is an electronic note created by a Web site and stored on my computer.

55. Information made available by and through Web sites is made available by TD AMERITRADE as a general reference for informational and educational purposes only. TD AMERITRADE does not control such Information, and is not responsible for the contents or availability of Information provided on the Web sites. Information is protected by copyright and subject to the Information Providers' terms of usage. My use of any Information is subject to compliance with such terms of usage.

56. The Web sites may include hyperlinks to other Web sites owned or operated by parties other than TD AMERITRADE. Neither TD AMERITRADE nor its Service Providers are responsible for the content or availability of such other Web sites. Inclusion of a hyperlink does not imply any recommendation or endorsement of the material or content on such third-party Web sites, nor any association with their operators. Under no circumstances will TD AMERITRADE, Ameritrade Clearing or any of their affiliates be responsible or liable, directly or indirectly, for any loss, cost, judgments, penalty, claim action, damage, expense or attorneys' fees caused or alleged to have been caused in connection with the use or reliance on any content, goods or services available on such external Web sites.

57. I will not use the Web sites, their Content, or Information for any purpose that is unlawful, violates the rights of any third party, or which is otherwise prohibited by these Terms and Conditions. I will not transmit through the Web sites any material which violates or infringes in any way upon the rights of others, which is unlawful, threatening, abusive, defamatory, invasive of privacy or publicity rights, vulgar, obscene, profane, indecent or otherwise objectionable and which encourages conduct that would constitute a criminal offense or give rise to civil or criminal liability.

58. TD AMERITRADE does not guarantee the accuracy of the information and data supplied by Information Providers. TD AMERITRADE is not responsible for the quality or reliability of this information. I acknowledge that commentary, analysis or similar materials may contain forward-looking statements and that any financial calculators, software, or tools may not account for or reflect fluctuations in interest rates or other economic conditions and changes.

59. I acknowledge that not all investment products and strategies discussed in the Web sites, their Contents or Information, are suitable for every investor, and that it is my sole responsibility to determine the suitability of such products and strategies for my own investment objectives. Any investment decision and or strategy that I make or utilize, whether or not such decision or strategy derives from or relies upon information accessed or provided through Web sites, is done so at my sole discretion and risk.

60. TD AMERITRADE, Ameritrade Clearing, and any Information Providers shall not be liable for any loss resulting from my use of the Web sites, including, but not limited to, failure of electronic or mechanical equipment or communication lines, telephone or other interconnect problems, unauthorized access, the malfunction of my electronic or mechanical equipment, personal computer and any lines thereto, theft, operator errors, or due to any "force majeure" (e.g., severe weather, earthquakes, flood, fire or other acts of God), strikes or other labor problems, or to any other cause beyond the reasonable control of TD AMERITRADE, Ameritrade Clearing or any third party.

61. The availability of the Web sites or Information does not constitute an offer or solicitation to buy or sell any investment product.

62. I release and agree to indemnify and hold harmless TD AMERITRADE and Ameritrade Clearing from any and all liability, claims for damages, and losses of any kind resulting from any action taken by me pursuant to this Agreement.

**My Relationship with Service Providers**

63. TD AMERITRADE may offer to me the opportunity to utilize certain services and products in addition to the brokerage services provided through the Web sites. "Service Providers" may provide (1) Information, as defined above; (2) financial and investment tools, such as reports, alerts, or calculators; (3) access to online conferences, telecasts, bulletin boards and other public forums ("Forums"), or (4) tax preparation, bill payment and account management tools, all collectively referred to as "Services." Services may be provided by TD AMERITRADE or by affiliated or non-affiliated companies as Service Providers. An "affiliated company" is a company that is owned by TD AMERITRADE or which has common ownership or control with TD AMERITRADE or its parent company.

64. Services are provided exclusively for personal and noncommercial access and use by me. I will not access or use the Services in any unlawful manner, for any unlawful purpose or in violation of these Terms and Conditions or applicable laws, rules and regulations. Other than as expressly allowed by these Terms and Conditions, I will not engage in the uploading, posting, decompiling, reverse engineering, disassembling, modification, copying, distribution, transmission, reproduction, republication, licensing, display, sale, or the transfer or creation of derivative products or other works of or from any product, service, information, content, software, message, advertisement or any other work found at, aggregated at, contained on, distributed through, linked to or from, downloaded to or from or in any other manner accessed from the Services ("Materials"). With regard to any Materials in which TD AMERITRADE, or any subsidiary or other affiliate thereof claims a proprietary interest, I may download one copy of such Materials on any single computer for personal, noncommercial use, provided I keep intact all copyright and other proprietary notices.

65. The TD AMERITRADE or Service Providers' company names and logos and all related product and service names, design marks and slogans are the property of the respective company or its affiliates. I am not authorized to use any such name or mark in any advertising, publicity or any other commercial manner. Except as authorized in this paragraph, I am not being granted a license under any copyright, trademark, patent or other intellectual property right in the Services or in any Material. TD AMERITRADE and/or Service Providers retain all such rights of ownership. Any feedback, questions, comments, suggestions, ideas or the like which I send to TD AMERITRADE or Service Providers with regard to the Services will be treated as being nonconfidential and nonproprietary. Service Providers will also be free to use any ideas, concepts, know-how or techniques contained in such information for any purpose whatsoever, including, but not limited to, developing, manufacturing and marketing products and services incorporating such information.

66. The Services are provided for my convenience, and use of the Services and any reliance upon any Materials, including any action taken by me because of such use or reliance, is at my sole discretion and risk. Neither TD AMERITRADE nor Service Providers nor Information Providers, licensors, employees, distributors or agents is responsible or liable for, or makes any representations or warranties as to:

   a. Any representations, promises, recommendations or inducements that may be made by or through any party (including vendors) found at, on, through or from the Services;
   b. The timeliness, accuracy, reliability, completeness, legality, copyright compliance or decency of the Services or any Materials;
   c. Any inaccuracy, omission, error or delay in the Services or any Materials;
   d. Nonperformance of or interruption in the Services or any Materials due to: (i) any act or omission by any disseminating party; (ii) any "force majeure" (i.e., flood; riot; labor dispute; accident; action of government; communications, transmissions or power failure; equipment, systems or software malfunctions) or any other cause beyond the control of any disseminating party; or (iii) outages, transmission quality or malfunctions of telephone circuits or computer systems, including, but not limited to, any defects or failures with respect to my software, computer systems or Internet access provider;
   e. The quality of the Services or any Materials (including the results to be obtained from use of them); or
   f. Any loss resulting from, arising out of, or related to my access and/or use of or interaction with the Services or the Materials.

67. THE SERVICES AND THE MATERIALS ARE PROVIDED ON AN "AS IS", "AS AVAILABLE" BASIS, AND NEITHER TD AMERITRADE NOR ANY OF ITS UNDERLYING SERVICE PROVIDERS, INFORMATION PROVIDERS, LICENSORS, EMPLOYEES, DISTRIBUTORS OR AGENTS MAKE ANY REPRESENTATIONS AS TO THE SUITABILITY OF THE SERVICE OR THE MATERIALS FOR ANY PURPOSE. TD AMERITRADE AND ITS UNDERLYING SERVICE PROVIDERS, INFORMATION PROVIDERS, LICENSORS, EMPLOYEES, DISTRIBUTORS AND AGENTS EXPRESSLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, NONINFRINGEMENT, AVAILABILITY AND ACCURACY WITH RESPECT TO THE SERVICE AND THE MATERIALS. IN NO EVENT SHALL TD AMERITRADE OR ANY OF ITS UNDERLYING SERVICE PROVIDERS, INFORMATION PROVIDERS, LICENSORS, EMPLOYEES, DISTRIBUTORS OR AGENTS BE LIABLE TO ME OR ANY THIRD PARTY FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER WITH RESPECT TO THE SERVICE OR THE MATERIALS, REGARDLESS OF WHETHER OR NOT SUCH PARTIES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. BECAUSE SOME STATES PROHIBIT THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES THE LIMITATION OF LIABILITY ONLY WITH RESPECT TO CONSEQUENTIAL OR INCIDENTAL DAMAGES MAY NOT APPLY. IN SUCH STATES, THE RESPECTIVE LIABILITY OF TD AMERITRADE AND ANY OF ITS UNDERLYING SERVICE PROVIDERS, INFORMATION PROVIDERS, LICENSORS, EMPLOYEES, DISTRIBUTORS AND AGENTS IS LIMITED TO THE GREATEST EXTENT ALLOWABLE UNDER APPLICABLE LAW. I AGREE THAT I WILL NOT IN ANY WAY HOLD TD AMERITRADE OR ANY OF ITS UNDERLYING SERVICE PROVIDERS RESPONSIBLE FOR ANY SELECTION OR RETENTION OF, OR THE ACTS OR OMISSIONS OF, THIRD PARTIES (INCLUDING THOSE CONTRACTED TO OPERATE VARIOUS AREAS ON THE SERVICE) IN CONNECTION WITH THE SERVICE OR THE MATERIALS.

