UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
JOSEPH WELCH, On Behalf of Himself and All                              :
Others Similarly Situated,                                              :
                                                                        :   07 CIV 6904 (RJS)
                                    Plaintiff,                          :
                                                                        :   **ECF CASE**
                    -against-                                           :   **ELECTRONICALLY FILED**
                                                                        :
TD AMERITRADE HOLDING CORPORATION,                                      :
TD AMERITRADE, INC., TD BANK USA, N.A. and                              :
THE TORONTO-DOMINION BANK,                                              :
                                                                        :
                                    Defendants.                         :
                                                                        :
------------------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**


MORGAN, LEWIS & BOCKIUS LLP
 Christopher P. Hall
 Brian A. Herman
 Matthew Stratton
101 Park Avenue
New York, NY 10178
Telephone: 212-309-6000
Facsimile: 212-309-6001

Attorneys for Defendants TD Ameritrade Holding
Corporation, TD Ameritrade, Inc., TD Bank USA,
N.A. and The Toronto-Dominion Bank

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

I. PLAINTIFF WAS NOT AFFECTED BY TD AMERITRADE'S CHANGE IN SWEEP PROGRAM, AND THEREFORE CANNOT DEMONSTRATE INJURY AND LACKS STANDING ........................................................................................... 1

II. PLAINTIFF'S OPPOSITION PROVES THAT THE STATE LAW CLAIMS ARE PRECLUDED BY SLUSA ........................................................................................ 3

III. PLAINTIFF'S FIDUCIARY DUTY CLAIMS MUST BE DISMISSED ......................... 4

IV. PLAINTIFF'S CLAIMS BASED ON ALLEGED MISREPRESENTATIONS FAIL AS A MATTER OF LAW ................................................................................................. 5

V. PLAINTIFF'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW ....................... 8

    A. Plaintiff's Fraud Claim Must Be Dismissed ......................................................... 8

    B. Plaintiff's Negligence, Negligent Misrepresentation, and Unjust Enrichment Claims Must Be Dismissed .................................................................................... 8

    C. Plaintiff's Claim Under N.Y. Gen. Bus. Law § 349 Must Be Dismissed ............. 9

VI. PLAINTIFF'S CLAIM FOR VIOLATIONS UNDER THE INVESTMENT ADVISERS ACT OF 1940 MUST BE DISMISSED ...................................................... 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

Bissell v. Merrill Lynch & Co., 937 F. Supp. 237 (S.D.N.Y. 1996) ...................................4

Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975) ........................................3

Stroup v. GCS Serv., Inc., No. 89 Civ. 8333 (JSM), 1990 WL 128919 (S.D.N.Y. Aug. 28, 1990) ...................................................................................................................7

Frazier v. VitalWorks, Inc., 341 F. Supp. 2d 142 (D. Conn. 2004) ....................................7

Levitin v. PaineWebber, Inc., 159 F.3d 698 (2d Cir. 1998) ...........................................5, 8

Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397 (S.D.N.Y. 2002) .................................2

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71 (2006) ........................3

Nanjing Textiles Imp/Exp Corp. v. NCC Sportswear Corp., No. 06 Civ. 52 (JGK), 2006 WL 2337186 (S.D.N.Y. Aug. 11, 2006) ..................................................8

Port Dock & Stone Corp. v. Oldcastle NE, Inc., 507 F.3d 117 (2d Cir. 2007) .................10

U.S. v. Santoro, 302 F.3d 76 (2d Cir. 2002) .......................................................................8

U.S. v. Skelly, 442 F.3d 94 (2d Cir. 2006) ..........................................................................4

Warth v. Seldin, 422 U.S. 490 (1975) .................................................................................3

## FEDERAL STATUTES AND RULES

17 C.F.R. § 240.15c3-2 .......................................................................................................4

17 C.F.R. § 240.15c3-3 .......................................................................................................4

Fed. R. Civ. P. 9(b) .............................................................................................................8

Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1 to 80b-21 ("IAA") ..................9, 10

Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 ("SLUSA") ................................................................................................3

## STATE STATUTES

N.Y. Gen. Bus. Law § 349 ................................................................................................................9

N.Y. Gen. Bus. Law §§ 352 to 359-h ("Martin Act") .......................................................................3

## PRELIMINARY STATEMENT

Plaintiff's Opposition to Defendants' Motion to Dismiss is replete with false propositions, including that: (i) once a financial institution makes an investment option available to a customer, it must do so in perpetuity, even when the customer's contract expressly provides otherwise; (ii) by virtue of the fact that a broker advertises that it provides "outstanding service," it cannot offer higher returns to customers with larger accounts; and (iii) no customer would ever want an FDIC-insured bank deposit because an investment in an uninsured money market mutual fund might pay a better return. Of course, Plaintiff offers—and there is—no support for these propositions.

Because many of Plaintiff's arguments are defeated by the reply brief filed by the DeBlasio defendants on March 6, 2008 ("Joint Reply Br."), incorporated by reference herein, Defendants submit this Reply principally to address several TD Ameritrade-specific issues raised in Plaintiff's Opposition ("Opp.").[1]

### I. PLAINTIFF WAS NOT AFFECTED BY TD AMERITRADE'S CHANGE IN SWEEP PROGRAM, AND THEREFORE CANNOT DEMONSTRATE INJURY AND LACKS STANDING

In January 2006, the Combination of Ameritrade and TD Waterhouse was consummated. (Compl. ¶ 15.) The Opposition now makes clear that the gravamen of Plaintiff's claim stems from a "change" in sweep options available to certain customers after the Combination. (See, e.g., Opp. at 1, 4.) But this "change" did not in any way affect Plaintiff. He therefore lacks injury and standing to pursue any claim related to this "change."

---

[1] "DeBlasio Opp." refers to the joint brief filed by the DeBlasio plaintiffs on February 5, 2008. Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Memorandum of Law in Support of Defendants' Motion to Dismiss ("Br.").

Plaintiff's Complaint, and the various documents incorporated by reference therein (and therefore properly before the Court on this motion to dismiss), demonstrate the following facts that are not—and cannot be—disputed.[2]

- Prior to the Combination, TD Waterhouse offered its customers the options: a) to hold uninvested cash in their brokerage accounts; b) to sweep uninvested cash into a money market mutual fund; or c) to sweep uninvested cash into an FDIC-insured money market account/MMDA. (See Br. at 3–4.)

- Prior to the Combination, Ameritrade offered its customers the options to hold uninvested cash in their brokerage accounts or sweep uninvested cash into a money market mutual fund, but did not offer the option to sweep uninvested cash into an FDIC-insured MMDA. (See Br. at 3–4.)

- In September 2006 (after the Combination), the combined TD Ameritrade began to offer legacy Ameritrade customers the option to sweep uninvested cash into an FDIC-insured MMDA. This is the "change" referenced in the Opposition. No change was made for legacy TD Waterhouse customers. (See Compl. ¶¶ 31–33; Br. at 4.)

- Plaintiff was a legacy TD Waterhouse customer, not a legacy Ameritrade customer and therefore was not affected by this change. (See Br. at 7; see also Opp. at 18–20.)

In his Opposition, Plaintiff seems to suggest that, prior to the Combination, TD Waterhouse swept all uninvested cash into money market funds and also that the post-Combination change in sweep offerings affected legacy TD Waterhouse customers, such as Plaintiff. But Plaintiff's own account statements conclusively demonstrate otherwise. His account statements demonstrate that he had only one account that swept into an MMDA during the proposed Class Period. That account swept into a money market account from the time it was opened in 2005 through early 2007, and was not affected by any "change" after the

---

[2] Plaintiff concedes that the Court may consider "statements or documents <u>incorporated into the complaint by reference</u> . . . and <u>documents possessed by or known to the plaintiff and upon which it relied in bringing the suit</u>." (See Opp. at 16 n.13 (emphasis added); Br. at 2 n.2.) Plaintiff suggests that the Court should nonetheless ignore the documents concerning four accounts where Plaintiff's uninvested cash was not swept into an MMDA. (See Opp. at 2.) Plaintiff is incorrect because the Complaint refers to "accounts" and "statements" generally and is not limited to any particular account. In any event, Plaintiff does not object to the Court examining documents related to his single account that swept into an MMDA for part of the proposed Class Period. "If a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss." Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002). (See Joint Br. at 21–22.)