68. Any stock or mutual fund price quotes made available to me by access and use of the Service or Materials may be delayed 20 minutes or longer, according to the rules and regulations applicable to exchanges and Service Providers. I am solely responsible for my investment research, and neither TD AMERITRADE nor any Service Provider makes any representations, warranties or other guarantees as to the accuracy or timeliness of any price quotes; nor does TD AMERITRADE and Service Provider make any representations, warranties or other guarantees as to the present or future value or suitability of any sale, trade or other transaction involving any particular security or any other investment.

69. The Service and the Materials may contain typographical errors or inaccuracies. TD AMERITRADE and any underlying Service Provider reserve the right, in its sole discretion, without any obligation and without any notice requirement, to: (1) improve and correct the Service and the Materials and (2) suspend and/or deny access to the Service and any of the Materials for scheduled or unscheduled maintenance, upgrades, improvements or corrections.

70. I may have access to online conferences, telecasts or other forums (the "Forums") maintained at or through the Service. By accessing, using or otherwise communicating in any manner with any third parties through the Forums, I will not access or otherwise use the Forums in any unlawful manner, for any unlawful purpose or in violation of these Terms and Conditions. Without limitation, I will not do any of the following:

   a. Post, transmit, publish, disseminate, distribute or otherwise communicate ("Communicate") any (a) defamatory, infringing, obscene, indecent, profane, fraudulent, threatening, abusive or otherwise objectionable content or information or (b) any other content or information which may violate the legal rights of any person or otherwise constitute a criminal offense, give rise to civil liability or otherwise violate any local, state, federal or foreign law, including, without limitation, the U.S. export control laws;
   b. Advertise, solicit or offer to sell, lease, license or otherwise transfer any goods, products or services (except as otherwise expressly authorized), including, without limitation, the unauthorized appropriation of any person's name or likeness for any commercial purposes;

*(continued)*

AAS 182 F 09/06

    c. Communicate chain letters, pyramid schemes or other similar arrangements, contests, surveys, investment opportunities or other unsolicited commercial information or communications (except as otherwise expressly authorized);

    d. Engage in spamming, flooding or other mass distribution of any files, programs, communications or any other information;

    e. Upload or otherwise Communicate any software, programs or other content or information which contains any corrupted files and/or any virus, worm, Trojan horse or any other similar material which may damage, disrupt, interrupt or otherwise harm the Service, the Materials or any other computer or system having access to the Service or Materials;

    f. Upload or otherwise Communicate any software, programs or other content or information protected by any intellectual property laws (unless I own or control the rights thereto and obtains all necessary consents); or

    g. Otherwise exploit the Service or any Materials for pecuniary benefit or any other commercial purposes except as expressly authorized by the provider, owner or controller of such Materials.

71. All communications made at or through the Forums are public. Neither TD AMERITRADE nor any Service Provider screens, approves, reviews or otherwise endorses any content or information obtained through or offered by the Forums. My reliance on any content or information obtained through the Forums, including any actions resulting therefrom, is at my sole risk.

72. I shall indemnify and hold harmless TD AMERITRADE and any of the underlying Service Providers, Information Providers, licensors, employees, distributors or agents from and against any and all claims, demands, actions, causes of action, suits, proceedings, losses, damages, costs, and expenses, including reasonable attorneys' fees, arising from or relating to my access and/or use of, or interaction with, Market Data, the Service or any Materials (including, without limitation, the Forums), or any act, error, or omission of my use of my account or any user of my account, in connection therewith, including, but not limited to, matters relating to incorrect, incomplete, or misleading information; libel; invasion of privacy; infringement of a copyright, trade name, trademark, service mark, or other intellectual property; any defective product or any injury or damage to person or property caused by any products sold or otherwise distributed through or in connection with the Service; or violation of any applicable law.

73. I, by accessing or using the Service or Materials, may have access to other bulletin boards, chat rooms, online conferences, telecasts or other forums through hyperlinks or other connections neither maintained nor authorized by TD AMERITRADE or Service Providers ("Unauthorized Forums"). Neither TD AMERITRADE nor any Service Provider makes any representations as to the content or quality of such Unauthorized Forums, and shall not be liable for any loss resulting from, arising out of or related to my access, use, or other interaction with any such Unauthorized Forums.

74. Software found at, contained on, distributed through, linked to or from, downloaded to or from or accessed from the Service is subject to United States export controls and may not be downloaded by any person or entity prohibited from doing so by any U.S. law, rule, regulation or order, or otherwise exported or re-exported into any country to which the U.S. has embargoed goods.

75. Any access or use of the TD AMERITRADE Service or any other Service offered by TD AMERITRADE, its affiliates or non-affiliated companies through TD AMERITRADE, constitutes my unconditional acknowledgement and acceptance of and agreement to these Terms and Conditions.

**My Relationship with Information Providers**

76. "Information Providers" refers to any exchange, organization, association or group of persons, including any electronic communications network, whether incorporated or not, that maintains or provides a marketplace or such facilities and which performs functions commonly performed by a stock exchange, and which is required to disseminate information relating to securities or other financial instruments, products, vehicles or devices. "Market Data" includes quotations for securities transactions and/or last sale information for completed securities transactions reported by Information Providers in accordance with federal securities regulations, and all other data based upon any such information.

77. Each Information Provider has a proprietary interest in the Market Data that originates on or derives from it or its markets.

78. I must use Market Data only for my individual non-business use. I will not provide Market Data to any person or entity. This Agreement confers third-party beneficiary status on the Information Providers. TD AMERITRADE and Ameritrade Clearing are authorized by, on behalf of, and for the benefit of Information Providers to take any action, receive any communication or payments, or provide notifications as required under this Agreement unless Information Providers provide me written notice of the contrary.

79. If, in their judgment, Information Providers or TD AMERITRADE determines that I have misappropriated or misused Market Data or otherwise breached this Agreement, TD AMERITRADE may terminate this Agreement and discontinue providing Market Data to me. Information Providers may enforce this Agreement against me, and may also take action against any person that obtains such Market Data, by legal proceeding or otherwise. I shall pay the reasonable attorney's fees that any Information Provider incurs in enforcing this Agreement against me.

80. The Information Providers may discontinue disseminating any category of Market Data, change or eliminate any transmission method, and change transmission speeds or other signal characteristics at any time. I release and agree to indemnify and hold harmless Information Providers for any loss or damages that may result.

81. Information Providers and TD AMERITRADE do not guarantee the timeliness, sequence, accuracy or completeness of Market Data. I shall not hold Information Providers and TD AMERITRADE liable in any way for (a) any inaccuracy of, error or delay in, or omission of the data, or (b) any loss or damage arising from or occasioned by (i) any error or delay in the transmission of such data, (ii) interruption in any such data due either to any negligent act or omission by any party to any "force majeure" (e.g., flood, extraordinary weather conditions, earthquake or other act of God, fire, war, insurrection, riot, labor dispute, accident, action of government, communications or power failure, equipment or software malfunction), (iii) to any other cause beyond the reasonable control of any Information Provider or TD AMERITRADE, or (iv) non-performance.

**How My Account is Managed**

82. All transactions under this Agreement are made subject to the constitutions, rules, regulations, customs and usages of the various execution points and their clearinghouse, if any, where Ameritrade Clearing or its agents execute the transactions.

83. Stock and option orders are routed via an electronic matrix to an exchange, listed, NASDAQ or over-the-counter agent, electronic communications network or other market participant depending upon the asset being traded, the designated market session and other factors. TD AMERITRADE and Ameritrade Clearing may not accept requests to route orders to a specific exchange or market for execution. TD AMERITRADE or Ameritrade Clearing receive cash payment for routing my stock orders for execution to certain agents on specific listed, NASDAQ, and over-the-counter securities. These agents may be market makers or other market participants and may act as principals to buy, sell or hold securities for their own proprietary accounts and may make money from the "spread."

84. Orders are routed to the marketplace as promptly as possible in view of prevailing market conditions. However, there can be delays in the processing of orders related to the security being traded, market conditions, manual entry or discretionary order review procedures. I understand that the price at which an order executes in the marketplace may be different from the prices quoted at the time of order entry. I also understand that the quoted price may not reflect the trading activity from all markets.