Combination. (See Ex. N; Reply Ex. O).[3] Plaintiff therefore lacks injury, which defeats his purported causes of action; and because he was not affected by the "change," he lacks standing to prosecute a claim based on the "change." See Warth v. Seldin, 422 U.S. 490, 502 (1975).

## II. PLAINTIFF'S OPPOSITION PROVES THAT THE STATE LAW CLAIMS ARE PRECLUDED BY SLUSA

Plaintiff argues that his state law claims are not precluded by SLUSA because the claims do not address conduct in "in connection with" the purchase or sale of a "covered security." (See Br. at 15–16; Opp. at 17.) Plaintiff does not contest that money market mutual funds are "covered securities." (See DeBlasio Opp. at 68.) Rather, Plaintiff makes the strained argument that this case does not concern such securities.

But the gravamen of this action is Defendants' alleged failure to invest Plaintiff's cash in money market mutual funds. (See Compl. at ¶¶ 4, 6, 51–56, 61–62.) Indeed, Plaintiff concedes: "Here, it is clearly alleged that TDA clients entrusted their uninvested cash to TDA's control with the expectation that TDA would invest the cash primarily for the benefit of the client – and not for itself." (See Opp. at 6 (emphasis added); see also Opp. at 3 (referring to the MMDA as a "program for investing client cash"); & 9 n.7 (discussing the suitability requirements applicable to securities investments).) As the Supreme Court's decisions in Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 74–75 (2006), and Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 726–27 (1975), demonstrate, SLUSA applies to losses allegedly caused by a failure to purchase a security. (See Joint Reply Br. at 2–3.)[4]

---

[3]  Joseph Welch's TD Waterhouse IRA Account Application, signed and dated Dec. 27, 2005, states: "PLEASE NOTE: All credit balances will automatically be swept daily into a TD Waterhouse Bank, N.A. FDIC-insured money market account." (See Supplemental Declaration of Matthew D. Stratton, dated April 7, 2008, Ex. O at §7.)
[4]  Plaintiff's contention that his state law claims are not preempted by the Martin Act because they do not relate to securities (see Opp. at 18) similarly cannot be squared with the Complaint, which concerns a failure to invest in money market mutual funds. Plaintiff's state law claims also are preempted by federal law governing securities for the reasons set forth in the Joint Reply Br. at 3–7.

### III. PLAINTIFF'S FIDUCIARY DUTY CLAIMS MUST BE DISMISSED

New York law is clear: A fiduciary duty arises where a broker has discretionary trading authority over an account. (Br. at 12–13.) However, Plaintiff's accounts were non-discretionary; Defendants did not have discretionary trading authority over Plaintiff's accounts; and Plaintiff does not claim otherwise. Instead, Plaintiff makes three arguments, all of which fail.

First, Plaintiff argues that a fiduciary duty arises because he "entrusted [his] uninvested cash to TDA's control <u>with the expectation</u> that TDA would <u>invest the cash</u> primarily for the benefit of the client – and not for itself." (Opp. at 6 (emphasis added).) But Plaintiff does not cite any support for the proposition that his purported subjective expectation that money was available in his account for investment imposed on TD Ameritrade an independent duty to invest it in any particular investment absent his instructions, and there is no such support.[5]

Second, Plaintiff suggests that Defendants' ability to set the interest rate for an MMDA—a bank account—is the same as a broker having discretionary trading authority over a brokerage account. (<u>See</u> Opp. at 6–7.) If that were correct, all banks—which routinely set interest rates without first seeking customer permission—would be deemed fiduciaries. Again, Plaintiff does not cite any support for this argument, and there is none.