85. I acknowledge that my account is self-managed and agree to have the required cash, available funds, or equity in my account prior to the execution and/or settlement of a purchase or short sale transaction, and the required securities in an account prior to the execution and/or settlement of a long sale; and failing to do so, to promptly and fully satisfy any deficiency. I understand that it is my responsibility to maintain records of my transactions placed and executed in my account(s).

*(continued)*

86. All orders for the purchase or sale of securities and other property that I authorize shall be processed and/or executed with the understanding that an actual purchase or sale is intended and it is my intention and obligation in every case to pay for any purchase or deliver certificates to cover all sales on or before settlement date, even though the receipt of the confirmation may be delayed. All sell orders shall be for securities owned ("long") at that time by me.

87. Ameritrade Clearing may, at its sole discretion, refuse any security order, and I shall not hold Ameritrade Clearing liable for any loss I may sustain due to its refusal to permit the purchase or sale of the security.

88. Ameritrade Clearing is authorized to borrow the securities and other property necessary to enable it to make delivery if I fail to deliver any securities or other property that Ameritrade Clearing has sold at my direction. I agree to be responsible for any cost, including the cost of obtaining the securities and other property, or loss Ameritrade Clearing may incur. Ameritrade Clearing is my agent to complete all such transactions and is authorized to make advances and expend monies as required. I release and agree to indemnify and hold harmless Ameritrade Clearing from any and all liability and claims for damages resulting from any action taken pursuant to this paragraph.

89. All securities and other property in any account(s) in which I have an interest are subject to a consensual and general lien to discharge any and all of my debts or any of my other obligations to TD AMERITRADE or Ameritrade Clearing. All securities and other property of mine will be held by Ameritrade Clearing as security for the payment of any obligation or debt in any account(s) in which I may have an interest. I hereby grant to TD AMERITRADE and Ameritrade Clearing, jointly and severally, for good and adequate consideration, the consensual and general lien described in this paragraph. Subject to applicable law, Ameritrade Clearing, may at any time and without prior notice to me, use and/or transfer any or all securities and other property interchangeably in any account(s) in which I have an interest.

90. I must promptly pay TD AMERITRADE or Ameritrade Clearing the reasonable costs of collection of the debit balance and any unpaid deficiency in my accounts, including attorneys' fees.

91. I authorize Ameritrade Clearing to gain and maintain custody of my mutual fund holdings as I may request orally or in writing. This arrangement may prevent access to my account through the fund issuer or its agents, requiring me to conduct all mutual fund shareholder dealings through Ameritrade Clearing. Ameritrade Clearing may provide shareholder accounting, trade confirmations, account statements, government reporting, annual reports and proxy materials related to my mutual fund holdings. I may be denied access to some or all of the privileges and services offered to mutual fund shareholders that hold accounts directly with the mutual fund company. I may revoke this authorization at any time provided that my mutual fund shares held by Ameritrade Clearing are free and clear and there are no liens against me or any of my Ameritrade Clearing accounts whether owned individually, jointly or severally.

**Arbitration Disclosure and Agreement**

92. The following contains the predispose arbitration clauses applicable to my account. Through my signature on the account application, I agree to be bound as follows:

   a. All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
   b. Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.
   c. The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.
   d. The arbitrators do not have to explain the reason(s) for their award.
   e. The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
   f. The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.
   g. The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.
   h. No person shall bring a putative or certified class action to arbitration nor seek to enforce any predispute arbitration agreement against any person who has initiated in court a putative class action or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied, (ii) the class is decertified, or (iii) the client is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.

93. All controversies concerning (a) any transaction, (b) the construction, performance or breach of this or any other agreement, whether entered into prior to, on or after the date of this Agreement, or (c) any other matter which may arise between TD AMERITRADE, Ameritrade Clearing, or their representatives, and me shall be determined by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc.

94. Subject to paragraphs 92 and 93, TD AMERITRADE and Ameritrade Clearing reserve the right to pursue all legal and equitable remedies that may be available to them. Judgment on an arbitration award may be entered or enforced in any state or federal court having jurisdiction thereof.

**Interest on My Account**

95. Interest may be assessed against my Cash Account in connection with:
   a. Cash withdrawals – if the proceeds from a security sale are disbursed before the regular settlement date of the sale transaction.
   b. Late payments – if TD AMERITRADE or Ameritrade Clearing receives my payment for securities purchases after the settlement date, I shall be charged daily a late payment fee, calculated at the rate of $0.35 per $1,000 (or fraction thereof) on the open debit balance in my account until Ameritrade Clearing is fully paid. The charges shall accrue until paid and posted to my account on the day following payment of the debit balance.

96. From time to time I may have a "free credit balance" in my account pending investment. A "free credit balance" is uninvested cash less (i) funds necessary to pay for purchase transactions due to settle on or after the date the free credit balance is determined, (ii) charges or debits to my account and (iii) balances designated as collateral to cover my margin loans, short sales and/or option positions. TD AMERITRADE or Ameritrade Clearing may in its discretion pay interest on any free credit balances in my account pending investment ("credit interest"). TD AMERITRADE or Ameritrade Clearing may increase or decrease the rate of interest or cease paying interest at any time in its discretion. I agree that free credit balances, if maintained in my account, are maintained pending investment and are not maintained solely for the purpose of receiving credit interest. TD AMERITRADE or Ameritrade Clearing reserve the right to stop paying credit interest on any account, close my account or take any other action if TD AMERITRADE or Ameritrade Clearing determines that my free credit balances are maintained solely for the purpose of receiving credit interest. Free credit balances are not segregated and may be used by TD AMERITRADE or Ameritrade Clearing, but only to the extent permitted by applicable SEC and self-regulatory organization rules and regulations (e.g., SEC Exchange Act Rule 15c-3 on customer protection).

97. Also TD AMERITRADE or Ameritrade Clearing may offer me a service by which I may invest or deposit my available free credit balance in money market funds, FDIC-insured bank deposit accounts or other products through a "Sweep Program." In that program, the free credit balance will be swept into the investment or deposit I have elected, or a particular investment or deposit if I do not make an election, pending my investment of the free credit balance. The alternatives available under the Sweep Program are referred to as "Sweep Choices." TD AMERITRADE or Ameritrade Clearing will notify me of the Sweep Choices and the Sweep Choice, if any, applicable to my free credit balance if I do not elect a Sweep Choice. Notice may be by posting on the TD AMERITRADE Web site.

98. In the case of the Sweep Program, free credit balances over certain minimum amounts will be automatically invested or deposited in my Sweep Choice either weekly or

*(continued)*

daily, depending on the amount of the cash balance and according to a periodic sweep schedule determined (and subject to change) by TD AMERITRADE or Ameritrade Clearing in their discretion. In addition, proceeds from the sale of securities will be swept into my Sweep Choice following settlement, provided that the securities sold have been received in good deliverable form prior to settlement date. If Ameritrade Clearing fails to sweep my free credit balances according to this Agreement, the liability of TD AMERITRADE and Ameritrade Clearing is limited to the actual amount of interest or dividends I would have earned had the free credit balances been invested or deposited in the applicable Sweep Choice.

99. I authorize TD AMERITRADE and Ameritrade Clearing to automatically withdraw cash or redeem securities maintained in a Sweep Choice to satisfy any debit balance in my account(s), settle a transaction, serve as collateral for a margin loan, short sale or option position or to satisfy any other indebtedness that I may have to TD AMERITRADE or Ameritrade Clearing with respect to my account(s) in an amount sufficient to satisfy any such obligation. I authorize Ameritrade Clearing to act as my agent to purchase and redeem Sweep Choices in connection with the investment of free credit balances under this Agreement, and authorize TD AMERITRADE and Ameritrade Clearing to select and use such agents as, in its discretion, it deems appropriate to perform its functions in connection with the Sweep Program.

100. The Sweep Choices may include money market funds or FDIC-insured bank deposit accounts for which Ameritrade Clearing or its affiliates receive, to the extent permitted by applicable law or regulation, transaction and other fees for providing services (which may include but are not limited to administration, transfer agency, distribution and shareholder services). These fees will vary depending on the money market fund (or share class) or FDIC-insured bank deposit account used. No portion of these fees will reduce or offset the fees otherwise due to TD AMERITRADE or Ameritrade Clearing in connection with my account unless required by law or regulation.

101. There may be certain minimum requirements for initial and subsequent investments in the Sweep Choices. Investments in each money market fund are subject to restrictions, charges and expenses described in the applicable prospectus, which I will receive separately. Money market funds are securities that may increase or decrease in value. They are not insured or guaranteed by the FDIC, any other government agency, TD AMERITRADE, or Ameritrade Clearing and there can be no assurance that such funds will be able to maintain a stable net asset value of $1 per share.