---

[5] Plaintiff's reliance on <u>U.S. v. Skelly</u>, 442 F.3d 94 (2d Cir. 2006) is misplaced. <u>Skelly</u> was a criminal action arising out of an alleged "pump and dump" scheme and did not in any way involve the treatment of uninvested cash in a brokerage account. In <u>Skelly</u>, the Second Circuit confirmed that a fiduciary duty exists only where there is a discretionary relationship or where the particular facts and circumstances create a duty. The Second Circuit determined that the trial court failed to instruct properly the jury that a fiduciary duty can only arise where there is " 'reliance and de facto control and dominance' " over the account. <u>Id</u>. at 98–99. The Second Circuit also cautioned that "a fiduciary obligation is not to be lightly implied." <u>Id</u>. at 98. (<u>See also</u> Joint Reply Br. at 16–17.)
  Plaintiff's interpretation of SEC Rules 15c3-2 and 15c3-3 (Opp. at 8 n.5) ignores the premise of these Rules that the broker-customer relationship is akin to that of creditor-debtor with respect to uninvested cash in a brokerage account. (<u>See also</u> Joint Reply Br. at 3–5). Plaintiff's attempt to distinguish <u>Bissell v. Merrill Lynch & Co.</u>, 937 F. Supp. 237 (S.D.N.Y. 1996), <u>aff'd</u>, 157 F.3d 138 (2d Cir. 1998), also fails. <u>Bissell</u> holds that a broker only owes a general fiduciary duty if it has discretionary trading authority. <u>Id</u>. at 246. Contrary to Plaintiff's implication, whether or not brokers promote the "use of client collateral as financially beneficial to their clients" (<u>see</u> Opp. at 8 n.5) does not relate to discretionary trading authority.

Third, Plaintiff takes issue with the fact that TD Ameritrade provides customers with greater assets additional sweep alternatives than customers with fewer assets. (See Compl. ¶¶ 29, 54, 55; Opp. at 4–5, 12, 19.)[6] Although Plaintiff concedes that a bank may pay interest on a tiered basis (Opp. at 18 n.16), Plaintiff argues this is somehow improper where a financial institution advertises that it is "impartial" or provides "outstanding service." (Id.) There is simply no support in law or logic for this proposition.

Plaintiff's relationship with TD Ameritrade is contractual, and the contract gives TD Ameritrade the right to change the options it offers for uninvested cash.[7] (Br. at 6 & n.5.) Plaintiff does not cite any support for the proposition that the exercise of this contractual right constitutes a breach of fiduciary duty, and notably, does not even allege that TD Ameritrade breached a contract with Plaintiff.[8]

## IV. PLAINTIFF'S CLAIMS BASED ON ALLEGED MISREPRESENTATIONS FAIL AS A MATTER OF LAW

Defendants have already demonstrated that TD Ameritrade disclosed all material facts about the sweep program (see Br. at 5–6), and the Court should not be distracted by Plaintiff's quibbling about those disclosures.

For example, the Complaint attacked Defendants' use of the terms, "money market deposit account" or "MMDA," to describe the sweep option. (See, e.g., Compl. ¶ 62.) However,

---

[6] Contrary to Plaintiff's suggestion, all customers have options for uninvested cash including: participating in TD Ameritrade Cash or the MMDA; investing in a security, including a money market mutual fund; withdrawing the cash; or transferring the cash to another financial institution. (See Br. at 4–5.)

[7] Plaintiff's attempt to distinguish Levitin v. PaineWebber, Inc., 159 F.3d 698 (2d Cir. 1998), is unavailing because, with respect to uninvested cash in a customer account, the relation between a brokerage firm and its customer is that of creditor and debtor. (Br. at 2; Opp. at 7-8; Joint Reply Br. at 16-17 & n.28.) Moreover, Plaintiff's understanding of general "industry practice" is irrelevant where the agreements at issue expressly authorized the cash sweep program. (Joint Reply Br. at 12–13 & n.24; Br. at 5–6; Ex. I.)