102. My account statement will reflect the payment of any credit interest and all sweep transactions. I will not receive confirmations of the sweep transactions separate from my account statements. I may withdraw my free credit balance on request (subject to applicable requirements if my free credit balance is in an ERISA plan or IRA).

103. TD AMERITRADE or Ameritrade Clearing may change or replace the Sweep Choices available to me, at their discretion. TD AMERITRADE will give me advance notice of any such change in Sweep Choices except as noted below. Notice may be by posting on the TD AMERITRADE Web site. Unless I notify TD AMERITRADE of an objection to any such change, I authorize Ameritrade Clearing to withdraw cash or redeem securities made in the prior Sweep Choice and to invest or deposit the proceeds in the replacement Sweep Choice. I understand and agree that TD AMERITRADE or Ameritrade Clearing may offer different Sweep Choices to different accounts. If I establish or have a TD AMERITRADE account with a particular Sweep Choice and I establish a new TD AMERITRADE account that has a different Sweep Choice or move my existing account to a TD AMERITRADE service or program that has a different Sweep Choice, then my establishment of the new account or movement of my account to a different TD AMERITRADE service or program constitutes authority for TD AMERITRADE and Ameritrade Clearing to withdraw cash or redeem securities maintained in the prior Sweep Choice and to reinvest or deposit the proceeds in the new Sweep Choice without notice to me. In any of the foregoing circumstances, TD AMERITRADE or Ameritrade Clearing may elect to obtain my direct authorization instead of relying on its authority granted in this paragraph, but is not obligated to do so except as may be required by applicable law or regulation or applicable rule of a self-regulatory organization. For information related to Sweep choices refer to the TD AMERITRADE Cash and MMDA Sweep Feature Agreement attached hereto as an Addendum to these Terms and Conditions.

104. Interest charged or earned during the current account statement period shall be posted to my account on the first business day of the following account statement period.

105. If I intend to trade on margin, borrow funds for my securities transactions, I acknowledge that I have reviewed the section below entitled "My Margin Account" for an additional discussion of interest and charges arising from trading on margin.

**My Margin Account**

106. In consideration of TD AMERITRADE and Ameritrade Clearing opening one or more of my Margin accounts, I agree as follows:

107. For the marginable securities I purchase, I request TD AMERITRADE and Ameritrade Clearing as allowed by and in accordance with federal securities laws, to extend credit to me in my margin account for a portion of the purchase price of the securities. In addition to brokerage commission, charges and fees, I shall pay interest on the resulting debit balances in my account in accordance with the terms described below.

108. All transactions under this Agreement shall be subject to the present and future constitution, rules, regulations, customs, usages, rulings and interpretations of the NASD and of any market and its clearing house, if any, whether the transactions are executed by TD AMERITRADE, Ameritrade Clearing, or any of their agents, and to all governmental acts and statutes, and to rules and regulations made there under insofar as applicable. I agree to carefully read the *TD AMERITRADE Margin Account Handbook* before purchasing any security on margin.

109. I will at all times maintain with TD AMERITRADE and/or Ameritrade Clearing, in securities acceptable to it or in cash, a satisfactory margin of value above the amount of my indebtedness or obligations. Such margin will not be less but may be greater than that required by the rules and regulations issued by the Federal Reserve Board.

110. I shall immediately discharge on demand my obligation to pay the entire amount owed to TD AMERITRADE or Ameritrade Clearing, and I understand that no oral agreement or instructions to the contrary shall be recognized or enforceable.

111. At any time, and from time to time, Ameritrade Clearing may apply and/or transfer money, securities or other property between any of my accounts without notifying me.

112. All money, securities and other property, including positions held in safekeeping or held in any TD AMERITRADE or Ameritrade Clearing account(s) in which I have an interest (whether individual or jointly), are subject to a consensual and general lien, and are collateral that TD AMERITRADE and Ameritrade Clearing are authorized to sell to satisfy my debts or other obligations to TD AMERITRADE or Ameritrade Clearing, regardless of whether advances have been made in connection with the securities and irrespective of the number of accounts in which I have an interest. I agree that any such money, securities and other property shall constitute collateral that TD AMERITRADE and Ameritrade Clearing are authorized to sell to satisfy my debts and other obligations to TD AMERITRADE or Ameritrade Clearing. I hereby grant to TD AMERITRADE and Ameritrade Clearing, jointly and severally for good and adequate consideration, the consensual and general lien described in this paragraph.

113. All securities and other property held in my margin account(s) (individually, jointly or otherwise) may be pledged, re-pledged, hypothecated, or re-hypothecated, separately or together with the property of others, without notice to me, for more or less than the amount of my loan, and Ameritrade Clearing may or may not retain in its possession or under its control an equal amount of similar property or securities.

114. TD AMERITRADE and Ameritrade Clearing are authorized to lend any securities held on margin in my account(s) to itself as broker or to others, unless and until TD AMERITRADE receives written notice of revocation from me.

115. Any order to "sell short" a security shall be designated as such by me, and TD AMERITRADE will mark the order as "short." Ameritrade Clearing is my agent to complete all such transactions and is authorized to make advances and expend monies as required. Ameritrade Clearing is authorized to borrow the securities necessary to enable it to make delivery if a short sale of securities is made at my direction. I agree to be responsible for the cost of obtaining the securities if Ameritrade Clearing is unable to borrow them.

*(continued)*

116. If I sell short a security and the value of the security I sold increases above my selling price, the increase shall be charged to my margin account (with an offsetting credit to the Short Account) and interest shall be charged in my margin account on the increase. This practice of determining the change in current market value is commonly referred to as "marking to the market" and is normally done daily.

117. Credit balances in my short account shall not earn interest.

118. Debit balances in my account(s) shall be charged interest in accordance with the usual customs of TD AMERITRADE and Ameritrade Clearing and increases in rates caused by money market conditions.

119. Ameritrade Clearing utilizes a base rate ("Base Rate") to set margin interest rates. When setting the Base Rate Ameritrade Clearing considers indicators including, but not limited to, commercially recognized interest rates, industry conditions relating to the extension of credit, the availability of liquidity in the marketplace, the competitive marketplace and general market conditions ("Rate Indicators"). The interest rate charged on my margin account is based on the Base Rate. My particular rate will vary based on the Base Rate and the margin balance ("Balance") during the interest period. Ameritrade Clearing provides the Base Rate and the Balance schedule each of which is published and available at https://wwws.ameritradeadvisor.com/cgi-bin/apps/Main. The Base Rate may be changed without prior notice to me. A change to the Base Rate reflects changes in the Rate Indicators and other factors. TD AMERITRADE will post to its Web site any changes to the Base Rate at the time such changes are effected, but not less frequently than 30 days after the effective change.

**120. For each day there is a debit balance in my account, the interest charged for that day is calculated by multiplying the applicable interest rate by my debit balance, with the result divided by 360.**

121. The debit balance collectively includes any debit balances in the margin, cash or short sub-accounts. The sum of the daily interest charges is totaled at the end of each account statement period and is posted to my account on the first business day of the following account statement period. (Credit balances in a short account are not included since they do not represent excess funds.)

122. My monthly statement of interest charges shall include my daily debit balances, the interest rates applied and the daily interest charges, in addition to my total interest charge.

123. If the equity in my account falls below the minimum maintenance requirement, TD AMERITRADE or Ameritrade Clearing may request additional collateral to bring my equity above the minimum maintenance requirement.

124. TD AMERITRADE and Ameritrade Clearing are not obligated under any circumstances to provide me with notice or to request additional cash or securities to be deposited into my account if my account falls below minimum maintenance requirements. I understand that, under such circumstances, TD AMERITRADE and Ameritrade Clearing are entitled to take all steps necessary, including selling securities in my account or "buying in" securities, to restore the account to the minimum margin balance required, without any notice to me. There may be circumstances, for example in rapidly declining or volatile market conditions, where TD AMERITRADE or Ameritrade Clearing shall forcibly liquidate securities and/or other property in my account, without notifying me and without regard of my intent to cover or otherwise satisfy the debt, to ensure that minimum maintenance requirements are met.

125. TD AMERITRADE and Ameritrade Clearing may decline the extension of credit on certain securities for, among other reasons, concentration, price, market volatility, or other conditions. I understand that there may also be times when TD AMERITRADE or Ameritrade Clearing has extended credit on certain securities, but due to market or other conditions may require additional cash or securities.

126. TD AMERITRADE or Ameritrade Clearing may require me to deposit additional collateral in accordance with Federal Reserve Board rules and regulations. In addition, TD AMERITRADE or Ameritrade Clearing may require me to deposit additional collateral if they determine it is necessary as security for my debt.