[8] Plaintiff's claim for aiding and abetting breach of fiduciary duty fails for the reasons set forth in the Joint Reply Br. at 19–20. Plaintiff's attempt to premise aiding and abetting liability upon TD Ameritrade Holding for issuing the allegedly misleading statements on its website (referred to in Compl. ¶¶ 47–62) fails because the Complaint attributes those statements to TD Ameritrade, not TD Ameritrade Holding.

Defendants have demonstrated that this is a federally-defined, commonly-used term, and therefore Defendants cannot be sued for fraud for using it. (See Br. at 8–10.) In the Opposition, Plaintiff concedes that the term "money market deposit account" itself is not misleading, but argues that the context in which it was used was misleading because TD Ameritrade changed its sweep options and Defendants advertise that the MMDA is a "great option." (See Opp. at 12–13.) However, Plaintiff was not affected by that change, the change was allowed by contract, and there is no support for the proposition that a financial institution's correct use of a federally defined term is somehow actionable because the option is advertised as a "great option."

Plaintiff next implies that Defendants created the term "money market account" to trick investors. (See Opp. at 12–13.) That assertion is also false because the term "money market account" is commonplace and accurate. Indeed, the SEC's webpage captioned "Tips for Teaching Students About Savings and Investing"—a page that offers information to teachers and parents to "introduce students to the basics of saving and investing" provides:

- **Insured Bank Money Market Accounts.**
  These accounts tend to offer higher interest rates than savings accounts and often give you check-writing privileges. Like savings account [sic], many money market accounts will be insured by the FDIC. Note that bank money market accounts are not the same as money market mutual funds, which are not insured by the FDIC.[9]

It strains credulity to suggest that TD Ameritrade's proper use of a term the SEC thinks students can and should understand somehow constitutes fraud.

Plaintiff also argues that the disclosures are "unavailing" because they were put in place after this litigation was commenced. As the sole support for this argument, Plaintiff claims that Exhibits C, E and I are "dated August 2007." (Opp. at 11–12 & n.9.) But this argument is

---

[9] See U.S. Securities and Exchange Commission, Tips for Teaching Students About Saving and Investing, available at http://www.sec.gov/investor/students/tips.htm (last modified Sept. 14, 2005) (attached as Reply Ex. P).

plainly wrong as all three exhibits are dated "8/06," not August 2007. (See Exs. C, E & I (dates on last page).) Plaintiff, without any support, also speculates that Exhibits E and I are in draft form and were never provided to customers. But this speculation is wrong and makes no sense given that Exhibit I, "Summary of Cash Balance Programs," is quoted at length in the Complaint. (See Compl. ¶ 52.)

Plaintiff also claims that website statements (touting Defendants' service and statements that the MMDA sweep option is "great") are actionable. But such general statements do not constitute actionable misrepresentations. See Frazier v. VitalWorks, Inc., 341 F. Supp. 2d 142, 153 (D. Conn. 2004) ("Saying that a product is . . . 'great' is merely 'puffery,' not actionable securities fraud."). (See also Br. at 8; Joint Reply Br. at 9–10 & n.17; Opp. at 3, 5, 9–10.) The fact that Defendants make money on the sweep program does not make these general puffing statements actionable. (See Joint Reply Br. at 9 n.17.)

Indeed, Plaintiff concedes that Defendants disclosed that they would profit from the sweep program, but complains that Defendants have not disclosed the extent of their profits, or that profits were the motive for the program. However, Plaintiff offers no support for the proposition that Defendants were required to make such disclosures. (See Joint Reply Br. at 9; see also Opp. at 5, 11.) Nor does Plaintiff offer any support for the proposition that Defendants' overall revenue from all customers is material to any single customer. Nor does Plaintiff cite any precedent for the claim that Defendants should have disclosed their subjective motivation for implementing the sweep program.[10] (See Opp. at 5, 9.) Indeed, as the Second Circuit