**127.** TD AMERITRADE and Ameritrade Clearing have the authority at any time, at their discretion and without notice to me, to sell any or all of the securities or other property in my account, or to buy in any short positions, or to cancel any outstanding orders, or to require additional collateral, or to close my account in the event of, but not limited to:
   a. My failure to meet requests for additional collateral
   b. The filing of a petition of bankruptcy by or against me
   c. The appointment of a receiver filed by or against me
   d. An attachment levied against my account or an account in which I have an interest
   e. My death
   f. Whenever TD AMERITRADE or Ameritrade Clearing may deem it necessary.
   g. Any sale, purchase or cancellation may occur without notice or advertisement of the sale, purchase or cancellation, and I have expressly waived the right to require such notice or publication. Any such sale or purchase may be made at the discretion of TD AMERITRADE or Ameritrade Clearing on any exchange or market where business is usually transacted and TD AMERITRADE or Ameritrade Clearing may be the purchaser for its own account. TD AMERITRADE or Ameritrade Clearing may purchase the property for its own account free from right of redemption. Thereafter, I shall remain liable for any remaining debt in my account(s).

128. TD AMERITRADE and Ameritrade Clearing are not required to give any notice to me prior to affecting a sell out or buy in for my account. If TD AMERITRADE or Ameritrade Clearing choose to give me notice of the sale or purchase, or demand payment from me, neither TD AMERITRADE or Ameritrade Clearing is precluded from taking the actions described in these paragraphs at a later time, nor are they bound to comply with the content of such notice, regardless of my reliance upon the same.

129. I release and agree to indemnify and hold harmless TD AMERITRADE and Ameritrade Clearing from any and all liability, claims for damages, and losses of any kind resulting from any action taken pursuant to the Margin Account terms of this Agreement.

### Initial Public Offerings

130. TD AMERITRADE may participate as a member of the selling group of, and may provide access to, Initial Public Offerings (IPOs). Investments in Initial Public Offerings or follow-on offerings may entail increased risk of loss, and may not be suitable to all investors. I acknowledge that my investment in IPO shares is at my own discretion and at my own risk.

131. All transactions under this Agreement shall be subject to the present and future constitution, rules, regulations, customs, usages, rulings and interpretations of the SEC, NASD, TD AMERITRADE, Ameritrade Clearing or their agents, and to all governmental actions and statutes, and to rules and regulations made thereunder insofar as applicable. My participation is separately subject to, and I agree to be bound by, the TD AMERITRADE Institutional IPO Center Client Agreement which is incorporated by this reference.

132. Initial Public Offering shares are not marginable and may only be purchased in a cash account.

133. Before participating in an IPO offering, I agree to carefully review the preliminary prospectus and to confirm that I have had access to or have received the preliminary prospectus.

134. I agree to submit my Indication of Interest by the deadline established by TD AMERITRADE for the offering in order to purchase shares in the offer. TD AMERITRADE will provide notification to me when the registration statement has been declared effective and the offering has been priced; and at such time I must affirm my Indication of Interest, and understand that if I fail to do so by the deadline set forth by TD AMERITRADE, I will not be eligible for the share allocation. I further understand that I may not cancel, revoke or modify my binding offer to purchase. A binding offer does not guarantee that I will receive any IPO shares.

135. While I am free to sell shares purchased through an Initial Public Offering at any time, short holding periods of less than 31 calendar days will be a factor in determining whether TD AMERITRADE allocates shares to me in future public offerings. Selling shares purchased through an Initial Public Offering within 30 calendar days of purchase will restrict me from participation in public offerings through TD AMERITRADE for a period of three months.

136. I release and agree to indemnify and hold harmless TD AMERITRADE and Ameritrade Clearing from any and all liability, claims for damages, and losses of any kind resulting from my participation in any Initial Public Offering.

**Option Trading**

137. The provisions of this option account agreement are supplementary to the cash and margin account agreements I have signed. Unless specifically amended by this agreement, all the terms and conditions applicable to any options transactions handled for my account shall remain effective. In consideration of TD AMERITRADE and Ameritrade Clearing handling options transactions for my account, I am aware of and agree as follows:

138. Options are not suitable for all investors. Options trading has a number of inherent risks involved, and I am prepared financially to undertake such risks and to withstand the losses that may be incurred.

139. I acknowledge I have received, or a copy has been made available to me by contacting Client Services or on the Web site, the Characteristics and Risks of Standardized Options by the Options Clearing Corporation and the "Special Statement for Writing Uncovered Options."

140. All my option transactions are subject to the rules and regulations of the Options Clearing Corporation, the Chicago Board Options Exchange or the appropriate options exchange, and the National Association of Securities Dealers, Inc.

141. I shall not exceed the position and exercise limits imposed by the rules of the Options Clearing Corporation, including, but not limited to, the position limits established pursuant to paragraphs (b)(3) and exercise limits established pursuant to paragraphs (b)(4), as either may be modified, or other regulatory body, whether acting alone or with a group of investors. TD AMERITRADE or Ameritrade Clearing may be required to report my name, address, social security number and my position in a class of options to the proper regulatory authority.

142. Settlement on options cleared through the Options Clearing Corporation is "next-day," the business day following the trade date.

143. I am responsible for knowing the rights and terms of all options in my account, and for monitoring the occurrence of any reorganizations or other events (e.g., stock splits and reverse stock splits) involving my options positions. I acknowledge that options may grant me valuable rights that will expire unless I take action with respect to these rights. I understand that, except as required by law or applicable rules of regulatory authorities, TD AMERITRADE and Ameritrade Clearing are not obligated to notify me of reorganizations or other events affecting the rights granted by my options or, without specific instructions from me, to take any actions on my behalf with respect to such events.

144. An options account may be subject to margin calls. I agree to immediately satisfy all margin calls in my options account. TD AMERITRADE or Ameritrade Clearing may issue a margin call whenever necessary or advisable for protection of its position as an endorser of option contracts issued by my orders. I may also be called on for additional margin by TD AMERITRADE and Ameritrade Clearing in order to maintain my options positions within my margin account. TD AMERITRADE and Ameritrade Clearing are not required to provide me with any notice prior to taking any steps necessary to bring my account within minimum margin maintenance requirements, including selling options or securities in my account. (Please see the section "My Margin Account" on page 19 for more information.)

145. TD AMERITRADE and Ameritrade Clearing are authorized, in their discretion and without notice to me, to take the steps appropriate to protect their position and any obligation they have assumed at my request without notifying me. This authorization covers purchases, sales, or the cancellation of options transactions placed by me for my account. In addition, if I fail to make payment of any money due under this Agreement, TD AMERITRADE or Ameritrade Clearing may sell any other securities held for my account and apply the proceeds of such sale to my debt under the terms of this Agreement.

146. In the event of my insolvency, death, or attachment of my property, Ameritrade Clearing may take any steps with the options held in my account necessary to protect themselves against loss.

147. Any and all expenses incurred by TD AMERITRADE or Ameritrade Clearing with respect to options transactions processed on my behalf may be charged to my account and shall be fully reimbursed by me.

148. TD AMERITRADE and Ameritrade Clearing have the right to determine whether an options order is acceptable to limit positions which they are prepared to undertake for my account, and can require options to be traded on a cash-only basis during the last ten days prior to expiration of such option. TD AMERITRADE and Ameritrade Clearing are not liable to me for errors or omissions in the execution, handling, purchasing, exercising, or endorsement of any option contracts, including qualification as to time, unless caused by their gross negligence or willful misconduct.

149. It is my responsibility to instruct TD AMERITRADE as to my intention to exercise options contracts prior to expiration date.

150. If I write (short) a **call** options contract, which requires the delivery of securities to be sold, I may be required to keep the securities in my account until the expiration of the options period and may not be allowed to sell or withdraw the securities. If I am assigned on the options, Ameritrade Clearing may deliver the securities to the purchaser without previous notice to me.

151. If I write (short) a **put** options contract which requires payment for securities to be purchased, I may be required to keep sufficient funds in my account to make the payment until the expiration of the options period, and may not be allowed to withdraw the funds or use them for any other purpose. If I am assigned on the options, TD AMERITRADE may use the funds for the purchase of the securities without previous notice to me.

152. TD AMERITRADE or Ameritrade Clearing may, in their sole discretion, refuse my orders to purchase or sell options, and I shall not hold TD AMERITRADE or Ameritrade Clearing liable for any loss I may sustain due to its refusal to permit the purchase or sale of options.

153. All short equity and some index options positions are available for assignment at any time. Exercise assignment notices for equity or index options are randomly allocated among all clients' short positions by an automated procedure. A more detailed description of applicable random allocation procedure is available on request.

154. I release and agree to indemnify and hold harmless TD AMERITRADE and Ameritrade Clearing from any and all liability, claims for damages, and losses of any kind resulting from any action taken pursuant to the Option Account terms of this Agreement.