---

[10] Cf. Stroup v. GCS Serv., Inc., No. 89 Civ. 8333 (JSM), 1990 WL 128919, at *7 (S.D.N.Y. Aug. 28, 1990) ("[I]t is well-established that the failure to disclose one's subjective purpose or motive behind a transaction does not violate the federal securities laws so long as the relevant facts underlying the transaction are disclosed."), rev'd on other grounds, 938 F.2d 20 (2d Cir. 1991).

recognizes, Defendants' profit motive is obvious.[11]

## V. PLAINTIFF'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW

### A. Plaintiff's Fraud Claim Must Be Dismissed

In addition to Plaintiff's inability to allege any material or actionable misrepresentations or omissions (see supra § IV), Plaintiff's fraud claim must be dismissed for failure to plead reliance;[12] to satisfy Fed. R. Civ. P. 9(b);[13] and to state a claim for lost profits.[14] Plaintiff's fraud claim against TD Ameritrade Holding, TD and TD Bank also must be dismissed because he remains unable to identify any statements by any of them. (See Br. at 17; Opp. at 13.)[15]

### B. Plaintiff's Negligence, Negligent Misrepresentation, and Unjust Enrichment Claims Must Be Dismissed

Plaintiff's negligence claim must be dismissed because Plaintiff has not identified any duty Defendants owed apart from the contracts, and the cases Plaintiff cites do not support the existence of such a duty. (See Joint Reply Br. at 20–21.)[16] Plaintiff's negligence claim also

---

[11] See Levitin, 159 F.3d at 703 ("[T]he practice of a financial institution using money deposited with it to obtain earnings is neither unknown nor unexpected, much less nefarious. That is precisely how banks make money.").
[12] Plaintiff's theory that the legal presumption that he has read the contracts and disclosures satisfies his obligation to plead reliance is illogical and unsupported by law. (See Opp. at 13–14; Joint Reply Br. at 10.)
[13] Plaintiff's claim that Defendants were motivated by a "tremendous windfall" does not amount to allegations of specific facts giving rise to a strong inference of fraudulent intent under Fed. R. Civ. P. 9(b)—and in fact Defendants' detailed disclosures undermine any generalized allegations of scienter. (See Joint Reply Br. at 11; Opp. at 13 n.10.)
[14] Plaintiff also cannot establish the causal nexus required to state a claim for lost profits because he has failed to plead reliance. (See Joint Reply Br. at 10 n.19; Opp. at 14; Br. at 17–18.)
[15] Plaintiff's attempt to plead "direct participation" by these entities fails. Plaintiff alleges that TD Ameritrade made misrepresentations and omissions. The involvement by TD Ameritrade Holding, TD and TD Bank with respect to the mere operation of the bank sweep program (see Opp. at 13) does not constitute direct participation in the making of the allegedly fraudulent misrepresentations and omissions. See Nanjing Textiles Imp/Exp Corp. v. NCC Sportswear Corp., No. 06 Civ. 52 (JGK), 2006 WL 2337186, at *14 (S.D.N.Y. Aug. 11, 2006). Allegations that certain Defendants also charged fees and made profits do not satisfy the obligation to plead fraud with particularity in accordance with Fed. R. Civ. P. 9(b)—especially where Plaintiff admits that Defendants disclosed the benefits they received. (See Compl. ¶ 59.) Nor does Plaintiff plead scienter against TD Ameritrade Holding, TD and TD Bank in accordance with Fed. R. Civ. P. 9(b).
[16] Plaintiff cites U.S. v. Santoro, 302 F.3d 76 (2d Cir. 2002), for the proposition that "every broker has duties to execute trades in a reasonable manner and it is plainly not 'reasonable' for a broker to invest their clients' funds in order to derive profit for themselves at their clients' expense." (See Opp. at 9.) Santoro concerned whether a sentencing enhancement was correctly applied for an alleged abuse of trust. Santoro does not in any way discuss duties allegedly owed in connection with the treatment of uninvested cash in a brokerage account and is therefore inapposite.

fails for the various reasons set forth in the Joint Reply Br. at 21–22. In addition, Plaintiff does not contest that his negligence claim is barred by the economic loss doctrine (see also Joint Reply Br. at 21–22), nor are there any actionable misstatements or omissions (see supra § IV).