### General

155. These Terms and Conditions are governed by the laws of the State of Nebraska. I hereby consent to the exclusive jurisdiction of and venue within the State of Nebraska for all disputes arising out of or relating to the use of the Web sites, Content, the Service, and/or the Information. Use of the Web sites, Content, the Service and/or the Information is unauthorized in any jurisdiction that does not give effect to all provisions of these Terms and Conditions, including, without limitation, this paragraph.

156. I agree that no joint venture, partnership, employment or agency relationship exists between me and TD AMERITRADE as a result of these Terms and Conditions or use of the Web sites, Content, the Service, and/or the Information.

157. If any part of these Terms and Conditions is determined to be invalid or unenforceable pursuant to applicable law, including, but not limited to, the warranty disclaimers and liability limitations set forth above, then the invalid or unenforceable provision will be deemed superseded by a valid, enforceable provision that most closely matches the intent of the original provision, and the remainder of the Terms and Conditions shall continue in effect.

158. These Terms and Conditions constitute the entire agreement between me, and TD AMERITRADE and Ameritrade Clearing with respect to my Account, the Web sites, Content, and the Information; and it supersedes all prior or contemporaneous communications and proposals, whether electronic, oral or written, between me, and TD AMERITRADE and Ameritrade Clearing with respect to my Account, the Web sites and the Information; provided, however, that any and all other agreements between me, and TD AMERITRADE and Ameritrade Clearing and their subsidiaries or affiliates, will remain in full force and effect, if any, including, but not limited to, the terms and conditions of my brokerage account(s) and other related accounts and services.

159. A printed version of these Terms and Conditions and of any notice given in electronic form shall be admissible in judicial or administrative proceedings based upon or relating to these Terms and Conditions to the same extent, and subject to the same conditions, as other business documents and records originally generated and maintained in printed form.

160. In no event shall the liability of TD AMERITRADE and Ameritrade Clearing for my use of the Web sites, the Content, or the brokerage and clearing services offered by TD AMERITRADE and Ameritrade Clearing or Personal Finance Services, exceed $1,000.00, except to the extent specifically set forth in TD AMERITRADE's Asset Protection Guarantee

161. Addendum(s) attached to this Agreement form part of it and are fully incorporated herein.

# Amerivest Addendum
## (For Sub-Advised Accounts)

Amerivest® is an investment advisory service (the "Advisory Service") of Amerivest Investment Management, LLC, an SEC-registered investment advisor ("Amerivest") and an affiliate of TD AMERITRADE, Inc. and Ameritrade Inc. I understand that my own independent registered investment advisor ("RIA") has entered into a Sub-Advisory Agreement with Amerivest pursuant to which my RIA may use the Advisory Service to assist in managing the assets in my related TD AMERITRADE brokerage account ("ASA Account").

### About ASA Accounts

ASA Accounts are designed for use in conjunction with the Amerivest Advisory Service. They facilitate the execution of exchange-traded funds ("ETF") transactions relating to the Advisory Service as well as other activities, including performance tracking. Please note that while ASA Accounts can take in cash as well as securities, any ETF purchases associated with the Advisory Service must be paid for with cash and Amerivest provides no advice on securities other than selected ETFs. Accordingly, I will only deposit securities into my ASA Account that I either wish to transfer out or sell promptly after the deposit. As to any such securities deposited into my ASA Account, I hereby agree that (i) any actions taken by me will be subject to all of the provisions of this Agreement, (ii) neither TD AMERITRADE nor Amerivest has provided or will provide any advice or recommendation to me as to the sale of such deposited securities and that any such sale will be on an unsolicited basis, and (iii) I take full responsibility as to all the potential consequences that could arise from each such sale, including as to any tax implications. If I decide not to sell any securities I deposit into my ASA Account, I hereby agree to transfer them out of that account promptly.

In addition to the terms and conditions in the Agreement heretofore provided, I further agree to those in this Addendum as follows:

**1. Information.** Information provided through the Advisory Service, including material found under "Recommended Transactions" and through the various links throughout the Amerivest Website ("Information") has been internally developed or independently obtained by third parties, various securities markets, such as stock exchanges and their affiliates, and through other outside sources. The accuracy, completeness, timeliness or correct sequencing of the Information is not guaranteed by Amerivest, the third parties or any parties transmitting the Information. There may be delays, omissions or inaccuracies in the Information. Past performance is no guarantee of future results.

IMPORTANT: The forecasts or other information generated by the Advisory Service regarding the probabilities that various investment outcomes might occur are hypothetical in nature, do not reflect actual investment results and are not guarantees of future results. The Advisory Service only presents a range of possible outcomes. The results that my RIA achieves for my portfolio may vary significantly from the historical performance shown due to a variety of reasons, such as whether or not my RIA decides to implement any recommendations provided by the Advisory Service. Historically, the return associated with individual types of investments (e.g., exchange-traded funds) is positively related to the risk associated with that type of investment. Past performance is no guarantee of future results and a portfolio may lose value. Investment decisions should be based upon a variety of sources and opinions. I agree that Amerivest and any of its affiliated companies, or any third party shall have no liability, contingent or otherwise, for the accuracy, completeness, timeliness or correct sequencing of the Information, or for any decision made or action my RIA takes in reliance upon the Information or the Advisory Service, or for interruption of any data, information or aspect of the Advisory Service.

**2. Fees.** I understand that if I use the Advisory Service through my RIA I will not pay any fee directly to Amerivest. Rather, I will pay a fee to my RIA as my investment manager and that RIA will pay a sub-advisory fee to Amerivest. I understand that TD AMERITRADE, Inc. will waive all commission charges on associated transactions. In addition, I understand and acknowledge that assets held in any exchange-traded fund, money market fund, or any other mutual fund are subject to various fees and expenses, described in the fund's prospectus, which are paid by the fund but ultimately are borne by the investor.

**3. SUITABILITY.** IN USING THE ADVISORY SERVICE, I ACKNOWLEDGE THAT THROUGH MY RIA, I HAVE PROVIDED THE FOLLOWING INFORMATION TO AMERIVEST: (A) MY FINANCIAL GOAL FOR AN ACCOUNT INVESTED IN ACCORDANCE WITH AN ASSET ALLOCATION MODEL INVOLVING INDEX SERVICES ("INDEX MODEL ACCOUNT"); (B) MY TIME HORIZON TO ATTAIN SUCH GOAL OF AN INDEX MODEL ACCOUNT; AND (C) MY RISK TOLERANCE FOR ANY MONEY INVESTED BY ME IN AN INDEX MODEL ACCOUNT. I ACKNOWLEDGE THAT ANY INFORMATION (E.G., INVESTMENT EXPERIENCE, OTHER FINANCIAL INFORMATION, OVERALL RISK TOLERANCE ETC.) PROVIDED BY MY RIA OR ME TO TD AMERITRADE, INC. OR ANY OF ITS OTHER AFFILIATES, IN CONNECTION WITH ANY BROKERAGE ACCOUNT I MAINTAIN WITH TD AMERITRADE, INC. WILL NOT BE CONSIDERED IN THE INDEX MODEL ACCOUNT RECOMMENDATIONS NOR WILL THEY BE CONSIDERED IF MY RIA DECIDES TO IMPLEMENT ANY SUCH RECOMMENDATIONS THROUGH A TD AMERITRADE, INC. BROKERAGE ACCOUNT EVEN IF MY GOAL(S) WITH REGARD TO A TD AMERITRADE, INC. BROKERAGE ACCOUNT ARE NOT CONSISTENT WITH MY GOAL FOR ANY INDEX MODEL ACCOUNT I MAINTAIN. THEREFORE, I ACKNOWLEDGE THAT THE RECOMMENDATIONS PROVIDED BY THE ADVISORY SERVICE CONSTITUTE IMPERSONAL ADVICE ONLY AND ARE NOT BASED ON MY INDIVIDUAL FINANCIAL CIRCUMSTANCES THAT MIGHT IMPACT ANY DECISIONS MY RIA MAY MAKE REGARDING AN INDEX MODEL ACCOUNT. MY RIA IS RESPONSIBLE FOR EVALUATING THE RECOMMENDATIONS PROVIDED BY THE ADVISORY SERVICE IN LIGHT OF MY OWN PERSONAL FINANCIAL SITUATION AND OVERALL FINANCIAL GOALS. CONSEQUENTLY, I UNDERSTAND THAT IT IS MY RIA'S RESPONSIBILITY TO DETERMINE IF THE RECOMMENDATIONS MADE BY THE ADVISORY SERVICE ARE SUITABLE FOR ME BASED ON MY RIA'S KNOWLEDGE OF MY PERSONAL CIRCUMSTANCES AND GOALS, AND WHETHER MY RIA SHOULD IMPLEMENT ANY RECOMMENDATIONS MADE.