Plaintiff's negligent misrepresentation claim must be dismissed because he does not contest that: (1) he cannot recover lost profits for negligent misrepresentation; and that (2) he has failed to plead the existence of the required "special relationship" between the parties, rather than an arm's-length business relationship based on the agreements for his non-discretionary brokerage accounts (see Joint Reply Br. at 8 n.16).[17]

Plaintiff's unjust enrichment claim must be dismissed because the sweep program is governed by contract, and for the other reasons identified in the Joint Reply Br. (See Br. at 20; Joint Reply Br. at 12 n.23.)

        C.      **Plaintiff's Claim Under N.Y. Gen. Bus. Law § 349 Must Be Dismissed**

Plaintiff's claim under GBL § 349 must be dismissed because it indisputably relates to brokerage accounts and services ancillary to the purchase of securities, which have been repeatedly held to be outside the scope of GBL § 349. (See Joint Reply Br. at 14.) Neither of the cases Plaintiff cites supports his assertion of consumer-related conduct. (See Joint Reply Br. at 12 n.23; Opp. at 16–17.)[18]

**VI.    PLAINTIFF'S CLAIM FOR VIOLATIONS UNDER THE INVESTMENT ADVISERS ACT OF 1940 MUST BE DISMISSED**

Defendants demonstrated that Plaintiff's IAA claim must be dismissed because TD Ameritrade did not serve as his investment adviser. (See Br. at 14–15.) Plaintiff's citation to TD

---

[17] In addition, Plaintiff has not adequately pled reliance (see supra § V.A), nor alleged any material or actionable misrepresentations or omissions (see supra § IV).
[18] In addition, Plaintiff has not adequately pled reliance (see supra § V.A), nor alleged any material or actionable misrepresentations or omissions (see supra § IV). (See Joint Reply Br. at 14–15.)

Ameritrade's Investment Adviser application is meaningless because it does not imply anything with regards to TD Ameritrade's relationship with <u>Plaintiff</u>.  While Plaintiff alleges that, like other broker-dealers, TD Ameritrade is registered as an investment adviser, the mere fact that TD Ameritrade provides advisory services to some customers does not mean that it provides advisory services to all customers, or more specifically, to Welch.  (<u>See</u> Joint Br. at 51.)  Plaintiff's remaining arguments are addressed in the Joint Reply.  (<u>See</u> Opp. at 15–16; Joint Reply Br. at 22–24.)  With respect to Plaintiff's use of a third party investment adviser, the agreements do not impose any adviser responsibility on TD Ameritrade.  (<u>See</u> Exs. J–K.)

## CONCLUSION

For all of the foregoing reasons, and those set forth in the Joint Reply Brief, the Complaint should be dismissed with prejudice.[19]

Dated:    April 7, 2008
         New York, New York

                                    /s/
                                    _____
                                    MORGAN, LEWIS & BOCKIUS LLP
                                      Christopher P. Hall
                                      Brian A. Herman
                                      Matthew Stratton
                                    101 Park Avenue
                                    New York, NY 10178
                                    Telephone:  212-309-6000
                                    Facsimile:  212-309-6001

                                    Attorneys for Defendants TD Ameritrade Holding
                                    Corporation, TD Ameritrade, Inc., TD Bank USA,
                                    N.A. and The Toronto-Dominion Bank

---

[19] The Court should not grant leave to replead.  Counsel for Plaintiff has already had three attempts at this complaint (twice in <u>DeBlasio</u>, once in <u>Welch</u>) and repleading would be futile.  <u>See</u> <u>Port Dock & Stone Corp. v. Oldcastle NE, Inc.</u>, 507 F.3d 117, 127 (2d Cir. 2007).