**4. IMPLEMENTATION.** THE ADVISORY SERVICE CONTAINS MODEL ASSET ALLOCATION RECOMMENDATIONS INVOLVING INDEX SERVICES. IF MY RIA DECIDES TO FOLLOW ANY OF THE ADVISORY SERVICE MODEL RECOMMENDATIONS, SUCH RECOMMENDATIONS MAY BE IMPLEMENTED THROUGH MY ACCOUNT WITH AMERIVEST'S AFFILIATE, TD AMERITRADE, INC. ON AN UNSOLICITED BASIS. IF MY RIA IMPLEMENTS THE MODEL RECOMMENDATIONS IN MY ASA ACCOUNT, TD AMERITRADE, INC. WILL ACT SOLELY AS A BROKER IN CONNECTION WITH ANY SUCH TRANSACTIONS. I ACKNOWLEDGE THAT BECAUSE AMERIVEST IS NOT EXERCISING ANY DISCRETION WITH REGARD TO MY ACCOUNT, MY RIA IS SOLELY RESPONSIBLE FOR RE-BALANCING AND RE-ALLOCATING ANY INDEX MODEL ACCOUNT I MAY MAINTAIN.

**5. Modification and Termination.** Amerivest reserves the right to modify or change the terms of this Addendum at any time or terminate my or my RIA's access to the Advisory Service or any portion thereof in its sole discretion, without notice and without limitation, for any reason whatsoever, including but not limited to the unauthorized use of my access number(s), password(s) and/or account number(s), breach of this Agreement, and/or discontinuance of Amerivest's access to any information or data from any third party or termination of one or more agreements between Amerivest and any third party. Fees, if any, are not refundable for termination under this section.

*(continued)*

**1. LIMITATION OF LIABILITY.** I AGREE THAT THE LIABILITY OF AMERIVEST, OR ANY THIRD PARTY ARISING OUT OF ANY KIND OF LEGAL CLAIM (WHETHER IN CONTRACT, TORT OR OTHERWISE) IN ANY WAY CONNECTED WITH THE ADVISORY SERVICE OR THE INFORMATION, WILL NOT EXCEED THE AMOUNT MY RIA PAID FOR THE ADVISORY SERVICE. SOME JURISDICTIONS DO NOT ALLOW LIMITATIONS ON HOW LONG IMPLIED WARRANTIES LAST, THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR THE EXCLUSION OF CERTAIN IMPLIED WARRANTIES, SO NOTHING IN THESE LIMITATION OF LIABILITY PROVISIONS IS INTENDED TO LIMIT RIGHTS I MAY HAVE UNDER FEDERAL OR STATE SECURITIES LAW.

**2 INDEMNIFICATION.** I agree to indemnify and hold Amerivest and any of its affiliated companies, their respective officers, directors, employees and representatives, and any associated third party harmless from and against any and all claims, losses, liability, costs and/or expenses arising from my or my RIA's violation of this Addendum or any third party's rights, including but not limited to copyright, proprietary and privacy rights. This indemnification and hold harmless obligation will survive the termination of this Addendum. Nothing in these indemnification provisions is intended to limit any rights I may have.

**3 ASSIGNMENT.** Amerivest will not assign its Sub-Advisory Agreement with my RIA (as the term "assignment" is defined in the Investment Advisers Act of 1940) without my RIA's consent.

**4 MISCELLANEOUS.** This Addendum as it relates to the Advisory Services offered by Amerivest will be governed by and construed in accordance with the laws of the United

States of America and the State of Nebraska without giving effect to principles of conflict of law. All controversies concerning any transaction, the construction of this Addendum, or performance of the Advisory Services, or any other matter which may arise between Amerivest and me shall be determined by arbitration. Such arbitration will be conducted by the American Arbitration Association in accordance with its Commercial Arbitration Rules, in the State of Nebraska; provided, however, that if such controversy between the parties relates to a controversy to which TD AMERITRADE, Inc. is a party and that is or becomes the subject of an arbitration before a national securities exchange or self-regulatory organization of which TD AMERITRADE, Inc. is a member ("SRO Arbitration"), then the arbitration relating to the controversy between the parties shall be conducted by the same organization and according to the same rules and regulations as the SRO Arbitration. The decision or award of the arbitrator or a majority of them shall be final, and judgment on the award may be entered or enforced in any state or federal court having jurisdiction thereof.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (1) the class certification is denied; or (2) the class is decertified; or (3) the person is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Addendum except to the extent stated herein.

This agreement to arbitrate does not constitute a waiver of any right provided to me by the Advisers Act, including the right to choose the forum, whether arbitration or adjudication, in which to seek resolution of disputes. Any cause of action must be brought by me within one (1) year of when the alleged breach occurred. Any consent, waiver or approval by either party of any act or matter must be in writing and shall apply only to the particular act or matter to which such consent, waiver or approval is given. I acknowledge that, in providing me with the Advisory Service, Amerivest has relied upon me to be bound by the terms of this Addendum and the Agreement. I further acknowledge that I have read, understood and agreed to be bound by the terms of this Addendum.

# Cash and MMDA Sweep Feature Agreement

This Agreement between the account owner(s) and TD AMERITRADE sets forth the terms and conditions governing the cash in your Brokerage Account ("TD AMERITRADE Cash") and the TD AMERITRADE Money Market Deposit Account ("MMDA").

**DEFINITIONS**

"I," "me," "my," or "account owner" means each account owner who signs the MMDA application. "You," "your," or "TD AMERITRADE" means TD AMERITRADE, Inc.

"Bank" means TD Bank USA, N.A., an affiliate of TD AMERITRADE.

"MMDA" means the bank account TD AMERITRADE holds as agent for me at the Bank.

"Designated Sweep Vehicle" means the sweep vehicle that I have designated on my account application for holding uninvested cash balances.

"TD AMERITRADE Cash" means the interest-earning, uninvested cash balance in my Brokerage Account.

"Brokerage Account" means the securities brokerage account opened in my name at TD AMERITRADE and includes my TD AMERITRADE Cash.

"Business Day" means Monday through Friday, excluding Bank and New York Stock Exchange holidays.

"Available Cash Balance" means amounts held in my TD AMERITRADE Cash, Designated Sweep Vehicle and any additional amounts held in any other Money Market Account included in my Brokerage Account.

"FDIC" means Federal Deposit Insurance Corporation.

"SIPC" means Securities Investor Protection Corporation.

**MMDA SWEEP FEATURES**

If I have selected the MMDA as my Designated Sweep Vehicle, I understand that available cash in my TD AMERITRADE Brokerage Account will be automatically deposited in the MMDA at the Bank. The MMDA will be eligible for insurance by the FDIC of up to $100,000 for non-retirement accounts,$250,000 for Individual Retirement Accounts ("IRAs") and certain other retirement accounts, for principal and accrued interest per depositor in each recognized legal capacity (e.g., individual, joint, IRA) when aggregated with other deposits, including Certificates of Deposit, held at the Bank in the same capacity. **Available Cash Balances will be deposited into the MMDA**

*(continued)*

without limit, even if the amount in the MMDA exceeds the FDIC limits of $100,000 or $250,000. I acknowledge that I am responsible for monitoring the total amount of deposits, including Certificates of Deposit, that I maintain at the Bank in order to determine the extent of Federal Deposit Insurance Coverage available to me. TD AMERITRADE will not be responsible for any insured or uninsured portion of the MMDA.

I understand that available credit balances in my Brokerage Account will be automatically swept on a daily basis to the MMDA at the Bank. The proceeds of any checks which I deposit to my Brokerage Account will be swept to the MMDA on the first business day after receipt by TD AMERITRADE, and will begin earning interest on that day. I understand that access to such funds may be withheld for up to six business days to ensure that such checks have not been returned unpaid. Such holds may result in the dishonor of disbursement requests if funds and/or Available Margin Credit are not otherwise available within my Brokerage Account. I may instruct TD AMERITRADE to change my MMDA sweep feature at any time to another of the Designated Sweep Vehicles, and acknowledge that such instruction shall constitute my authorization to liquidate existing balances in my Designated Sweep Vehicle, and transfer such balances to the new Designated Sweep Vehicle I have selected. I acknowledge that TD AMERITRADE reserves the right, at its sole discretion, to change the eligibility criteria for any sweep vehicle, and may change or replace the sweep vehicles available to me.

I acknowledge that the MMDA constitutes a direct obligation of the Bank and is not directly or indirectly an obligation of TD AMERITRADE. TD AMERITRADE does not guarantee in any way the financial condition of the Bank or the accuracy of any publicly available financial information concerning the Bank.

As required by federal regulations, the Bank reserves the right to require seven days prior notice before permitting a withdrawal out of the MMDA. The Bank has indicated that it presently has no intention of exercising this right. In addition, the MMDA has transfer limits that prevent using it as a transaction account.

Deposit Procedures – When available cash is first available for deposit, TD AMERITRADE will deposit available cash from my Brokerage Account into a MMDA at the Bank. The minimum deposit for opening a MMDA at the Bank, the minimum deposit eligible for a sweep and the frequency of deposits may vary, depending on the type of TD AMERITRADE Brokerage Account I maintain.

Withdrawal Procedures – All withdrawals necessary to satisfy debits in my TD AMERITRADE Brokerage Account will be made by TD AMERITRADE, or its clearing firm, as my agent. A debit will be created when I purchase securities or request a withdrawal of funds from my TD AMERITRADE Brokerage Account.

Pattern Day Trader Accounts – If my account is flagged as a Pattern Day Trader, on the first day following such an occurrence, TD AMERITRADE will withdraw all MMDA deposits and my Brokerage Account will be invested in TD AMERITRADE Cash at the then prevailing interest rate.

Interest Rates – The Bank will determine interest rates on the MMDA in its discretion based upon a variety of factors including prevailing economic and business conditions, and the nature and scope of the client's relationship with TD AMERITRADE. For example, rates may vary based on special offers, the particular offering the client uses or the level of assets held by TD AMERITRADE. The interest rates paid with respect to the MMDA may be higher or lower than the interest rates available to depositors making deposits directly with the Bank or other depository institutions in comparable accounts. The current interest rate will be available on the TD AMERITRADE Web site, or I may contact TD AMERITRADE to obtain the current rate. Interest will accrue on balances from the day they are deposited into the MMDA through the business day preceding the date of withdrawal from the MMDA. Interest will be accrued daily and credited on the last business day of each month.

Relationship with TD AMERITRADE – TD AMERITRADE, or its clearing firm, will act as my agent in establishing a MMDA at the Bank, depositing funds into the MMDA and withdrawing funds from the MMDA. No evidence of the MMDA, such as a passbook or certificate, will be issued to me. Ownership of the MMDA at the Bank will be evidenced by a book entry on the account records of the Bank, and by records maintained by TD AMERITRADE as my custodian and as record keeper for the Bank.

TD AMERITRADE may, in its sole discretion, terminate my use of the MMDA sweep feature. If TD AMERITRADE terminates my use of the MMDA sweep feature, or does not wish to continue to act as my agent with respect to the MMDA, I understand that I may deal directly with the Bank, subject to its rules, with respect to maintaining deposit accounts. In the event TD AMERITRADE terminates my use of the MMDA sweep feature, TD AMERITRADE will inform me of the replacement sweep vehicle.

Similarly, if I decide to terminate my use of the MMDA sweep feature, or that I no longer wish to have TD AMERITRADE, or its clearing firm, act as my agent with respect to the MMDA, I understand that I may establish a direct depository relationship with the Bank by requesting that my MMDA balances be recorded on the account records of the Bank in my name, subject to the Bank's rules with respect to maintaining deposit accounts. Establishing a direct depository relationship with the Bank will result in the separation of my MMDA balances from my Brokerage Account.

Designated Sweep Vehicles include FDIC-insured bank deposit accounts for which TD AMERITRADE or its affiliates receive, to the extent permitted by applicable law or regulation, transaction and other fees for providing services. No portion of these fees will reduce or offset the fees otherwise due to TD AMERITRADE in connection with my Brokerage Account unless required by law or regulation.

Changes in Depository Institutions Participating in the MMDA Sweep Feature – Periodically, TD AMERITRADE may add depository institutions to the MMDA sweep feature. I will receive notification in advance of any such change, either by means of a letter, an entry on my TD AMERITRADE Brokerage Account statement, an entry on a trade confirmation, or by other means. If a depository institution ceases to make its MMDA available through the MMDA sweep feature, I will be given an opportunity to establish a direct depository relationship with that institution outside of the MMDA sweep feature, or to transfer funds to another depository institution participating in the MMDA sweep feature, if available. The consequences of maintaining a direct depositary relationship with a depository institution are discussed above under "Relationship with TD AMERITRADE."

Deposit Insurance – Funds in the MMDA are insured by the FDIC, an independent agency of the U.S. government, to a maximum amount up to $100,000 for non-retirement accounts, $250,000 for IRAs and certain other retirement accounts, for principal and accrued interest when aggregated with all other deposits, including Certificates of Deposit, held by me in the same recognized legal capacity at the Bank. Funds become eligible for deposit insurance immediately upon placement in the MMDA. Any deposits that I maintain directly with the Bank, or through another intermediary, in the same recognized legal capacity in which the deposits in the MMDA are maintained, will be aggregated with my deposits in the MMDA for purposes of the $100,000 or $250,000 limit.

In the unlikely event that the Bank should fail, my MMDA balances are insured, up to the $100,000 limit for non-retirement accounts, $250,000 for IRAs and certain other retirement accounts, for principal and interest accrued to the day the Bank is closed. Interest is determined for insurance purposes in accordance with federal law and regulations.

Questions about basic FDIC insurance coverage may be directed to TD AMERITRADE. Information also may be obtained by contacting the FDIC, Office of Compliance and Consumer Affairs, by letter 550 17th Street, N.W., Washington, DC 20249, by phone **877-275-3342, 800 925-4618 (TDD) or 202 942 3100**, by e-mail **dcainternet@fdic.gov** or by accessing the FDIC Web site at **fdic.gov**.

*(continued)*

AAS 182 F 09/06

**TD AMERITRADE CASH**

If I have selected TD AMERITRADE Cash as my Designated Sweep Vehicle, I understand that TD AMERITRADE will pay interest on available credit balances in my Brokerage Account based on its current rates and policies, which may be changed without prior notice. Interest will be accrued daily, and credited on the last business day of each month. TD AMERITRADE reserves the right, in its sole discretion, to determine interest rates paid on your TD AMERITRADE Cash. I understand that TD AMERITRADE reserves the right to vary its interest rates among clients in connection with special offers or combinations of services or in other circumstances at it sole discretion.

Deposit Insurance – Funds in TD AMERITRADE Cash are insured by SIPC. TD AMERITRADE, Inc. is a member of the Securities Investor Protection Corporation (SIPC). I understand that securities in my account are protected up to $500,000. For details, please see <www.sipc.org>. Up to an aggregate of $250 million of additional securities protection, of which $900,000 may be applied to cash, is provided by London insurers, also limited to a combined return to any client from a Trustee, SIPC and London of $150 million. I understand that this coverage provides me protection against brokerage insolvency and does not protect against loss in market value of the securities.

I understand that I am responsible for monitoring the total amount of deposits that I have with TD AMERITRADE in order to determine the extent of insurance coverage available to me.

**SECURITY INTEREST**

As security for any indebtedness or obligation I have incurred to TD AMERITRADE or to the Bank in connection with this Agreement, I grant TD AMERITRADE a security interest in any and all securities or property held now or in the future by TD AMERITRADE in any of my accounts or any other property TD AMERITRADE may hold for me. At its sole discretion without prior notice and for its sole protection, TD AMERITRADE may sell or transfer money, securities or rights to any portion of any account to satisfy a margin deficiency or other obligation. Balances in my Designated Sweep Vehicle are also subject to a general lien for the discharge of my obligation to TD AMERITRADE or to the Bank, and TD AMERITRADE may utilize such balances to satisfy my obligations without further notice or demand. No provision of this Agreement concerning liens or security interests shall apply to any account to the extent such application would be in conflict with any provision of ERISA or the Internal Revenue Code relating to retirement accounts.

**BROKERAGE AGREEMENT**

I understand and agree that I continue to remain bound by the Terms and Conditions that govern my Brokerage Account and that all such Terms and Conditions, including the predispute arbitration clause, shall also govern my Designated Sweep Vehicle.

**GOVERNING LAW**

This agreement shall be governed by the laws of the State of Nebraska.

Ameritrade, Inc., member NASD/SIPC. Ameritrade, Inc., and TD AMERITRADE, Inc. are subsidiaries of TD AMERITRADE Holding Corporation.
TD AMERITRADE Institutional, Division of TD AMERITRADE, Inc., member NASD/SIPC. TD AMERITRADE is a trademark jointly owned by TD AMERITRADE IP Company, Inc. and The Toronto-Dominion Bank. © 2006 TD AMERITRADE IP Company, Inc. All rights reserved. Used with permission.    AAS 182 F 09/06